IN UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------x
MAGTEN ASSET MANAGEMENT                 :
CORPORATION, Suing individually and     :
Derivatively on behalf of CLARK FORK    :
AND BLACKFOOT, LLC,                      :
                                        :
              Plaintiff,                :
                                        :
       v.                               :      Civil Action No. 04-1256 JJF
                                        :
PAUL, HASTINGS, JANOFSKY &              :
WALKER LLP,                             :
                                        :
              Defendant.                :
------------------------------------------------------x
```

**BRIEF IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Robert J. Dehney (#3578)
Curtis S. Miller (#4583)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
  Attorneys for Defendant Paul Hastings
  Janofsky & Walker LLP

OF COUNSEL:

Dennis E. Glazer
Paul Spagnoletti
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

March 31, 2006

i.

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                    ii

PRELIMINARY STATEMENT                                                  1

STATEMENT OF FACTS                                                     2

ARGUMENT                                                               5

    I.    MAGTEN'S CLAIMS AGAINST PAUL HASTINGS SHOULD BE DISMISSED BECAUSE NON-TRANSFEREES ARE NOT LIABLE FOR FRAUDULENT TRANSFERS.                                                    5

    II.    MAGTEN DOES NOT HAVE STANDING TO ASSERT CLAIMS AGAINST PAUL HASTINGS FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY OR MALPRACTICE.                                                   10

CONCLUSION                                                            16

ii.

<u>TABLE OF CITATIONS</u>

<u>Cases</u>
<u>Atlanta Shipping Corp. v. Chemical Bank</u>,
    631 F. Supp. 335 (S.D.N.Y. 1986), <u>aff'd</u> 818 F. 2d 240 (2d
    Cir. 1987) .......... 8

<u>Baker O'Neal Holdings v. Ernst & Young</u>,
    No. 1:03-CV-0132-DFH, 2004 U.S. Dist. LEXIS 6277
    (S.D. Ind. March 24, 2004) .......... 6, 7

<u>Bondi v. Citigroup, Inc.</u>,
    No. BER-L-10902-04, 2005 WL 975856 (N.J. Super. Feb.
    28, 2005) .......... 7

<u>Chepstow Ltd. v. Hunt</u>,
    381 F.3d 1077 (11th Cir. 2004) .......... 9

<u>Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.</u>,
    97 P.3d 140 (Colo. App. 2003) .......... 7

<u>Drachman v. Harvey</u>,
    453 F.2d 722 (2d Cir 1971) .......... 14

<u>Edgeworth v. First Nat'l Bank of Chi.</u>,
    677 F. Supp. 982 (S.D. Ind. 1988) .......... 14

<u>Elliott v. Glushon</u>,
    390 F.2d 514 (9th Cir. 1967) .......... 5, 8

<u>FDIC v. Porco</u>,
    552 N.E.2d 158 (N.Y. 1990) .......... 9

<u>FDIC v. S. Prawer & Co.</u>,
    829 F. Supp. 453 (D. Me. 1993) .......... 7

<u>FDIC v. White</u>,
    No. 3:96-CV-0560-P, 1998 U.S. Dist. LEXIS 3020 (N.D.
    Tex. March 5, 1998) .......... 7

<u>Freeman v. First Union Nat'l Bank</u>,
    865 So. 2d 1272 (Fla. 2004) .......... 5

<u>Geren v. Quantum Chem. Corp.</u>,
    832 F. Supp. 728 (S.D.N.Y. 1993) .......... 9

iii.

<u>In re Ampat S. Corp.</u>,
    128 B.R. 405 (Bankr. D. Md. 1991)     8

<u>In re NorthWestern Corp.</u>,
    Case No. 03-12872 (CGC) (Bankr. D. Del. Oct. 18, 2004)     3

<u>In re NorthWestern Corp.</u>,
    Case No. 03-12872 (CGC) (Bankr. D. Del. Oct. 8, 2004)     3

<u>In re NorthWestern Corp.</u>,
    No. 03-12872 (CGC), 2004 WL 1661016 (Bankr. D. Del.
