**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTHWESTERN CORPORATION, | Case No. 03-12872 (CGC) |
| Debtor. | |

### ORDER CONFIRMING DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

NorthWestern Corporation, a Delaware corporation (the "Debtor" or "NOR"), having filed with this Court its voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") on September 14, 2003 (the "Petition Date"); and the Debtor having filed with this Court its First Amended Plan of Reorganization Under Chapter

11 of the Bankruptcy Code dated May 24, 2004 (the "First Amended Plan") and Second

Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated

August 18, 2004 [Dkt. No. 2020] (as thereafter modified, the "Second Amended Plan" or

"Plan")[1]; and

(i) the Debtor having filed with this Court the First Amended Disclosure Statement Pursuant to

Section 1125 of the Bankruptcy Code for the Plan of Reorganization of the Debtor dated May

17, 2004 (the "First Amended Disclosure Statement"), Second Amended and Restated

Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Plan of

Reorganization of the Debtor dated August 18, 2004 [Dkt. No. 2021] (the "Second Amended

Disclosure Statement" or "Disclosure Statement") and Summary Disclosure Statement Pursuant

to Section 1125 of the Bankruptcy Code dated August 18, 2004 [Dkt. No. 2023] (the "Summary

Disclosure Statement"); and

---

[1] Any capitalized term used herein but not otherwise defined shall have the meaning ascribed to such term in the Plan.

(ii) the First Amended Disclosure Statement having been approved as containing "adequate information," as such term is defined in Section 1125 of the Bankruptcy Code, by Order of this Court dated May 26, 2004 [Dkt. No. 1373] (the "Disclosure Statement Approval Order"); and

(iii) the Disclosure Statement Approval Order having, (1) authorized the Debtor to solicit acceptances or rejections of the First Amended Plan, (2) approved the form of ballots to be transmitted with the First Amended Plan and First Amended Disclosure Statement for voting purposes, (3) fixed August 2, 2004 at 5:00 p.m. (PDT) as the deadline for submitting ballots accepting or rejecting the Plan (the "Voting Deadline"), (4) fixed August 2, 2004 at 4:00 p.m. (EDT) as the deadline for objections to confirmation of the First Amended Plan to be filed and served (the "Objection Deadline"), (5) fixed August 13, 2004 at 4:00 p.m. (EDT) as the deadline for the Debtor to file and serve any response to an objection to confirmation and (6) approved the form and manner of notice of the Confirmation Hearing (as defined below) and of the Voting and Objection Deadlines; and this Court having scheduled a hearing (as such hearing may be continued, the "Confirmation Hearing") pursuant to Section 1128 of the Bankruptcy Code for

August 25, 2004 to consider confirmation of the Plan pursuant to Section 1129 of the

Bankruptcy Code; and

(iv) the Debtor having solicited votes on the First Amended Plan by transmitting copies of the First Amended Plan, First Amended Disclosure Statement, the Disclosure Statement Approval

Order, a notice of the Confirmation Hearing (the "Confirmation Hearing Notice") and an appropriate ballot to all impaired creditors entitled to vote on the First Amended Plan; and the Court having considered the Declaration of Voting Agent Regarding Tabulation of Votes in Connection with Debtor's First Amended Plan of Reorganization [Dkt. No. 1930] (the "Voting

Agent Declaration"); and

2

(v) it appearing that due notice of the Voting Deadline, the Confirmation Hearing and the Objection Deadline has been given by the Debtor to creditors and other parties-in-interest in accordance with the Disclosure Statement Approval Order, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure as evidenced by the affidavits of mailing and of publication filed with this Court; and the Disclosure Statement and Summary Disclosure Statement having been approved as containing "adequate information," as such term is defined in Section 1125 of the Bankruptcy Code, by Order of this Court dated September 2, 2004 [Dkt. No. 2033] (the

"Resolicitation Order"); and

(vi) the Resolicitation Order having, (1) authorized the Debtor to resolicit acceptances or rejections of the Plan of Class 7, 8, and 9 claim holders, (2) approved the form of ballots to be transmitted with the Summary Disclosure Statement for voting purposes, (3) fixed September 29, 2004 at 5:00 p.m. (PDT) as the deadline for submitting ballots accepting or rejecting the Plan (the "Resolicitation Voting Deadline"), (4) fixed September 15, 2004 at 4:00 p.m. (EDT) as the deadline for objections to confirmation of the Plan to be filed and served, (5) approved the form and manner of notice of the continued Confirmation Hearing and of the Resolicitation Voting Deadline; and this Court having continued the Confirmation Hearing to October 6, 2004 to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code; and

(vii) the Debtor having resolicited votes on the Plan by transmitting copies of the Summary Disclosure Statement, the Resolicitation Order, notice of the continued Confirmation Hearing (the "Continued Confirmation Hearing Notice") and an appropriate ballot to all impaired creditors entitled to vote on the Plan; and the Court having considered the Declaration of Voting Agent Regarding Tabulation of Votes in Connection with the Debtor's Second Amended Plan of Reorganization [Dkt. No. 2170]; and

(viii) it appearing that due notice of the Resolicitation Voting Deadline and the continued Confirmation Hearing has been given by the Debtor to creditors and other parties-in-interest in accordance with the Resolicitation Order, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure as evidenced by the affidavits of mailing and publication filed with this

Court; and

(ix) the Debtor having filed with this Court a Memorandum of Law in Support of Confirmation of the Debtor's Second Amended and Restated Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Dkt. No. 1928] and Memorandum of Law in Further Support of Confirmation of Debtor's Second Amended and Restated Plan of Reorganization under Chapter 11 of the Bankruptcy Code and in Response to Supplemental Objections to Confirmation [Dkt. No. 2145] (the "Supplemental Brief") filed in response to the Supplemental Objection of Magten Asset Management Corporation to Confirmation of the Debtor's Second Amended and Restated Plan of Reorganization [Dkt. No. 2105] (the "Magten Objection") and the Supplemental Objection of Law Debenture Trust Company of New York to Confirmation of the Debtor's Second Amended Plan of Reorganization [Dkt. No. 2104] (the "Law Debenture Objection"); and

(x) it appearing that the objections to confirmation filed by certain parties-in-interest have been resolved, withdrawn or overruled; and

(xi) this Court having conducted the Confirmation Hearing on August 25, 2004 and the continued Confirmation Hearing on October 6, 2004, and after due deliberation and consideration and having reviewed all pleadings, proceedings and evidence heretofore presented in this Chapter 11 case and at the respective confirmation hearings and sufficient cause appearing therefore; and

4

IT HAVING BEEN FOUND AND DETERMINED by this Court that:

A. Findings of Fact and Conclusions of Law. The findings of fact and conclusions of law set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rule 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. This Order incorporates the Court's oral ruling issued in the Debtor's Chapter 11 Case on October 8, 2004, which Order, among other things, confirmed the Plan in all respects and overruled all objections to confirmation not otherwise withdrawn or resolved as identified by the Debtor in Exhibit A to the Debtor's Memorandum of Law in Support of Confirmation of Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 1928], as amended, Notice of Filing of Amended Exhibit A to the Memorandum of Law in Support of Confirmation of Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 2156].

B. Judicial Notice. Pursuant to Federal Rule of Evidence 201, the Bankruptcy Court takes judicial notice of the documents included in the Debtor's Request to Take Judicial Notice of Certain Pleadings and Related Documents Filed with the Court filed on August 18, 2004 [Dkt. No. 1929] (the "Debtor's Request for Judicial Notice"). To the extent not included in the Debtor's Request for Judicial Notice, the Bankruptcy Court, pursuant to Federal Rule of Evidence 201, takes judicial notice of the docket of this Chapter 11 Case maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the various hearings held before the Bankruptcy Court during the pendency of the Debtor's Chapter 11 Case.

C. Offer of Proof. The Bankruptcy Court takes judicial notice of the Debtor's Offer of Proof and Outline of Evidence in Support of Adequacy of Debtor's Procedures and Notice in Conjunction with its Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 1932, Debtor's Exh. 15] (the "Offer of Proof"). The Bankruptcy Court enters into evidence Debtor's Exhibits 1-90, 114-121, 127-139, 142-146 and 150, identified on the Notice of Designation of Exhibits to be Used with Respect to the Confirmation Hearing filed on August 20, 2004 [Dkt. No. 1961], as such revised exhibits were introduced at the Confirmation Hearing, Exhibits 1-6 of the Creditors' Committee, identified on the Confirmation Hearing Amended Exhibit List of the Official Committee of Unsecured Creditors filed on August 23, 2004 [Dkt. No. 1970] and Exhibits 1 and 2 of the Equity Holders introduced into evidence at the Confirmation Hearing.