    July 23, 2004)     4, 12

<u>In re Parmalat Sec. Litig.</u>,
    377 F. Supp. 2d 390 (S.D.N.Y. 2005)     7

<u>Jackson v. Star Sprinkler Corp.</u>,
    575 F.2d 1223 (8th Cir. 1978)     8

<u>Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)</u>,
    320 F.3d 291 (2d Cir. 2003)     12

<u>Kondelik v. First Fidelity Bank</u>,
    857 P.2d 687 (Mont. 1993)     10

<u>Lewis v. Chiles</u>,
    719 F.2d 1044 (9th Cir. 1983)     14

<u>Lowell Staats Mining Co., Inc. v. Phila. Elec. Co.</u>,
    878 F. 2d 1271 (10th Cir. 1989)     9

<u>Mack v. Newton</u>,
    737 F.2d 1343 (5th Cir. 1984)     5, 8

<u>Magten Asset Mgmt. Corp. v. Mike J. Hanson, et al.</u>,
    No. CV-04-26-BU-RFC (D. Mont. Jan. 27, 2005)     15

<u>Matthies v. Seymour Mfg. Co.</u>,
    270 F.2d 365 (2d Cir. 1959)     14, 15

<u>Morganroth & Morganroth v. Norris, McLaughlin & Marcus</u>,
    331 F.3d 406 (3d Cir. 2003)     7

<u>NorthWestern Corp. v. McGreevey (In re NorthWestern Corp.)</u>,
    Case No. 03-12872, Adv. No. 05-52525 (JLP), 2005 Bankr.
    LEXIS 2146 (Bankr. D. Del. Oct. 25)     3

iv.

Prod. Res. Group, L.L.C. v. NCT Group, Inc.,
    863 A.2d 772 (Del. Ch. Ct. 2004) ................................................................. 11

Richland Nat'l Bank & Trust v. Swenson,
    816 P.2d 1045 (Mont. 1991) ......................................................................... 10

Robinson v. Watts Detective Agency, Inc.,
    685 F.2d 729 (1st Cir. 1982) .......................................................................... 8

Rohm & Haas Co. v. Capuano,
    301 F. Supp. 2d 156 (D.R.I. 2004) .............................................................. 7, 9

Samson v. U.S. West Commc'ns, Inc. (In re Grigonis),
    208 B.R. 950 (Bankr. D. Mont. 1997) ........................................................... 7

Silling v. Erwin,
    881 F. Supp. 236 (S.D.W. Va. 1995) ........................................................... 14

Starrels v. First Nat'l Bank of Chi.,
    No. 85 C 6458, 1987 U.S. Dist. LEXIS 518 (N.D. Ill. Jan.
    21, 1987), aff'd, 870 F.2d 1168 (7th Cir. 1989) ........................................... 14

Thomson Kernaghan & Co. v. Global Intellicom, Inc.,
    99 Civ. 3005 (DLC), 1999 U.S. Dist. LEXIS 13723
    (S.D.N.Y. Sept. 14, 1999) .............................................................................. 8

Statutes
13 William Meade Fletcher, Fletcher Cyclopedia of the Law of
    Private Corporations § 5981.10, at 146–47 (rev. ed. 2004) ......................... 12

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice and Procedure § 1828 (2d ed. 1986) .................................. 13

Federal Rule of Civil Procedure 12(c) ................................................................. 1

Federal Rule of Civil Procedure Rule 23.1 ......................................................... 12

MCA § 31-2-326 ................................................................................................... 5

MCA § 31-2-327 ................................................................................................... 5

MCA § 35-8-1104 ...................................................................................... 10, 12, 15

1.

Defendant Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"), by and through its counsel, respectfully submits this brief in support of its motion pursuant to Fed. R. Civ. P. 12(c) for a judgment dismissing plaintiff's claims on the pleadings.

PRELIMINARY STATEMENT

The core allegation in this case is that Paul Hastings assisted NorthWestern Corp. ("NorthWestern") and one of its wholly owned subsidiaries, Clark Fork and Blackfoot, LLC ("Clark Fork"), in connection with a transaction that the plaintiff, Magten Asset Management Corporation ("Magten"), alleges was a fraudulent transfer. Based upon this core allegation, Magten asserts claims for aiding and abetting a fraudulent transfer, civil conspiracy to conduct a fraudulent transfer, aiding and abetting a breach of fiduciary duty, and malpractice.

All of Magten's claims against Paul Hastings should be dismissed because, inter alia, a non-transferee cannot be held liable for a fraudulent transfer as a matter of law. Simply put, laws prohibiting fraudulent transfers are designed to allow creditors to trace and recover a debtor's assets from their recipients and are not designed to impose liability upon third parties who did not receive the assets that were transferred. Significantly, the complaint does not allege that Paul Hastings received any of the assets transferred from Clark Fork. To the contrary, the complaint makes it clear that Paul Hastings, at all times, was acting as legal counsel to NorthWestern and Clark Fork. On its face, the complaint alleges that NorthWestern was the only party that benefited from the transaction.

Magten's claims against Paul Hastings for aiding and abetting a breach of fiduciary duty and malpractice also should be dismissed because they are derivative

2.