Pursuant to Federal Rule of Evidence 201, the Bankruptcy Court takes judicial notice of

the Supplemental Offer of Proof and Outline of Evidence in Support of the Adequacy of the

Debtor's Procedures and Notice in Conjunction with its Second Amended and Restated Plan of

Reorganization under Chapter 11 of the Bankruptcy Code and Request to Take Judicial Notice of

Certain Pleadings Filed with the Court [Dkt. No. 2166] (the "Supplemental Offer of Proof").

The Bankruptcy Court enters into evidence Debtor's Exhibits 151-166, 180 and 185, as such

revised exhibits were introduced at the Confirmation Hearing.

D. Jurisdiction and Venue. This Court has jurisdiction over this Chapter 11 Case and the subject matter of the Confirmation Hearing pursuant to 28 U.S.C. §§ 157 and 1334. The Confirmation Hearing is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2) and this Court has jurisdiction to enter a final order with respect thereto. Venue of this Chapter 11 Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E. Background.

> 1. Petition. On September 14, 2003 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code [Dkt. No. 1]. The Debtor continues to operate its businesses and manage its properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case. The Creditors' Committee was appointed by the Office of the United States Trustee on September 30, 2003.

> 2. Appointment of the Creditors' Committee. On October 2, 2003, the United States Trustee appointed a nine (9) member Creditors' Committee in this Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code to represent the interest of all holders of unsecured claims. The members of the Creditors' Committee were: (i) OCM Opportunities Fund IV, LP; (ii) Law Debenture Trust Company of New York, as successor Indenture Trustee to The Bank of New York; (iii) Franklin Templeton Mutual Series Fund; (iv) Wilmington Trust Co.; (v) HSBC Bank USA; (vi) Rocky Mountain Contractors, Inc.; (vii) Avenue Capital Management; (viii) AG Capital Recovery Partners III, LP; and (ix) Comanche Park, LLC [Dkt. No. 122]. By notice dated November 25, 2003, the United States Trustee added Magten Asset Management Corp. to the Creditors' Committee following Rocky Mountain Contractors, Inc. declining to serve on the Creditors' Committee [Dkt. No. 449]. By notice dated May 6, 2004, the United States Trustee removed Magten Asset Management Corp. and Law Debenture Trust Company of New York from the Creditors' Committee [Dkt. No. 1223]. By notice dated May 7, 2004, the United States Trustee removed Comanche Park, LLC from the Creditors' Committee [Dkt. No. 1238]. By notice dated July 27, 2004, the United States Trustee filed the Seventh

6

Amended Notice of Appointment reflecting OCM Opportunities
Fund IV, L.P.'s resignation from the Creditors' Committee
effective July 19, 2004 [Dkt. No. 1764]. By written notice to the
United States Trustee dated October 8, 2004, AG Capital Recovery
Partners III, L.P., resigned from the Creditors' Committee
effective October 8, 2004.

As of the date of this Order, the Creditors' Committee was comprised of: (i) Franklin

Templeton Mutual Series Fund; (ii) Wilmington Trust Co.; (iii) HSBC Bank USA; and (iv)

Avenue Capital Management.

3.    Bar Date Order and Notice Thereof. The
Court entered an order establishing January 15, 2004 at 5:00 p.m.
(Pacific Standard Time) as the deadline for non-governmental
creditors, and establishing April 15, 2004 at 5:00 p.m. (Pacific
Standard Time) as the deadline for governmental creditors
(collectively, the "Bar Date"), to file proofs of claim for each claim
they assert against the Debtor that arose before the Petition Date
[Dkt. No. 197, Debtor's Exh. 21] (the "Bar Date Order"). The
notice of the Bar Date was mailed to all known creditors of the
Debtor and published in numerous regional and national newspapers
in accordance with the Bar Date Order. As described in the
Affidavit of Service of Bar Date Notice, sworn to by Angela M. Lo
on November 17, 2003 [Dkt. No. 406, Debtor's Exh. 22] (the "Lo
Affidavit"), copies of: (i) the Notice of Deadlines for Filing Proofs
of Claims and a personalized Proof of Claim were served on the
creditors listed on Exhibit A to the Lo Affidavit; (ii) copies of the
Notice of Deadlines for Filing Proofs of Claims and a blank Proof
Claim were served upon the 2002 Service List attached as Exhibit
B to the Lo Affidavit; and (iii) the Notice of Deadlines for Filing
Proofs of Claim was served on the list attached as Exhibit C to the
Lo Affidavit. The Court hereby finds that: (i) the transmittal of the
Notice of Deadlines for Filing Proofs of Claim was adequate and
sufficient under the circumstances of this Chapter 11 Case; (ii) such
notice was provided in compliance with the Bar Date Order, the
Bankruptcy Code and the Bankruptcy Rules; and (iii) no other or
further notice is required.

F.  Debtor's Property Rights, Title and Interests in Executory Contracts, Leases, and Rights
of Way. On July 16, 2004, the Debtor filed its Notice of Contracts the Debtor intends to
Assume and/or Reject Pursuant to Section IV.F of the Debtor's First Amended
Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Plan of
Reorganization [Dkt. No. 1700] and on August 9, 2004, the Debtor filed its Notice of
Amendment to Schedules of Contracts the Debtor Intends to Assume and/or Reject
Pursuant to Section IV.F of the Debtor's First Amended Disclosure Statement [Dkt. No.

["

to Section 1125 of the Bankruptcy Code for the Plan of Reorganization of the Debtor [Dkt. No. 1926, Debtor's Exh. 8], and Summary Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code [Dkt. No. 1921, Debtor's Exh. 11]. On August 25, 2004, after due notice, the Court held a confirmation hearing on the Debtor's Second Amended Plan. On August 31, 2004, following the hearing, the Debtor filed its revised Second Amended Plan [Dkt. No. 2020], Second Amended Disclosure Statement [Dkt. No. 2021] and Summary Disclosure Statement [Dkt. No. 2023]. After due notice, this Court entered on September 2, 2004 an Order (A) Approving the Debtor's Second Amended and Restated Disclosure Statement and Summary Disclosure Statement, (B) Setting a Record Date for Voting Purposes, (C) Authorizing Resolicitation of Votes, (D) Scheduling a Continued Hearing on Confirmation of Second Amended and Restated Plan of Reorganization, (E) Establishing Notice Requirements Regarding the Continued Confirmation Hearing and Approving the Form and Manner of Notice, and (F) Granting Related Relief finding that the Second Amended Disclosure Statement and Summary Disclosure Statement contained "adequate information" within the meaning of Section 1125 of the Bankruptcy Code and established procedures for the Debtor's resolicitation of votes on the Second Amended Plan [Dkt. No. 2033]. In accordance with the Resolicitation Order, on or about September 8, 2004 the Debtor commenced the resolicitation of votes on the Second Amended Plan [Dkt. No. 2126].

I.  Notice.

1.  Compliance with Disclosure Statement Approval Order. In accordance with the Disclosure Statement Approval Order, the Bankruptcy Code and the Bankruptcy Rules, as described in the Affidavit of Service, sworn to by Chris Schepper on June 14, 2004 [Dkt. No. 1469, Debtor's Exh. 31] (the "Schepper Affidavit"), the Debtor timely: (a) mailed (i) notice of the date, time, and place of the Confirmation Hearing, (ii) notice of the deadline and procedures for filing objections to confirmation of the Plan, and (iii) an appropriate ballot for voting on the Plan, upon the parties set forth in the Disclosure Statement Approval Order; and (b) published notice of the Confirmation Hearing in each of the following (i) Argus Leader, (ii) Billings Gazette, (iii) Great Falls Tribune, (iv) the Missoulian, (v) New York Times, (vi) Rapid City Journal, (vii) USA Today, and (viii) The Wall Street Journal as required by the Disclosure Statement Approval Order [Debtor's Exh. 23-31]. The Court hereby finds that: (i) the transmittal of the Notice of the Confirmation Hearing and Ballots was adequate and sufficient under the circumstances of this Chapter 11 Case; (ii) such notice was provided in compliance with the Disclosure Statement

Order, the Bankruptcy Code and the Bankruptcy Rules; and (iii) no other or further notice is required.