claims. Magten does not have standing to assert these claims on behalf of Clark Fork because Magten has not alleged—and cannot allege—that it was a creditor of Clark Fork at the time that the transaction at issue took place. Indeed, Magten has admitted that it did not acquire its claims until well after the transfer of assets it seeks to attack occurred.[1]

STATEMENT OF FACTS

In September 2000, NorthWestern agreed to acquire certain transmission and distribution energy assets and liabilities from Montana Power Company. (See Compl. ¶¶ 2, 27) In furtherance of that agreement, Montana Power Company transferred these assets and liabilities on February 13, 2002 into a new, wholly owned limited liability subsidiary, which NorthWestern had agreed to acquire. (Id. ¶ 27.) That subsidiary was originally known as Montana Power Company LLC and is now known as Clark Fork. (See id. ¶¶ 28, 38, 51.) On February 15, 2002, NorthWestern purchased 100% of the equity of Clark Fork for $478 million and the assumption of $700 million in liabilities. (Id. ¶ 34.) Following NorthWestern's acquisition of Clark Fork, Clark Fork transferred the majority of its assets and designated liabilities to NorthWestern in November 2002. (Id. ¶¶ 42–43.)

Paul Hastings served as counsel to NorthWestern in connection with its consummation of the agreement to acquire the transmission and distribution energy assets and liabilities of Montana Power Company in February 2002, and acted as counsel to NorthWestern and Clark Fork in connection with the subsequent transfer of the

---

[1]    Paul Hastings reserves the right to assert other legal defenses not specifically raised by this motion, including without limitation additional defenses based on the Montana Uniform Fraudulent Transfer Act and defenses based on section 544 of the federal Bankruptcy Code, at a subsequent stage in these proceedings.

3.

transmission and distribution energy assets and liabilities from Clark Fork to NorthWestern in November 2002 (collectively, the "MPC Acquisition").[2]

The liabilities transferred from Montana Power Company to Clark Fork and then from Clark Fork to NorthWestern included certain junior debentures issued by MPC, which were held by a Delaware business trust. (See id. ¶ 18–20.) Magten acquired a beneficial interest in these debentures by purchasing Quarterly Income Preferred Securities ("QUIPS") issued by the trust well after November 2002. The complaint does not allege that Magten was ever a creditor of Clark Fork or that it owned any QUIPS before the transfer of assets and liabilities from Clark Fork to NorthWestern. To the contrary, the United States Bankruptcy Court has found that:

> "The Debtor has consistently alleged, and Magten has never disputed, that Magten did not own any of the debentures prior to the time the assets were transferred to the Debtor. Rather, Magten acquired the debentures after the transaction was complete. Therefore, the Debtor asserts and Magten has not disputed, that Magten was never a creditor of Clark Fork at a time when Clark Fork held the

---

[2]    Judge Case addressed the integrated character of the MPC Acquisition in overruling Magten's objection to NorthWestern's plan of reorganization. See Transcript of Proceedings at 33, In re NorthWestern Corp., Case No. 03-12872 (CGC) (Bankr. D. Del. Oct. 8, 2004) (attached hereto as Exhibit A) ("[I]n reviewing all of the underlying transaction documents . . . and the applicable law, it is clear to me that this was really all one transaction."); In re NorthWestern Corp., Case No. 03-12872 (CGC), Order Confirming Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, at 35 (Bankr. D. Del. Oct. 18, 2004) (attached hereto as Exhibit B) (same).

Judge Peterson subsequently adopted Judge Case's holding in dismissing an adversary proceeding initiated by a plaintiff class that, like Magten, sought to "parse one aspect of the transfer and call it fraudulent." See NorthWestern Corp. v. McGreevey (In re NorthWestern Corp.), Case No. 03-12872, Adv. No. 05-52525 (JLP), 2005 Bankr. LEXIS 2146, at *15 (Bankr. D. Del. Oct. 25) (holding that "[t]he mechanism of creation of LLC's to effect the transfer and payment was indeed all one transaction, and it defies logic to argue otherwise")(all unreported decisions cited herein are attached to the Compendium of Unreported Decisions filed contemporaneously with the instant Motion).

4.

> disputed energy assets.  Rather, Magten became a holder of
> the debentures only after the transaction was completed and
> was a matter of public record."  <u>In re NorthWestern Corp.</u>,
> No. 03-12872 (CGC), 2004 WL 1661016, at *1 (Bankr. D.
> Del. July 23, 2004) (emphasis added).