2. Compliance with the Resolicitation Order. In accordance with the Resolicitation Order, the Bankruptcy Code and the Bankruptcy Rules, as described in the Affidavit of Service, sworn to by Chris Schepper on September 27, 2004 [Dkt. No. 2126, Debtor's Exh. 155] (the "Schepper Resolicitation Affidavit"), the Debtor timely (a) mailed: (i) notice of the date, time, and place of the continued Confirmation Hearing, (ii) the Summary Disclosure Statement; and (iii) an appropriate ballot for voting on the Plan, upon the parties set forth in the Resolicitation Order; and (b) caused to be published notice of the continued Confirmation Hearing in each of the following (i) Great Falls Tribune, (ii) the Missoulian, (iii) New York Times, (iv) Rapid City Journal, (v) USA Today, (vi) The Wall Street Journal, (vii) Billings Gazette; and (viii) Argus Leader as required by the Resolicitation Order [Dkt. Nos. 2128 - 2135, Debtor's Exh. 156 – 163]. The Court hereby finds that: (i) the transmittal of the Notice of the Continued Confirmation Hearing and Ballots for resolicitation was adequate and sufficient under the circumstances of this Chapter 11 Case; (ii) such notice was provided in compliance with the Resolicitation Order, the Bankruptcy Code and the Bankruptcy Rules; and (iii) no other or further notice is required.

J. Tabulation of Votes. As described in the Declaration of Voting Agent Regarding Tabulation of Votes in Connection with Debtor's First Amended Plan of Reorganization (the "Voting Agent Declaration") [Dkt. No. 1930, Debtor's Exh. 32], sworn to by Jonathan A. Carson on August 17, 2004, Kurtzman Carson Consultants LLC (the "Balloting Agent") distributed the solicitation packages as set forth in the Schepper Affidavit. The Balloting Agent received and tabulated the Ballots as follows: (a) each returned Ballot was opened and inspected at the Balloting Agent's office; (b) Ballots were date stamped, sorted according to Plan class, and scanned into the Bankruptcy Administration System; (c) all Ballots received by the Voting Deadline were then entered into the Bankruptcy Administration System and tabulated in accordance with the tabulation rules outlined in the Disclosure Statement Order. Voting Agent Declaration, ¶12. Classes 7, 9 and 12 accepted the First Amended Plan with respect to both numerosity and amount. Class 8 voted to reject the First Amended Plan.

K. Tabulation of Votes in Connection with the Releases. The Voting Agent Declaration sets forth the following results in connection with the releases provided under the First Amended Plan:

| Impaired Class | Total Members Voting | Members Released | Members Not Released | Abstentions | % Released |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

10

| Class 7 | 261 | 215 | 46 | 264 | 82.38% |
|---------|-----|-----|-----|-----|--------|
| Class 8 | 2150 | 1429 | 721 | 266 | 66.47% |
| Class 9 | 24 | 18 | 6 | 7 | 75.00% |
| Class 12 | 28 | 20 | 8 | 0 | 71.43% |

See Voting Agent Declaration, ¶ 16.

L. Tabulation of Votes in Connection with Resolicitation. As described in the Declaration of Voting Agent Regarding Tabulation of Votes in Connection with Debtor's Second Amended Plan of Reorganization (the "Voting Agent Resolicitation Declaration") [Dkt. No. 2170, Debtor's Exh. 185], sworn to by Christopher Schepper on October 5, 2004, the Balloting Agent distributed the resolicitation packages as set forth in the Schepper Resolicitation Affidavit. The Balloting Agent, with the assistance of the Bondholder Communication Group ("BCG"), received and tabulated the Ballots as follows: (a) each returned Ballot was opened and inspected; (b) Ballots were date stamped, sorted according to Plan class, and scanned into the Bankruptcy Administration System; (c) all Ballots received by the voting deadline were then tabulated in accordance with the tabulation rules outlined in the Resolicitation Order. Voting Agent Resolicitation Declaration, ¶ 10-15. Classes 7, 8(a), 9 and 12 accepted the Second Amended Plan with respect to both numerosity and amount. Class 8(b) voted to reject the Second Amended Plan.

M. Tabulation of Class 8(b) Options. The Voting Agent Resolicitation Declaration sets forth the following results in connection with the holders of Class 8(b) options:

| Members Voted | # Members for Option 1 | # Members for Option 2 | Shares for Option 1 | Shares for Option 2 |
|---|---|---|---|---|
| 532 | 439 | 93 | 631,622 | 253,221 |

N. Tabulation of Votes in Connection with Releases on Resolicitation. The Voting Agent Resolicitation Declaration sets forth the following results in connection with the releases provided under the Second Amended Plan:

| Impaired Class | Total Members Voting | Members Released | Members Not Released | Abstentions | % Released |
|---|---|---|---|---|---|
| Class 7 | 423 | 390 | 33 | N/A | 92.20% |
| Class 8(a) | 2593 | 1963 | 630 | N/A | 75.70% |
| Class 8(b) | 656 | 499 | 157 | N/A | 76.07% |
| Class 9 | 41 | 29 | 8 | 4 | 70.73% |

See Voting Agent Declaration, ¶ 19.

O. Objections

1.     Objection of Stephen R. Heflin [Dkt. No. 1779]. The objection of Stephen R. Heflin failed to provide any basis for the objection and is overruled.

2.     Limited Objection of Wells Fargo, National Association ("Wells Fargo"), in its Capacity as Indenture Trustee, to Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code re: Docket No. 1351 [Dkt. No. 1780] and Limited Objection of U.S. Bank, National Association ("U.S. Bank"), in its Capacity as Indenture Trustee, to Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code re: Docket No. 1351 [Dkt. No. 1781]. Wells Fargo sought clarifying language in connection with Section 5.17 of the First Amended Plan as well as the defined terms "Secured Bonds" and "South Dakota Pollution Control Bonds," Sections 1.158 and 1.164 of the First Amended Plan, respectively. U.S. Bank sought clarifying language in connection with Section 5.17 of the First Amended Plan as well as Section 5.5 of the First Amended Plan. The Court hereby finds that both objections have been resolved pursuant to revisions made to the Second Amended Plan and the objections are overruled. See, Plan §§ 1.168 (Secured Bonds), 1.174 (South Dakota Pollution Control Bonds), 1.175 (South Dakota Pollution Control Claims), 5.5(b) (Cancellation and

13

Surrender of Existing Securities Agreements, and 5.18 (Indenture
Trustees Charging Lien).

       3.      Limited Objection of PPL Montana LLC
("PPLM") to Confirmation of the Debtor's First Amended Plan of
Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt.
No. 1784].

           a.      The following documents
have been filed in connection with PPLM's claim: (i)
PPLM's proof of claim, Claim No. 714, as amended on
August 3, 2004 (the "PPLM Claim"); (ii) Debtor's
Objection to Claim of PPL Montana, LLC Pursuant to 11
U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 [Dkt. No.
1658, Debtor's Exh. 85]; (iii) Motion of PPL Montana for
Abstention or in the Alternative for an Order Directing that
Resolution of the Objection to PPL Montana, LLC's Proof
of Claim be Determined by the United States District Court
for the District of Montana [Dkt. No. 1859]; (iv) Order
Granting Abstention [Dkt. No. 2159]; (v) Motion Pursuant
to Sections 105(a), 363(b) and 502(c) of the Bankruptcy
Code for Estimation of PPL Montana LLC's Claim and to
Establish Disputed Claim Reserve [Dkt. No. 2056]; and
(vi) Stipulation and Order Resolving Section III of the
Limited Objection of PPL Montana, LLC to Confirmation

of the Debtor's First Amended Plan of Reorganization
Under Chapter 11 of the Bankruptcy Code and the Debtor's
Motion Pursuant to Sections 105(a), 363(b) and 502(a) of
the Bankruptcy Code for Estimation of PPL Montana
LLC's Claim and Establish a Disputed Claim Reserve [Dkt.
No. 2183] (the "PPLM Stipulation").