Thus, while the complaint alleges that "Magten owns in excess of 33% of the QUIPS" (Compl. ¶ 24), it is clear that Magten acquired all of these securities after the transaction at issue had already been completed.  As the Bankruptcy Court held, "even if third party creditors were injured by the transaction, Magten was not one of them," a ruling that Magten has not contested on appeal.  <u>In re NorthWestern Corp.</u>, 2004 WL 1661016, at *3.

Despite the fact that it was not injured in any way by the transaction challenged in the complaint, Magten acquired 33% of the QUIPS in an apparent hope that it would make a windfall profit by challenging the November 2002 transaction between NorthWestern and Clark Fork.  As part of this strategy, Magten has filed claims against NorthWestern, certain officers of Clark Fork and this complaint against Paul Hastings. All of these claims are based on the premise that the November 2002 transfer following the consummation of the MPC Acquisition in February 2002 constituted a fraudulent transfer.  Based on this premise, Magten has asserted claims against Paul Hastings for (i) aiding and abetting a breach of fiduciary duty owed to creditors of Clark Fork, (ii) aiding and abetting a fraudulent transfer, (iii) civil conspiracy to conduct a fraudulent transfer, and (iv) malpractice.

5.

## ARGUMENT

I.   MAGTEN'S CLAIMS AGAINST PAUL HASTINGS SHOULD BE DISMISSED BECAUSE NON-TRANSFEREES ARE NOT LIABLE FOR FRAUDU-LENT TRANSFERS.

Magten's claims against Paul Hastings should be dismissed because Paul Hastings was not the transferee of the assets in question.  As discussed below, imposing fraudulent transfer liability on a non-transferee is plainly inconsistent with the purpose of fraudulent transfer statutes, which is "clearly to preserve the assets of the bankrupt; they are not intended to render civilly liable all persons who may have contributed in some way to the dissipation of those assets."  Mack v. Newton, 737 F.2d 1343, 1358 (5th Cir. 1984) (quoting Elliott v. Glushon, 390 F.2d 514, 516 (9th Cir. 1967)).

Significantly, all of the plaintiff's claims relate to an alleged fraudulent transfer under Montana's Uniform Fraudulent Transfer Act ("UFTA").  MCA § 31-2-326 et seq.  This statute, however, does not impose liability on non-transferees.  Furthermore, the statute provides that it should be applied and construed in a manner consistent with the other states that have enacted the UFTA,[3] and the majority of cases interpreting the UFTA enacted by other states have rejected attempts to impose liability on non-transferees for fraudulent transfers.

For example, in Freeman v. First Union Nat'l Bank, 865 So. 2d 1272 (Fla. 2004), the Florida Supreme Court held that aider-and-abettor claims may not be brought under the Florida UFTA against parties who are neither debtors nor transferees.  The

---

[3]    See MCA § 31-2-327 ("This part must be applied and construed to effectuate the general purpose of making uniform the law with respect to the subject of this part among states enacting it.").

6.

plaintiffs, victims of a Ponzi scheme operator, charged that the defendant bank, despite knowledge of the operator's illegal activities, allowed the operator to wire transfer millions of dollars to offshore accounts even after state authorities had initiated legal action against the operator and an injunction had been entered freezing the operator's account. The Florida Supreme Court held that the plaintiffs had failed to state a claim against the defendant bank, reasoning that because the UFTA does not refer to parties other than debtors and transferees, to allow claims to be brought against other parties would "expand the FUFTA beyond its facial application and in a manner that is outside the purpose and plain language of the statute." Id. at 1277. The court concluded that the UFTA "was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party . . . for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent money transfer." Id.

Similarly, in Baker O'Neal Holdings v. Ernst & Young, No. 1:03-CV-0132-DFH, 2004 U.S. Dist. LEXIS 6277 (S.D. Ind. March 24, 2004), the United States District Court, applying Indiana's UFTA, reached the same conclusion and explicitly rejected the argument that UFTA's "catch-all" provision allowing the court to impose "any other relief the circumstances may require" is broad enough to encompass aiding and abetting liability. Id. at *41. As the court explained:

> "At most, IUFTA's 'catch-all' provision gives a court flexibility to fashion remedies not explicitly provided for in the statute. The provision does not permit the court to assign liability where the Act did not, or to create out of whole cloth substantive rights of action with accompanying damages which are not otherwise implied or stated in the statute. Accessory liability for fraudulent transfers cannot be supported by . . . the IUFTA." Id. (emphasis added).

7.