            b.     PPLM objected to the First
Amended Plan because it asserted that the injunctions
provided for in the First Amended Plan attempted to
extinguish its setoff rights. Section 10.5(b)(i) of the
Second Amended Plan provides that "[n]otwithstanding
any provision of this Plan to the contrary, this Plan: (i) shall
not enjoin or extinguish any rights or claims asserted by
[PPLM] in its proof of claim dated January 13, 2004 (as
may be amended) or asserted in any other manner,
including, without limitation, [PPLM's] counterclaims and
right of setoff." The Court hereby finds that the language
in Section 10.5(b)(i) resolves PPLM's objection in
connection with the reservation of its counterclaims and
right of setoff; therefore, PPLM's objection to the
injunctions provided in the Plan is hereby overruled.

            c.     PPLM also objected to the
implementation of the provisions of the Plan regarding the

15

establishment of the Disputed Claims Reserve because the
Debtor made inadequate provision for the manner and
timing of establishing reserves for Disputed Claims. The
Debtor and PPLM entered into the PPLM Stipulation
whereby the Debtor will establish a segregated reserve that
will be used solely for the purpose of any distributions to
be made for the PPLM Claim. The segregated reserve will
be funded by shares of common stock equal to the value of
$50,000,000, valued as of the Effective Date, pursuant to
the terms of the PPLM Stipulation. As the Debtor and
PPLM have reached a stipulation in connection with
PPLM's objection, PPLM's objection is resolved pursuant
to the PPLM Stipulation.

    4.    Objection of Indenture Trustee to
Confirmation of Debtor's First Amended Plan of Reorganization
[Dkt. No. 1789] (the "Wilmington Trust Objection") and Objection
by Harbert Management to Confirmation of the Debtor's First
Amended Plan of Reorganization Under Chapter 11 of the
Bankruptcy Code [Dkt. No. 1790] (the "Harbert Objection"). The
Wilmington Trust and Harbert Objections to confirmation have
been withdrawn pursuant to a settlement agreement reached
between the parties and incorporated into the Plan. Wilmington
Trust's and Harbert's withdrawals of their objections to

A11:1060234.9                    16

confirmation have been filed with the Court. See Dkt. Nos. 1994 and 1982, respectively.

       5.    Objection of Official Committee of Unsecured Creditors in Chapter 11 Case of Touch America Holdings, Inc. (the "TA Committee") to Debtor's First Amended Plan of Reorganization. The TA Committee objected to the First Amended Plan to the extent that it enjoined, limited or released any rights, claims or interests held by the TA Debtors that may arise under any of the D&O Policies and does not release any claims the TA Debtors may hold against any D&O Protected Party to the extent that such claim is against an individual in his or her capacity as a former director or officer of any of the TA Debtors or their present or former affiliates or predecessors. The Second Amended Plan provides that the D&O Insurance Entity Injunction shall not enjoin any rights of the TA Debtors that may arise under any of the D&O Policies. See Plan, § 6.9(c). The Second Amended Plan also provides that "D&O Protected Party" shall exclude any individual who previously served as an officer or director of any of the TA Debtors, or their present or former predecessors, in such individual's capacity as an officer or director of such TA Debtor. See Plan, § 1.49. The Court hereby finds that the objection has been resolved pursuant to revisions made to the Second Amended Plan and the objection is overruled.

17

6.    Limited Objection of Touch America

Holdings, Inc., et al., Debtors in Possession, to Debtor's First

Amended Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code [Dkt. No. 1872]. The TA Debtors object to the

Plan to the extent that it limits the TA Debtors' ability to receive

distributions as a Class 9 claimant on account of the portion of its

claims classified as general unsecured claims. Section 1.95 of the

Plan provides that to the extent a creditor holds a claim that is not

an Administrative Claim, Fee Claim, Priority Tax Claim,

Unsecured Priority Claim, Bank One DIP Financing Claim, CSFB

Financing Claim, Secured Claim, Unsecured Note Claim,

Unsecured Subordinated Note Claim, Unsecured Convenience

Claim, D&O Trust Claim, Other Equity Interest, Securities Claim,

Opt-Out Securities Claim or Environmental Claim, such claim

shall be a General Unsecured Claim. The TA Debtors objection

also sought to ensure that the Disputed Claim Reserve was

adequate to pay any potential Class 9 or Class 12 claims asserted

by the TA Debtors. The Court hereby finds that pursuant to

Section 1.95 of the Plan, to the extent the TA Debtors hold an

Allowed General Unsecured Claim under the Plan such claim shall

receive distributions as a Class 9, General Unsecured Claim. The

Court also finds that Sections 7.5 and 7.6 of the Plan provides for

the Disputed Claim Reserve and procedures for distributions to

Disputed Claims that become Allowed Claims. Accordingly, the Court finds that the objection of the TA Debtors has been resolved or is addressed by Sections 7.5 and 7.6 of the Plan.

7. Limited Objection of Richard R. Hylland to Confirmation of the Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Hylland Objection").

a. The Hylland Objection objects to Section 13.1 of the Plan which provides that the Bankruptcy Court will retain exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan. Excluding the arbitration proceedings initiated by Hylland and currently stayed, which proceedings will be permitted to proceed once the automatic stay is dissolved, the Court hereby finds that continuing jurisdiction, as provided for in the Plan, is appropriate, necessary and consistent with applicable law.

b. The Hylland Objection also asserts that Section 10.5 of the First Amended Plan impermissibly impairs Hylland's setoff rights. Section 10.5(b)(iii) of the Second Amended Plan provides that "[n]otwithstanding any provision of this Plan to the contrary, this Plan: . . . (iii) shall not affect any setoff

19

rights, if any, of Richard Hylland." The Court hereby finds
that the language in Section 10.5(b)(iii) resolves this
portion of the Hylland Objection and such objection is
overruled

     c.  The Hylland Objection also
objects to the Plan to the extent that the Plan does not
provide that claims not paid by the D&O Trust receive the
treatment provided to Class 7 and Class 9. The Court finds
that Section 524(e) of the Bankruptcy Code does not limit
the equitable power of the Court to enjoin suits against
third parties where the injunction is necessary to the plan
and workable reorganization. Based upon the pleadings
filed in connection with the Class Action settlement, the
provisions of the Plan and the support of the Creditors'
Committee and other parties-in-interest, including the
MPSC, the Court finds that the Plan represents a global
agreement among the parties in this case, premised on all
of the mutually interdependent elements, including the
formation and funding of the D&O Trust and the D&O
Injunctions necessary to implement the D&O Trust. See
Memorandum Decision Approving the Class Action
Settlement [Dkt. No. 2175] and Order Approving the
Stipulation and Settlement Agreement Among Debtor,

Montana Public Service Commission and Montana
Consumer Counsel Pursuant to Sections 105(a) and
1129(a)(4) of the Bankruptcy Code and Rule 9019 of the
Bankruptcy Rules [Dkt. No. 1706]. Upon consideration of
the provisions of the Second Amended Plan, the D&O
Trust Documents and the arguments and evidence
presented at the Confirmation Hearing, the Court overrules
Hylland's objection finding that the Debtor's transfer of its
interest in the insurance policies to the D&O Trust as
provided in Section 6.6 of the Second Amended Plan and
the Insurance Assignment Agreement provides sufficient
and adequate consideration for the channeling injunction,
that the D&O Trust is properly capitalized and that limiting
the recovery on D&O Claims to the D&O Trust provides
fair and adequate treatment to D&O Trust Claimants who
have received the benefit of the releases set forth in
Sections 6.9 and 10.5(e) of the Plan and Class Action
Settlement Documents, as consideration for the transfer of
the D&O Policies to the D&O Trust and the D&O Trust
Channeling Injunction. The Court finds the Debtor's
argument that the first in, first out ("FIFO") method of
distribution is consistent with the distribution of D&O
insurance policy proceeds being utilized to fund the D&O

Trust persuasive and hereby finds that access to the D&O

Trust as the only remedy available to a Director or Officer

for reimbursement of costs and related indemnification

claims is appropriate, necessary and consistent with the

Bankruptcy Code. Therefore, the Hylland Objection to the

injunctions provided in the Plan is hereby overruled.