The same conclusion was reached in <u>FDIC v. White</u>, No. 3:96-CV-0560-P, 1998 U.S. Dist. LEXIS 3020 (N.D. Tex. March 5, 1998), which held that:

> "The Court finds that the statutes upon which the FDIC relies seek, generally, to void, set aside and recover fraudulently conveyed property. It allows a creditor to track the property. Nowhere does the statute imply that recovery could exceed the fraudulently transferred property. <u>Nor should the Court assume that recovery could be had from anyone not in receipt of such property</u> given both the nature of the relief afforded thereby and the statute's silence as to liability of transferors and transferees beyond recovery of the question of the property in question." <u>Id.</u> (emphasis added).[4]

This conclusion is also supported by the majority of cases interpreting the provisions of the Bankruptcy Code regarding fraudulent transfers.[5] Under federal law, it

---

[4]     <u>See also</u> <u>In re Parmalat Sec. Litig.</u>, 377 F. Supp. 2d 390, 417 (S.D.N.Y. 2005) (holding that no claim for aiding and abetting a fraudulent transfer exists under the Illinois UFTA); <u>Rohm & Haas Co. v. Capuano</u>, 301 F. Supp. 2d 156, 161 (D.R.I. 2004) (refusing to extend liability for a fraudulent transfer to a non-transferee under the Rhode Island UFTA); <u>Baker O'Neal Holdings, Inv. v. Ernst & Young LLP</u>, No. 1:03-cv-0132-DFH, 2004 U.S. Dist. LEXIS 6277, at *41 (S.D. Ind. Mar. 24, 2004) (citing "the multitude of other courts . . . holding that there is no accessory liability under the Uniform Fraudulent Transfer Act"); <u>FDIC v. S. Prawer & Co.</u>, 829 F. Supp. 453 (D. Me. 1993) (holding that "civil conspiracy to commit a fraudulent transfer cannot stand as an independent basis of civil liability" under Maine's UFTA). <u>But see</u> <u>Bondi v. Citigroup, Inc.</u>, No. BER-L-10902-04, 2005 WL 975856 (N.J. Super. Feb. 28, 2005) (declining to dismiss claim for aiding and abetting a fraudulent transfer under New Jersey's UFTA); <u>Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.</u>, 97 P.3d 140, 146 (Colo. App. 2003) (recognizing that the majority of courts have not allowed civil conspiracy claims based on the UFTA, but deciding to follow what the court characterized as the "minority view" permitting such claims). <u>But cf.</u> <u>Morganroth & Morganroth v. Norris, McLaughlin & Marcus</u>, 331 F.3d 406, 414 (3d Cir. 2003) (holding that plaintiff stated a claim for "creditor fraud" under New Jersey law by alleging that "an attorney has knowingly and intentionally participated in a client's unlawful conduct to hinder, delay and/or fraudulently obstruct the enforcement of a judgment of a court").

[5]     Because Montana's UFTA "bear[s] a close resemblance" to the language of Bankruptcy Code, the Bankruptcy Court for the District of Montana court has held that courts should "interpret Montana's fraudulent transfer provisions contemporaneously with those of the Bankruptcy Code." <u>Samson v. U.S. West Commc'ns, Inc. (In re Grigonis)</u>, 208 B.R. 950, 958 (Bankr. D. Mont. 1997).

8.

is well established that the fraudulent transfer provisions of the Bankruptcy Code cannot be used to impose liability on third parties who did not receive the assets at issue. <u>See</u>, <u>e.g.</u>, <u>Mack v. Newton</u>, 737 F.2d at 1358; <u>Robinson v. Watts Detective Agency, Inc.</u>, 685 F.2d 729, 737 & n.10 (1st Cir. 1982) (noting that this was an "open and shut question of law" and holding that "there can be no liability as a matter of law because neither [of the defendants] received any of the fraudulently transferred property"); <u>Jackson v. Star Sprinkler Corp.</u>, 575 F.2d 1223, 1234 (8th Cir. 1978) ("recovery under the Bankruptcy Act does not extend to permit a judgment against 'conspirators' who did not receive the property transferred"); <u>Elliott v. Glushon</u>, 390 F.2d at 516 (holding that attorneys who assisted a fraudulent transfer could not be held liable for the fraudulent transfer because "[t]he legislative theory [behind the provision in the Bankruptcy Act concerning fraudulent transfers] is cancellation, not the creation of liability for the consequences of wrongful act"); <u>In re Ampat S. Corp.</u>, 128 B.R. 405, 411 (Bankr. D. Md. 1991) (refusing to impose liability for a fraudulent transfer on a defendant who did not receive the property transferred); <u>Atlanta Shipping Corp. v. Chemical Bank</u>, 631 F. Supp. 335, 348 (S.D.N.Y. 1986) (rejecting a claim for "aiding and abetting a fraudulent conveyance" on the grounds that "the appropriate relief is to void the conveyance" and therefore "[a]n aiding and abetting claim against someone other than a transferee is meaningless"), <u>aff'd</u> 818 F. 2d 240 (2d Cir. 1987).[6]

---

[6]    The conclusion that non-transferees cannot be held liable for fraudulent transfers is also supported by cases interpreting the fraudulent transfer laws of states that have not adopted the UFTA. <u>See, e.g.</u>, <u>Thomson Kernaghan & Co. v. Global Intellicom, Inc.</u>, 99 Civ. 3005 (DLC), 1999 U.S. Dist. LEXIS 13723, at *4–5 (S.D.N.Y. Sept. 14, 1999) ("[U]nder New York law no fraudulent conveyance claim may be maintained against Hariton merely for his participation in the alleged transfer."); <u>Geren v. Quantum Chem. Corp.</u>, 832 F. Supp. 728, 737 (Continued . . .)