d.    The Hylland Objection also

objected to the Debtor's agreement to contribute up to $2.5

million to pay Defense Costs incurred by current Officers

and Directors only (in the event the D&O Trust is

exhausted). The Debtor has presented evidence that the

agreement to contribute up to $2.5 million to pay Defense

Costs incurred by current Officers and Directors is in

recognition of the Debtor's statutory and contractual

indemnity obligations to its current Officers and Directors,

and additional consideration to the current Officers and

Directors who have continued to serve the Debtor during

this Chapter 11 Case. Upon consideration of the arguments

and evidence, the Court declines to accept the objector's

position. The Court hereby finds that Section 5.1 of the

Plan is appropriate and consistent with all applicable laws,

and the Hylland Objection to the allocation of the $2.5

million to pay Defense Costs incurred by current Officers

and Directors only in the event the D&O Trust is exhausted is overruled.

e.     The Hylland Objection urged the Court to find that to the extent his claims are classified as a Class 9 claim, Mr. Hylland's claims related to the D&O Proceedings are not properly classified and are being excluded from the D&O Trust. The evidence clearly shows that Mr. Hylland's claims are properly classified and Mr. Hylland received ballots for both Class 9 and Class 12 claims, but only returned the Class 9 ballot. See Declaration of Voting Agent Regarding Ballots of Richard R. Hylland in Connection with Debtor's First Amended Plan of Reorganization [Dkt. No. 2037]. Moreover, the Plan provides in Section 4.9 to the extent that Mr. Hylland holds Class 9 Claims that are not D&O Trust Claims and are ultimately determined to be Allowed General Unsecured Claims, Mr. Hylland will receive the same treatment as any other holder of an Allowed Class 9 Claim. Based on the evidence presented, the Court declines to accept Mr. Hylland's arguments and hereby overrules the Hylland Objection alleging improper classification. Based on the arguments of counsel and the evidence presented and after due deliberation, the Court hereby finds that

Section 4.9 of the Plan provides that the portion of Mr.
Hylland's Claims that may qualify as an Allowed D&O
Trust Claims shall be treated as D&O Trust Claims and
channeled to the D&O Trust and the portion of Mr.
Hylland's Claims that may be determined to be an Allowed
Class 9 Claim shall be treated as a Class 9 Claim.

8.    Objection of Goldman, Sachs & Co.
("Goldman Sachs") to Confirmation of Debtor's First Amended
Plan of Reorganization [Dkt. No. 1795] and Objection of Milbank,
Tweed, Hadley & McCloy LLP ("Milbank Tweed") to the
Debtor's Second Amended Disclosure Statement [Dkt. No. 1986]
(the "Milbank Objection"). Goldman Sachs and Milbank Tweed
filed similar objections asserting that to the extent that the D&O
Trust Channeling Injunction could be construed to impair their
rights against non-Debtor parties such injunction was improper.
Section 10.9 of the Plan provides that the Plan shall not enjoin,
release or otherwise impair any claim of Goldman Sachs or
Milbank Tweed against any person or entity other than the Debtor
and the Reorganized Debtor or otherwise limit any defense, setoff,
counterclaim or cross claim either Goldman Sachs or Milbank
Tweed may have against any entity, except that any recovery by
Goldman Sachs and Milbank Tweed on such counterclaim or cross
claim against the Debtor or Reorganized Debtor shall be limited by

the Plan. Upon consideration of the evidence and the revisions to
the Plan, the Court hereby finds that the objections have been
resolved and are hereby overruled.

The Milbank Objection also asserts that the Plan cannot determine whether the MPC
Policies are part of the Debtor's estate. First, the insurance policies whose proceeds are subject

to the Insurance Assignment Agreement do not include the MPC Policies. See Insurance
Assignment Agreement, Exh. A. Second, the Debtor has acknowledged that its interests in the
MPC Policies are disputed. See Plan, Exh. C. Moreover, to the extent the McGreevey Litigation
settlement is approved, the Debtor will be transferring and assigning its rights and interest in the
MPC Policies. Neither the Plan nor this Confirmation Order seek to determine whether the MPC
Policies are part of the Debtor's estate; therefore, Milbank Tweed's objection regarding the MPC

Policies is overruled.

> 9.    Objection of the United States of America to
>
> Confirmation of the Debtor's First Amended Plan of
> Reorganization dated May 17, 2004 [Dkt. No. 1897]. The United
> States of America (the "United States") asserts that the Debtor
> owes undisputed pre-petition and post-petition fees under certain
> permits with the United States Department of Agriculture, Forest
> Service. The Debtor has represented that it intends to assume the
> obligations related to the permits. See Notice of Contracts the
> Debtor Intends to Assume and/or Reject Pursuant to Section IV.F
> of the Debtor's First Amended Disclosure Statement Pursuant to
> Section 1125 of the Bankruptcy Code for the Plan of

Reorganization which indicated its intent to perform the obligations related to the permits [Dkt. No. 1700] (the "Assumption Notice"). The United States also filed an objection to preserve its rights in the event there is a dispute regarding the terms of the assumption of certain contracts with the Bonneville Power Administration. The Debtor has filed a Omnibus Motion for Court Approval to Assume Certain Executory Contracts Pursuant to Section 365 of the Bankruptcy Code and Granting Related Relief [Dkt. No. 2108] (the "Assumption Motion"). Moreover, in Section 8.1 of the Plan, the Debtor provided a procedure to object to the cure amounts as provided in the Assumption Notice. The United States also objected to the First Amended Plan to the extent it did not preserve the United States' common law right to setoff mutual debts. The Second Amended Plan provides for the preservation of the United States' setoff rights. Plan §10.5(b). Upon consideration of the objection, the evidence presented and representations of counsel, the Court hereby finds that the objections of the United States have been fully resolved.

10.    Objection of Montana Power Benefit Restoration Plan Participants (the "BRP Participants") to Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 1959]. The BRP Participants assert

that the Montana Power Benefit Restoration Plan (the "BRP") is
not an executory contract that can be rejected. As of the continued
Confirmation Hearing, no motion is before the Court seeking to
reject the BRP. The BRP Participants also objected to the
implementation of the provisions of the Plan regarding the
establishment of the Disputed Claims Reserve because the Debtor
made inadequate provision for the manner and timing of
establishing reserves for Disputed Claims. All rights of the Debtor
and the BRP Participants, including the one BRP Participant
seeking relief to assert a late-filed claim, and such relief is granted
herein, are reserved and the policies at issue shall not be affected
or terminated without further order of this Court. Accordingly, the
objection of the BRP Participants is overruled in its entirety.

Objection of the Equity Holders.[2]  The Equity Objections urge the Court to find that the Plan
violates the absolute priority rule because Class 13 shareholders are recovering substantially less
than the value of their equity interests.

The testimony elicited by the Debtor and the Creditors'
Committee at the August 25, 2004 Confirmation Hearing support
the treatment afforded to the Equity Holders as well as Class 8(b).
As discussed in greater detail below, this Court finds persuasive

---

[2] The following objections were filed by various equity holders: (i) Objection to Plan of RCG Carpathia Master
Fund, Ltd. and Kellogg Capital Group, LLC f/k/a Performance Capital (the "Equity Holders") to Debtor's First
Amended Plan of Reorganization (Dkt. No. 1797) and (ii) Objection of David Fishel to Debtor's First Amended Plan
of Reorganization and Joinder of David Fishel to Objection of RCG Carpathia Master Fund, Ltd. and Kellogg
Capital Group, LLC f/k/a Performance Capital to Debtor's First Amended Plan of Reorganization (Dkt. No. 1800)
(collectively, the "Equity Objections").

the testimony and evidence presented by the Debtor and the
Creditors' Committee regarding valuation and, as such, the Plan
complies with the "absolute priority rule" set forth in Section
1129(b)(2) because there are no claimants junior to either Equity
Holders or Class 8(b) that will receive or retain any property under
the Plan. See 11 U.S.C. § 1129(b)(2)(B)(ii). Moreover, under the
Plan, no senior class will receive more than full compensation for
its claims. See Plan, Article 4.