9.

As a result of these and similar decisions, it is now well recognized that "most courts have been reluctant to extend the reach of fraudulent conveyance actions so as to include parties that are only participants in a fraudulent transfer." Rohm & Haas Co. v. Capuano, 301 F. Supp. 2d at 161. To the contrary, "[c]ourts have generally held as to fraudulent conveyances that a person who assists another to procure one, is not liable in tort to the insolvent's creditors." Lowell Staats Mining Co., Inc. v. Phila. Elec. Co., 878 F. 2d 1271, 1276 n.1 (10th Cir. 1989).

It is clear from the face of the pleadings that Paul Hastings was neither the debtor nor the transferee of the assets in question. Indeed, the complaint specifically alleges that NorthWestern was "the only party that benefited in the transaction." (Compl. ¶ 5.) Therefore, all of the claims against Paul Hastings should be dismissed because Montana's UFTA does not impose liability on non-transferees for a fraudulent transfer.[7]

---

(. . . continued)

(S.D.N.Y. 1993) ("[T]he action of fraudulent conveyance does not create an independent remedy of money damages against third parties who aided the debtor's transfer at all."); FDIC v. Porco, 552 N.E.2d 158, 159 (N.Y. 1990) (refusing to "create a creditor's remedy for money damages against parties who . . . were neither transferees of the assets nor beneficiaries of the conveyance"); cf. Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1090 (11th Cir. 2004) (holding that there is no independent cause of action under Georgia law for aiding and abetting a fraudulent transfer, but that Georgia law permits claims against non-transferees for conspiracy to defraud a creditor).

[7] This is particularly clear with respect to Magten's second and third causes of action for aiding and abetting and conspiring to conduct a fraudulent transfer, respectively. The same conclusion also applies to Magten's first and fourth causes of action for aiding and abetting a breach of fiduciary duty and malpractice since these claims are simply another way in which Magten is attempting to impose liability upon Paul Hastings for a fraudulent transfer when Paul Hastings did not receive any of the assets that were transferred.

II.    MAGTEN DOES NOT HAVE STANDING TO ASSERT
CLAIMS AGAINST PAUL HASTINGS FOR AIDING
AND ABETTING A BREACH OF FIDUCIARY DUTY
OR MALPRACTICE.

Magten's claims against Paul Hastings for aiding and abetting a breach of

fiduciary duty and malpractice should be dismissed on the pleadings for the additional

reason that they are derivative claims and Magten does not have standing to assert any

derivative claims on Clark Fork's behalf.

Montana law clearly provides that "stockholders and guarantors of a

corporation do not have the right to pursue an action on their own behalf when the cause

of action accrues to the corporation." Kondelik v. First Fidelity Bank, 857 P.2d 687, 692

(Mont. 1993) (quoting Richland Nat'l Bank & Trust v. Swenson, 816 P.2d 1045, 1054

(Mont. 1991)).[8]  The complaint alleges that Paul Hastings aided and abetted the officers

and directors of Clark Fork in breaching their fiduciary duties to Clark Fork and that Paul

Hastings committed malpractice while representing Clark Fork.  Such claims, if they are

cognizable at all, clearly accrued to Clark Fork itself and not to its owner or creditors.

In an effort to overcome this obstacle to its claims, Magten alleges that

Clark Fork's officers owed "individual fiduciary duties" to Clark Fork's creditors

because Clark Fork was allegedly "in the zone of insolvency" at the time of the

transaction at issue.  (Compl. ¶ 60.)  This reasoning is fundamentally flawed because it is

based on the fiction that Clark Fork's alleged insolvency transformed these claims from

---

[8]    Clark Fork is a limited liability company organized under Montana law.  Section
35-8-1104 of the Montana Code allows a member of a limited liability company
to bring a derivative action on behalf of the company if the member meets the
requirements of the statute.  See MCA § 35-8-1104.