Both Lazard Freres & Co. LLC ("Lazard") and Houlihan,
Lokey, Howard & Zukin, Inc. ("Houlihan") used the three standard
valuation approaches: (i) precedent transaction analysis; (ii)
discounted cash flow approach; and (iii) comparable public
company analysis. See Transcript of Confirmation Hearing Before
the Honorable Charles G. Case, II, United States Bankruptcy
Judge, dated August 25, 2004 at 237 (the "Confirmation Hearing
Transcript") (testimony of Andrew Yearley). Cf. Confirmation
Hearing Transcript at 311-312, 317, 319 (testimony of Bradley
Geer); see also, Debtor's Exh. 139 and 141-146. Using these
generally recognized valuation methodologies, Lazard determined
that the Enterprise Value of the Reorganized Debtor approximated
the midpoint of the range of these methodologies, $1.5 billion.
Confirmation Hearing Transcript at 237 (testimony of Andrew
Yearley). Using the same methodologies, Houlihan independently

arrived at a range of value for the Reorganized Debtor of approximately $1.4 billion to 1.67 billion. See Confirmation Hearing Transcript at 315 and 325 (testimony of Bradley Geer). The valuations prepared by Lazard and Houlihan were based upon the Debtor's business plan which Lazard determined to be "reasonable" and "achievable." Confirmation Hearing Transcript at 242 (testimony of Andrew Yearley). Moreover, each of the Debtor's witnesses, William Austin, Mike Hanson and Brian Bird testified that the Debtor's business plan was reasonable and achievable. Confirmation Hearing Transcript at 106-108 (testimony of William Austin); Confirmation Hearing Transcript at 169 (testimony of Mike Hanson); Confirmation Hearing Transcript at 217 (testimony of Brian Bird). The Court finds the testimony of Mr. Yearley and Mr. Geer to be reasonable and persuasive; accordingly, the Court finds that the value of the Reorganized Debtor based on the generally recognized methodologies to be a range of approximately $1.4 to $1.67 billion.

As the testimony at the Confirmation Hearing indicated, both Lazard and Houlihan made downward adjustments to their valuations equal to the "present value of the QF liabilities," or $140 million, to take into consideration losses associated with the Debtor's QF liabilities that were reflected on the Debtor's income statements but not captured in any of the earnings figures.

Confirmation Hearing Transcript at 241, 298 (testimony of
Andrew Yearley); Confirmation Hearing Transcript at 323
(testimony of Bradley Geer). Upon a review of the Disclosure
Statement, the Plan and upon consideration of the testimony at the
Confirmation Hearing, the Court finds that the downward
adjustment to the valuation of the Reorganized Debtor was
reasonable and appropriate.

Lazard and Houlihan independently concluded that the
total claims threshold plus post-petition interest was approximately
$2.2 to $2.3 billion. Confirmation Hearing Transcript at 250-251
(testimony of Andrew Yearley); Confirmation Hearing Transcript
at 325 (testimony of Bradley Geer). The witnesses testified that at
these claims levels, there would be approximate negative equity
value in the Reorganized Debtor of at least $586 million to $700
million. Confirmation Hearing Transcript at 325 (testimony of
Bradley Geer); Confirmation Hearing Transcript at 240 (testimony
of Andrew Yearley). Moreover, Mr. Yearley testified that in order
to reach a valuation where there would be positive equity several
factors must be assumed including using only the discounted cash
flow approach, not deducting the QF liability, and higher growth
rates. Confirmation Hearing Transcript at 254 (testimony of
Andrew Yearley). The Court finds that reaching a valuation where

there would be positive equity assumes factors that are not supported by the evidence or the testimony.

The Equity Holders' financial advisor, Seneca Financial Group ("Seneca"), through James Harris, testified that Seneca relied almost exclusively on the discounted cash flow analysis and provided no weight to the comparable transactions and the market multiples methodologies. Confirmation Hearing Transcript at 350-351 (testimony of James Harris). The Court finds that Seneca's primary reliance on the discounted cash flow analysis was not reasonable because Seneca wholly disregarded generally recognized market-based methodologies in determining valuation.

The discounted cash flow analysis relied on by Mr. Harris is a projection based analysis which requires a variety of assumptions and cannot be relied upon as the sole methodology for determining valuation. Mr. Harris also testified that, despite the fact that the Debtor's management had included all relevant information in its projections, Seneca chose not to rely on the key elements of the Debtor's business plan. As such, Seneca failed to deduct the Debtor's QF liabilities and made several assumptions regarding tax rates, higher growth and terminal value. Confirmation Hearing Transcript at 391 (testimony of James Harris); Confirmation Hearing Transcript at 254 (testimony of Andrew Yearley). Mr. Harris failed to interview management or talk to Lazard or

31

Houlihan about the assumptions underlying the Debtor's business plan. Confirmation Hearing Transcript at 392 (testimony of James Harris). In particular, the Court finds that Mr. Harris' use of a higher growth rate to be speculative, not historically-based, and not based on management's projections. Moreover, Mr. Harris failed to demonstrate why Seneca chose not to deduct the Debtor's QF liabilities notwithstanding the recordation of a $140 million liability on the Debtor's balance sheet. Confirmation Hearing Transcript at 394 (testimony of James Harris). The Court also finds that Mr. Harris' reliance on the Standard & Poor Report (Equity Holders Exh. 1) was unreasonable as such report was not prepared for valuation purposes. Accordingly, the Court finds that Mr. Harris' testimony as to valuation lacks credibility and is not substantial because he chose to ignore the Debtor's business plan and the projections on which the business plan is based.

Upon consideration of the evidence and the testimony at the Confirmation Hearing, the Court finds that the Plan complies with the "absolute priority rule" set forth in Section 1129(b)(2) because there are no claimants junior to either Equity Holders or Class 8(b) that will receive or retain any property under the Plan. See 11 U.S.C. § 1129(b)(2)(B)(ii). Accordingly, the objections of the Equity Holders and David Fishel are overruled in their entirety.

Magten and Law Debenture object to the classification of claims under the Plan because the Plan (i) separately classifies holders of TOPrS and QUIPS and (ii) classifies the claims of the holders of the QUIPS with respect to their claim for principal plus interest together with causes of actions asserted by the holders of the QUIPS in the QUIPS Litigation. The Plan segregates the claims based on the TOPrS into Class 8(a) and the claims based on the QUIPS into Class 8(b). See Plan, § 4.8. The Court finds that the claims based on the TOPrS Indenture and the QUIPS Indenture are not "substantially similar" since the claims relating to the TOPrS and the claims related to the QUIPS are not similar in legal character or effect. See Plan, §4.8.

Both Class 8(a) and Class 8(b) will receive the same distribution if each respective class accepts the Plan; accordingly, the Court finds that the Plan does not provide for disparate treatment of Class 8(a) and Class 8(b). See Plan, §4.8. As the Plan reflects, the Debtor reached a settlement with Wilmington Trust Company, as indenture trustee under the TOPrS Indenture, and Harbert Management Corporation whereby the PUHCA[3]-related litigation claims were settled and released in connection with the increased distributions. See Plan, §4.8.

---

[3] The Public Utility Holdings Company Act of 1935 ("PUHCA").

Consistent with the treatment provided to Class 8(a), the
Plan provides the holders of QUIPS the same opportunity
to settle their QUIPS Litigation claims that was provided to
the holders of TOPrS to settle their PUHCA-related claims.
Moreover, upon consideration of the Plan and evidence, but
for the settlement being offered, the holders of TOPrS and

QUIPS would not be entitled to a distribution because
under the express terms of the TOPrS Indenture and the

QUIPS Indenture, the TOPrS and QUIPS claims are
subordinated to the claims of Class 7. Upon review of the
Plan, the pleadings, testimony and arguments of counsel,
the Court hereby finds that there is a reasonable basis for
the Plan's classification scheme with regard to Class 8(a)
and Class 8(b) because the claims by holders of TOPrS are
substantially similar to other claims in Class 8(a) and the
claims by holders of the QUIPS are substantially similar to
other claims in Class 8(b).

In addition, the Court finds that the Options provided to Class 8(b) under the Plan are appropriate. The Court hereby finds that the "going flat" transaction is all one transaction and but for the "going flat" transaction the Debtor would have no liability on the QUIPS Notes. The QUIPS Litigation Claims and the QUIPS Notes Claims are mutually exclusive and not cumulative claims; therefore, requiring Class 8(b) holders to opt for either Class 8(b) treatment or preserving their QUIPS Litigation Claims as disputed Class 9 Claims does not unfairly discriminate against such holders.

The two claims cannot coexist. As such, requiring Class 8(b) holders to pay for the option of seeking a higher monetary reward through the QUIPS Litigation is not unfairly discriminatory. The Court hereby finds that requiring Class 8(b) holders to choose either Option 1 or Option 2 is appropriate and reasonable.