11.

derivative claims into direct creditor claims. As Vice Chancellor Strine held in a case in which a similar argument was raised:

> "The fact that the corporation has become insolvent does not turn such [derivative] claims into direct creditor claims, it simply provides creditors with standing to assert those claims. At all times, claims of this kind belong to the corporation itself because even if the improper acts occur when the firm is insolvent, they operate to injure the firm in the first instance by reducing its value, injuring creditors only indirectly by diminishing the value of the firm and therefore the assets from which the creditors may satisfy their claims.
>
> . . .
>
> Thus, regardless of whether they are brought by creditors when a company is insolvent, these claims remain derivative, with either shareholders or creditors suing to recover for a harm done to the corporation as an economic entity and any recovery logically flows to the corporation and benefits the derivative plaintiffs indirectly to the extent of their claim on the firm's assets. The reason for this bears repeating—the fact of insolvency does not change the primary object of the director's duties, which is the firm itself." Prod. Res. Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 776, 792 (Del. Ch. Ct. 2004) (emphasis added).

It is well established that, in the absence of insolvency, only a company's equity holders, and not a company's creditors, have standing to bring a derivative claim on behalf of the company. See, e.g., id. at 787 ("Typically, creditors may not allege fiduciary duty claims against corporate directors"). Furthermore, Clark Fork is a limited liability company, and the Montana statute authorizing derivative actions against limited liability companies authorizes only members of the limited liability company to bring such claims. See MCA § 35-8-1104.

Moreover, even assuming arguendo that Clark Fork was in the "zone of insolvency" when the transaction at issue took place, and assuming further that the

12.

Montana statute could be extended beyond its terms to allow a creditor to assert derivative claims on behalf of Clark Fork, Magten still does <u>not</u> have standing to assert claims against Paul Hastings because Magten was not a creditor of Clark Fork at the time of the transactions at issue.  <u>See</u> <u>In re NorthWestern Corp.</u>, 2004 WL 1661016, at *1.

Significantly, the Montana statute authorizing derivative actions against limited liability companies expressly requires that "[i]n a derivative action for a limited liability company, the plaintiff must be a member of the company when the action is commenced and:  (a) <u>must have been a member at the time of the transaction of which the plaintiff complains</u>."  MCA § 35-8-1104 (2)(a) (emphasis added).[9]

The primary purpose of the "contemporaneous ownership" rule embodied in MCA § 35-8-1104(2)(a) is to prevent suits such as the one <u>sub judice</u>—"'strike suits,' where individuals purchase shares in a corporation [or, in this instance, a beneficial interest in junior debentures of a limited liability company] with litigious motives."  13 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 5981.10, at 146–47 (rev. ed. 2004); <u>Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)</u>, 320 F.3d 291, 297 (2d Cir. 2003) (characterizing the primary purpose of contemporaneous ownership rule as "prevent[ing] . . . courts from being used to litigate

---

[9]     As such, this provision of Montana law is similar to Federal Rule of Civil Procedure Rule 23.1, which requires that:

> "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege . . . that <u>the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains</u> or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law." Fed. R. Civ. P. 23.1 (emphasis added).

13.

purchased grievances" (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1828 (2d ed. 1986)).  As a leading treatise explains, in the rule's absence, subsequent purchasers could achieve precisely the result that Magten seeks to achieve here, namely, to "reap a windfall from a[] recovery in a derivative proceeding which was not considered in the purchase price of their shares." Fletcher, supra, § 5981.10, at 147.

Magten apparently seeks to circumvent the contemporaneous ownership requirement by relying on a provision of the indenture which, according to Magten, "expressly acknowledges that the holders of the QUIPS are intended beneficiaries of [Clark Fork's] obligations with respect to the Junior Debentures and that if the Property Trustee of the Trust (the legal titleholder to the Junior Debentures) fails to act, any holder of the QUIPS can sue directly to enforce the Property Trustee's rights."  (Compl ¶ 23.) Because the trustee has not asserted claims against Paul Hastings, Magten insists that it "has standing under the Indenture to enforce both the Trust's rights and its own individual rights as successor to the QUIPS holders who were its predecessors in interest." (Compl. ¶ 62; see also Compl. ¶ 97.)

These allegations, however, cannot establish Magten's standing to assert derivative claims on behalf of Clark Fork in this matter.  Although an indenture may confer on Magten the right, in appropriate circumstances, to bring a direct action on behalf of the QUIPS trust to "enforce . . . the Trust's rights and [Magten's] own individual rights," the indenture does not and cannot grant Magten the right to bring derivative claims on behalf of Clark Fork.  The right and capacity to bring a derivative suit on behalf of a corporation or limited liability company is an equitable right that

14.