Moreover, the Court finds that the classification scheme was not proposed to manipulate class voting. The voting results show that Class 8(a) accepted the Plan in both number and amount. Voting Agent Resolicitation Declaration ¶ 16 [Dkt. No. 2170, Debtor's Exh. 185]. In the event the two sub-classes were combined, the Debtor would not be required to take advantage of the cram-down provisions of Section 1129(b) and Magten and Law Debenture's vote to reject would have been subsumed by the far larger claims of the holders of TOPrS. Accordingly, the Court

hereby finds that the separate classification of Class 8(a) and Class 8(b) is consistent with the broad discretion afforded the Debtor in formulating the Plan, was not proposed to manipulate the vote and is consistent with the requirements of Section 1122(a) of the

Bankruptcy Code and applicable law.

    a.    Magten and Law Debenture also object to the treatment provided to Class 8(b) claims under the Plan. The Court finds that the claims of the Magten and Law Debenture are subordinated to the claims of the Class 7 holders under the express language of the QUIPS Indenture. The Court reiterates its findings regarding valuation and finds that without the agreement of the more-senior Class 7 holders, the holders of Class 8(b) would not be entitled to a distribution under the Plan because there is insufficient value for Class 8(a) or Class 8(b) to receive any distribution in accordance with the strict priority rule. The Court finds persuasive the holding in In re Union Financial Services Group, Inc., 303 B.R. 390, 421-22 (Bankr. E.D. Mo. 2003) and holds that there can be no unfair discrimination where a plan allocates to a class of junior creditors certain value to which those creditors "[had] no right, title or interest . . . [and] which would otherwise [have been] required by applicable law to be paid

36

directly to" more senior creditors. Accordingly, the Court

finds that the treatment of Class 8(b) claims is consistent

with the Bankruptcy Code and applicable law and does not

unfairly discriminate against Magten and Law Debenture.

               b.       Magten and Law Debenture

object to the D&O Trust Channeling Injunction and the

D&O Insurance Entity Injunction and assert the injunctions

are not consensual and that the Debtor is abandoning

potential value to the estate. As described in the Voting

Agent Resolicitation Declaration, over 70% of each of the

impaired classes entitled to vote consented to the releases.

Voting Agent Resolicitation Declaration ¶ 19 [Dkt. No.

2170, Debtor's Exh. 185]. Moreover, the Plan, including

the D&O Trust Channeling Injunction and the D&O

Insurance Entity Injunction, were approved

overwhelmingly by the holders of Class 7, Class 8(a), Class

9 and Class 12 claims. Voting Agent Resolicitation

Declaration ¶ 16 [Dkt. No. 2170, Debtor's Exh. 185].

Upon consideration of the evidence and arguments

presented by the parties, the Court does not find Magten's

and Law Debenture's arguments persuasive. The Court

finds that the factors set forth in In re Master Mortgage Inv.

Fund, Inc., 168 B.R 930, 935 (Bankr. W.D. Mo. 1994) and

In re Dow Corning Corp., 280 F.3d 648 (6th Cir. 2002)
weigh in favor of approving the D&O Trust Channeling
Injunction and the D&O Insurance Entity Injunction.

    (1)   Identity of

Interest. Upon consideration of the evidence, the
Court finds that an identity of interest exists
between the Debtor and the parties released under
the Plan. The Debtor's Officers and Directors
share an identity of interest with the Debtor based
on statutory and contractual indemnification
rights negotiated with the Debtor and provided in
the Debtor's Certificate of Incorporation.

    (2)   Substantial

Contribution to Reorganization. The Court also
finds that the post-petition Officers and Directors
have provided consideration in the form of
assigning their interest in the remaining D&O
Policies' proceeds under the Insurance
Assignment Agreement, Exhibit B to the Plan, to
the fund the D&O Trust. The Directors and
Officers have provided consideration in the form
of assigning their rights and interests in the D&O
Policies to the D&O Trust. Under Article 6 and

38

Section 10.5(e) of the Plan and the D&O Trust,
the Officers and Directors are giving up their
direct access to the D&O Policies, which they
relied on when they accepted their positions with
the Debtor. Moreover, the Officers and Directors
are agreeing to be channeled into the D&O Trust
with no guaranty that their defense costs will be
paid in full. See Plan §10.5(e). The Court finds
that the Officers and Directors have contributed
substantially to the Debtor's Plan and to the
reorganization.

(3)    Essential to

Reorganization. The Court finds that the D&O
Trust Channeling Injunction and the D&O
Insurance Entity Injunction are necessary to the
Plan and without such injunctions the Debtor's
ability to reorganize would be jeopardized. The
D&O Trust Channeling Injunction and the D&O
Insurance Entity Injunction are integral elements
of the Debtor's Plan and represent part of a global
agreement among the parties, which is premised
on all of the mutually interdependent elements,
including the formation and funding of the D&O

2off

2off

Trust. Moreover, the Court finds that the D&O Trust is essential to accomplish the Class Action settlement which requires the Debtor to provide a mechanism to make distributions to parties who choose to opt out of that settlement. See Plan 4.15. The Court finds that without the D&O Trust Channeling Injunction and the D&O Insurance Entity Injunction there would be no D&O Trust and no settlement of the Class Action; accordingly, the Court finds that the D&O Trust Channeling Injunction and the D&O Insurance Entity Injunction is essential to the Debtor's reorganization.

(4)

Overwhelming Creditor Support. As evidenced by the Voting Agent Resolicitation Declaration, the Plan was overwhelmingly accepted by all the impaired classes, except for Class 8(b). Voting Agent Resolicitation Declaration ¶ 16 [Dkt. No. 2170, Debtor's Exh. 185]. In particular, 100% of holders of Claims in Class 12 who submitted ballots, the only class impacted by the D&O Trust Channeling Injunction and the D&O Insurance

Entity Injunction, voted to accept the First
Amended Plan. See Voting Agent Declaration,
¶14. In addition 71.43% of holders of Class 12
Claims who submitted ballots expressly voted to
accept the releases provided under the Plan.
Accordingly, the Court holds that this factor of
the Master Mortgage/Dow Corning test is
satisfied.

(5)     Plan Pays All
or Substantially All of the Claims Affected by the
Injunction. Article VI of the Plan and the D&O
Trust Documents provide a mechanism to pay
claimants with D&O Trust Claims in Class 12.
While the Court cannot determine at this time
what claims will be made against the D&O Trust,
and whether all such claims will be paid, the
Debtor projects that all such claims will be paid in
full.

(6)     Plan Provides
an Opportunity for those Claimants who Choose
Not to Settle to Recover in Full. Section 6.1 and
6.5 of the Plan provides holders of Class 12 D&O
Trust Claims the ability to pursue their causes of

action and present any valid claims to the D&O
Trust for distribution so long as funds remain
available for the D&O Trust.

(7)    Specific

Factual Findings. After consideration of all the
factors and the evidence, and after due
deliberation, the Court hereby reiterates its
findings above regarding the Master
Mortgage/Dow Corning factors and finds that
such factors weigh in favor of approving the D&O
Trust Channeling Injunction and D&O Insurance
Entity Injunction.

c.    The Court also finds

persuasive the Debtor's argument that the Debtor is
precluded from recovering under any applicable D&O
Policy for any such claims against its Officers and
Directors because of the "insured versus insured" exclusion
in the D&O Policies. See, e.g., Cohen v. National Union
Fire Ins. Co. (In re County Seat Stores, Inc.), 280 B.R. 319
(Bankr. S.D.N.Y. 2002). As established at the hearing on
the MOU Motion, each of the Debtor's D&O Policies
includes an express "insured versus insured" exclusion. It
is clear that in the absence of any insurance coverage, any

claims the Debtor may have against its Officers and
Directors would be essentially valueless. The Court hereby
finds that the releases provided for in the Plan, including,
but not limited to, the D&O Trust Channeling Injunction
and the D&O Insurance Entity Injunction are appropriate,
necessary and consistent with the Bankruptcy Code and all
applicable law.