cannot be contractually assigned or transferred.  See, e.g., Lewis v. Chiles, 719 F.2d

1044, 1048 (9th Cir. 1983); Starrels v. First Nat'l Bank of Chi., No. 85 C 6458, 1987 U.S.

Dist. LEXIS 518 (N.D. Ill. Jan. 21, 1987), aff'd, 870 F.2d 1168 (7th Cir. 1989).

        To be sure, courts have recognized that "record ownership of shares is not

necessary to bring a derivative proceeding and, therefore, holders of equitable or

beneficial interests in shares have standing to sue."  13 Fletcher, supra, § 5975, at 132;

see, e.g., Drachman v. Harvey, 453 F.2d 722 (2d Cir 1971) (shareholders holding stock in

"street name" have standing to assert derivative claims).  And some courts, applying this

general rule, have held that beneficiaries of a trust may have standing to sue where the

trust corpus consists of shares.  See Fletcher, supra, § 5976, at 134–35 (citing Silling v.

Erwin, 881 F. Supp. 236, 239 (S.D.W. Va. 1995) ("beneficiaries of a trust holding stock

are equitable shareholders who may bring an action against the corporation"); Edgeworth

v. First Nat'l Bank of Chi., 677 F. Supp. 982 (S.D. Ind. 1988)).  But see Matthies v.

Seymour Mfg. Co., 270 F.2d 365 (2d Cir. 1959) (holding that one of several trust

beneficiaries cannot sue derivatively on behalf of a trustee who has refused to sue without

joinder of all beneficiaries as indispensable parties).  In each of these cases, however,

"the plaintiffs were beneficiaries or beneficial owners of shares at the time of the alleged

wrongful actions."  Silling, 881 F. Supp. at 239 (emphasis added) (collecting cases).

        Where, as here, the plaintiff complains of actions that occurred prior to its

acquisition of a beneficial interest, the plaintiff simply lacks standing to commence a

derivative suit.  Id.  See generally Edgeworth, 677 F. Supp. at 991, 992 (dismissing the

parties' arguments concerning whether the plaintiff could "step into the position of the

Trust and rely on the Trust's shareholder status to establish the requisite standing to sue

15.

derivatively" as misplaced, because in a derivative action, the "'[p]laintiff sues on behalf of himself and all other <u>stockholders</u> of [the corporation], not on behalf of himself and his fellow beneficiaries of the ... trust[]'" (quoting <u>Matthies</u>, 270 F.2d at 376–77 (Waterman, J., dissenting))). [10]

        In sum, because Magten was not a member of Clark Fork or a creditor of Clark Fork "at the time of the transaction of which the plaintiff complains," Magten clearly does not have the ability to assert a derivative claim on Clark Fork's behalf.[11] Accordingly, Magten's claims against Paul Hastings for aiding and abetting a breach of fiduciary duty and malpractice should be dismissed on the pleadings.

---

[10]   <u>But see</u> <u>Magten Asset Mgmt. Corp. v. Mike J. Hanson, et al.</u>, No. CV-04-26-BU-RFC (D. Mont. Jan. 27, 2005) (holding with respect to similar claims asserted in a separate action by Magten against NorthWestern's officers that Magten had standing to sue derivatively even though it had acquired its interest in the QUIPS after the time of the transfer). Significantly, the court in the <u>Hanson</u> action failed even to cite—much less to analyze—MCA § 35-8-1104(2)(a), the Montana statute which flatly prohibits the prosecution of this derivative action by Magten.

[11]   Notably, Magten also cannot allege that it ever had any ownership interest in Clark Fork after the underlying debt had been assigned from Clark Fork to NorthWestern. As such, apart from its failure to own the QUIPS at the time of the alleged "fraudulent transfer" (which is itself fatal to Magten's standing to bring a derivative claim in this matter), Magten also was never actually a creditor of Clark Fork because Clark Fork's obligations under the QUIPS were assumed by NorthWestern <u>before</u> the QUIPS were even purchased by Magten.

16.

<u>CONCLUSION</u>

For the reasons set forth above, Paul Hastings respectfully requests that the Court enter a judgment on the pleadings dismissing Magten's claims against Paul Hastings with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Robert J. Dehney (#3578)
Curtis S. Miller (#4583)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
(302) 658-9200
   Attorneys for Defendant Paul Hastings
   Janofsky & Walker LLP

OF COUNSEL:

Dennis E. Glazer
Paul Spagnoletti
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

March 31, 2006

513536