                  d.      Magten and Law Debenture
also contend that the Plan cannot be confirmed until the
QUIPS Litigation is finally resolved. The Debtor has filed
its Motion Pursuant to Sections 105(a), 363(b) and 502(c)
of the Bankruptcy Code for Estimation of Magten Asset
Management's Claims and to Establish Disputed Claim
Reserve [Dkt. No. 1951] (the "Magten Estimation
Motion") and its Motion Pursuant to Sections 105(a),
363(b) and 502(c) of the Bankruptcy Code for Estimation
of Claims of Law Debenture Trust Company of New York
and to Establish Disputed Claim Reserve [Dkt. No. 2093]
(the "Law Debenture Estimation Motion"). The Court
finds persuasive the reasoning in In re Continental Airlines
Corp., 60 B.R. 903, 905-06 (Bankr. S.D. Tex. 1986),
recognizing how unfair it would be to withhold payments
to creditors while a large claim is being liquidated. The

Court finds that awaiting the end of the QUIPS Litigation
would hamper the efficient administration of the estate and
delay distribution of allowed claims to other creditors.
Accordingly, the Court overrules the objections of Magten
and Law Debenture in their entirety, and adjourns both the
Magten Estimation Motion and the Law Debenture
Estimation Motion so that the parties could reach an
agreement on the amount of the Disputed Claim Reserve.
To the extent the parties are unable to agree on the amount
of the Disputed Claim Reserve, upon request of one of the
parties, the Court shall hold a hearing on both the Magten
Estimation Motion and the Law Debenture Estimation
Motion on an expedited basis solely to establish prior to the
proposed Effective Date of the Plan the amount of the
Disputed Claim Reserve.

                   e.     Magten and Law Debenture
also asserted in rem property interests in the Montana
Assets and that such assets were being held in a
constructive trust for the benefit of the QUIPS holders.
The Court finds that neither Magten nor Law Debenture
took any action to impose a constructive trust on the
Montana Assets and presented no evidence whatsoever as
to why they should be entitled to a constructive trust with

44

respect to the Montana Assets. Magten and Law Debenture
had the burden of presenting evidence on this issue
measured by a clear and convincing standard which they
failed to carry. Moreover, Magten and Law Debenture
failed to cite a statute or case in support of their in rem
property interests. This Court finds persuasive Section 7 of
the Uniform Fraudulent Transfer Act, as adopted in
Montana, which contemplates that money damages are an
adequate remedy for fraudulent transfer claims.
Accordingly, the Court finds that no constructive trust has
been established and that money damages are an
appropriate remedy for the holders of QUIPS Litigation
Claims. The Court also finds that the QUIPS Litigation
Claims will be treated in the same manner as disputed
unsecured claims under Section 7.5 of the Plan. Whatever
claims may be asserted in the QUIPS Litigation are nothing
more than general unsecured claims against the Debtor's
estate and are treated as such. Accordingly, the Court finds
that the holders of QUIPS Litigation Claims are not entitled
to a segregated cash reserve and as stated above, such
holders shall be treated as Class 9 General Unsecured
Claims subject to the Disputed Claims Reserve.

Accordingly, the Court hereby overrules the Magten and Law Debenture Objections in their entirety.

f.    Law Debenture also belatedly raised an objection to confirmation of Debtor's Plan based on PUHCA. Neither Magten nor Law Debenture presented any evidence in connection with their PUHCA objection. Accordingly, the Court hereby overrules the Magten and Law Debenture Objections in their entirely.

g.    Magten and Law Debenture also asserted that the Plan unfairly discriminates against Class 8(a) and Class 8(b) claims because such claims do not receive the same treatment as Class 11, environmental claims, which Magten and Law Debenture argue should be equally ranked with Class 8. The Court finds that valid business, factual, and legal reasons exist for separately classifying Class 8 and Class 11 claims, and thus finds that the claims are not substantially similar. Accordingly, the Court finds that the Plan does not unfairly discriminate against Class 8 claim holders, and the treatment of Class 11 claims in the Plan and under the Court's Order Approving (1) Stipulation between Debtor, Clark Fork and Blackfoot, LLC, Atlantic Richfield Company, United States, State of Montana, and Salish and Kootenai Tribes and (2) Debtor's

Motion for Order Pursuant to Bankruptcy Rule 9019

Approving Settlement Agreement Among Debtor, Clark

Fork and Blackfoot LLC and Atlantic Richfield Company

[Dkt. No. 1674] is appropriate. Therefore, Magten's and

Law Debenture's objections are overruled in their entirety.

11.    Objections to FIFO Method of Distribution

under the D&O Trust. The Hylland Objection and the Milbank

Objection object to the FIFO method of payment under the D&O

Trust as discriminatory as similarly situated creditors may receive

different treatment of their claims. Upon consideration of the

arguments and evidence, the Court finds the FIFO method of

payment provided for under the D&O Trust Documents is not only

consistent with the distribution method in place under the D&O

Policies being channeled to the D&O Trust, but also the most

equitable distribution available. The Court hereby overrules the

Hylland and Milbank Objections to the FIFO method of payment

provided for under the D&O Trust Documents.

12.    Cornerstone Objections [Dkt. Nos. 2168 and

2169]. Cornerstone Propane, L.P. and Cornerstone Propane

Partners, L.P. (collectively, "Cornerstone") filed limited objections

to the Confirmation of the Debtor's Second Amended and Restated

Plan of Reorganization. The limited objections request that, in the

event the Debtor's Motion for Order Approving Compromise and

Settlement Among Debtor and Certain Related Affiliates and
Cornerstone Propane Partners, L.P. and Cornerstone Propane, L.P.
and Certain of Their Related Affiliates Pursuant to Rule 9019 of
the Federal Rules of Bankruptcy Procedure [Dkt. No. 2154] (the
"Cornerstone Settlement") is not granted. The Debtor will
increase the reserves for Dispute Claims as provided for in
Paragraph 27 herein. Accordingly, the Court hereby overrules the
limited objections filed by Cornerstone.

13.    Remaining Objections. To the extent not
otherwise overruled, resolved or withdrawn, the Court hereby
overrules any remaining objections to confirmation of the Debtor's
Plan in their entirety.

P. Reasonable Classification of Claims (Section 1122(a)). Valid business, factual, and legal
reasons exist for separately classifying the various Classes of Claims and Equity Interests
in Article IV of the Plan. Other than the objections of Magten and Law Debenture which
have been overruled as discussed above in Paragraph O. 12(a) and 12(b), no other
objections have been asserted to the Debtor's classification of Claims under the Plan and
the Court incorporates its findings herein. The Claims or Equity Interests in each
particular Class are substantially similar to the other Claims or Equity Interests of such
Class, and therefore the Plan satisfies the requirements of Section 1122(a) of the
Bankruptcy Code.

Q. Designation of Classes (Section 1123(a)(1)). Valid business, factual, and legal reasons
exist for the Debtor's designation of Classes of Claims and Equity Interests in Article IV

of the Plan. Other than the objections of Magten and Law Debenture which have been overruled as discussed above in Paragraph O. 12(a) and 12(b), no other objections have been asserted to the Debtor's designation of Classes under the Plan and the Court incorporates its findings herein. Article IV of the Plan properly designates all Classes of Claims and Equity Interests, and therefore the Plan satisfies the requirements of Section 1123(a)(1) of the Bankruptcy Code.

R.  Specification of Unimpaired Classes (Section 1123(a)(2)). Article IV of the Plan specifies the Classes of Claims and Equity Interests which are unimpaired or impaired. The Plan provides that Classes 1 through 6, Classes 10 and 11 and Class 14, as well as Administrative Claims and Priority Tax Claims are unimpaired. Accordingly, the Plan satisfies the requirements of Section 1123(a)(2) of the Bankruptcy Code.

S.  Specification of Treatment of Impaired Classes (Section 1123(a)(3)). Article IV of the Plan specifies the treatment of each impaired Class. The Plan designates Class 7, Class 8(a), Class 8(b), Class 9, Class 12, Class 13 and Class 15 as impaired. Sections 4.7, 4.8, 4.9, 4.12, 4.13, and 4.15 of the Plan specifies the treatment of the impaired classes. Accordingly, the Plan satisfies the requirements of Section 1123(a)(3) of the Bankruptcy Code.

T.  No Discrimination (Section 1123(a)(4)). Article IV of the Plan provides the same treatment for each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest. The Plan incorporates the settlement whereby the more-senior Class 7 shares a portion of distributions payable to it with the holders of Class 8(a) and Class 8(b). Reiterating its findings set forth in Paragraph 12 above, the Court finds persuasive