**TAB 5**

FILED
BILLINGS DIV.

2005 JAN 27 PM 2 04

PATRICK E. ~~DUFFY~~ *Susan* CLERK *L. Nybo*

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

|  |  |  |  |
|---|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | ) | Cause No. CV-04-26-BU-RFC |  |
|  | ) |  | RECEIVED |
| Plaintiff, | ) |  |  |
|  | ) |  | JAN 2 2005 |
| vs. | ) | **ORDER** | BROWNING KALECZYC |
|  | ) |  | BERRY HOVEN |
| MIKE J. HANSON AND ERIE J. KINDT, | ) |  |  |
|  | ) |  |  |
| Defendants. | ) |  |  |

## **BACKGROUND**

On February 15, 2002, pursuant to the terms of a Unit Purchase Agreement ("UPA")

entered into between NorthWestern, as purchaser, and Montana Power Company ("MPC") and

Touch America Holdings, Inc. ("TAH"), as sellers, NorthWestern acquired sole unit interest in

Montana Power, LLC ("MPLLC"). Two days previously, as part of a corporate reorganization of

MPC into TAH, the electric and natural gas transmission and distribution assets of MPC, as well

as MPC's interest in the Milltown Dam, was transferred from MPC to MPLLC. The assets and

liabilities transferred to MPLLC were certain 8.45% Junior Subordinated Debentures due in 2036

which had been issued by MPC in or about 1996. The interest paid on these Junior Debentures

created the cash flow to make dividend payments on certain Series A 8.45% Quarterly Income Preferred Securities ("QUIPS") which had previously been issued by Montana Power Capital I (The "Trust"). The sole assets of the Trust are the Junior Debentures. Plaintiff Magten is a holder of 33% of the Series A 8.45% QUIPS, with a principal face value in excess of $20 million.

In August 2002, NorthWestern authorized and directed the transfer of the electric and natural gas transmission and distribution assets and liabilities held by its subsidiary to it, the parent corporation. The transfer was effected on November 15, 2002. The Montana Utility Assets and Liabilities transferred included the obligations associated with the Junior Debentures and QUIPS. Other assets and liabilities remained with the limited liability company, whose name was changed to Clark Fork and Blackfoot, LLC. Pursuant to the operation of the QUIPS Trust Documents, as amended on or about August 13, 2002, upon the closing of the transfer, Magten ceased to be a creditor of Clark Fork and became a creditor of NorthWestern only.

Subsequently, on September 14, 2003, NorthWestern filed a voluntary petition for reorganization in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Magten filed an adversary proceeding against NorthWestern in the bankruptcy proceeding. On April 19, 2004 Magten filed a complaint against Officers of Clark Fork, Mike J. Hanson, Jack D. Haffey, Ernie J. Kindt and Ellen Senechal, alleging that Defendants had breached a fiduciary duty to Plaintiff because Clark Fork transferred certain assets and liabilities of Clark Fork (the "Montana Utility Assets and Liabilities") to its corporate parent and sole owner, NorthWestern.

Defendants have moved the Court for summary judgment on the grounds that Magten was not a creditor of Clark Fork, and therefore, Clark Fork does not have standing to assert a creditor's claim and Defendants owe no duty to Magten.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150 (9th Cir. 1997) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Even if the evidence is merely colorable or is not significantly probative, a grant of summary judgment is still appropriate. *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288 (9th Cir. 1987). The party moving for summary judgment bears the initial burden of proof to identify the absence of a genuine issue of material fact.

Once the moving party has satisfied this burden, the opposing party must set forth specific facts showing there remains a genuine issue for trial, in order to defeat the motion. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986) (*cert. denied* 479 U.S. 949 (1986)). Mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 252.

## ANALYSIS

I.    **Does a prior judicial determination that Magten was not a creditor of Clark Fork and Magten's admission it was not a Creditor of Clark Fork at the time of the transaction result in Magten not having standing to assert a creditor's claim that Defendant owed a duty to Magten?**

Defendants argue that it has been judicially determined that Magten never was a creditor of Clark Fork and Magten has admitted that it was not a creditor of Clark Fork at the time of the transaction, and therefore, Clark Fork does not have standing to assert a creditor's claim and Defendants owe no duty to Magten.

In an opinion dated July 23, 2004, Hon. Charles B. Case, II, who is presiding over Northwestern's bankruptcy held as follows:

> The Debtor [Northwestern] has consistently alleged, and Magten has never disputed, that Magten did not own any of the debentures prior to the time the assets were transferred to the Debtor [Northwestern]. Rather, Magten acquired the debentures after the transaction was complete. Therefore, the Debtor [Northwestern] asserts and Magten has not disputed, that Magten was never a creditor of Clark Form at a time when Clark Form had the disputed energy assets. Rather, Magten became a holder of the debentures only after the transaction was completed and was a matter of public record.
>
> *    *    *
>
> As noted above, Magten was not a creditor of Clark Form at the time the transaction took place. Rather, it only became a creditor of the Debtor [Northwestern] after the Debtor [Northwestern] assumed the liability associated with the junior subordinated debenture initially issued by Montana Power Company. Thus, Magten is not only not a party directly affected by the transaction – such as Clark Fork itself – but it was also not an indirect party at the time the transaction took place.

Memorandum Decision at 3, 6-7.

4

This Court may take judicial notice of the adjudicative facts determined by Judge Case in the Bankruptcy proceedings and entered in his July 23, 2004 Memorandum and Order. Fed.R.Evid. 201. Defendants argue that Judge Case's finding that Magten was not a creditor of Clark Fork is dispositive of the issues in this case and rely on the theories of issue preclusion and collateral estoppel to support their argument that summary judgment should be granted in their favor.

However, as pointed out Plaintiffs, Judge Case did not hold that Magten lacked standing to challenge the validity of the transaction. Judge Case's decision did not even address Magten's standing to sue here, but rather decided that NorthWestern's counsel would not be disqualified from representing the debtor in the ongoing Bankruptcy proceeding. Judge Case did not address Magten's ability to pursue damage claims with respect to the QUIPS against Defendants, NorthWestern, or any other entity. Accordingly, Magten's standing to pursue their breach of fiduciary duty claim has not been precluded by Judge Case's decision.

Defendants further argue that Magten has admitted it was not a creditor of Clark Fork at the time of the transfer. Magten concedes that it has never claimed to be a creditor of Clark Fork at the time of the transaction and it was not necessary for Magten to be a creditor. Magten's standing to pursue the breach of fiduciary duty claim derives from the Trustee, who failed to enforce the Trust's rights and the QUIPS holders who were Magten's predecessors in interest.

5

II.    **Did Magten's Acquisition of QUIPS After-the-Fact and with Full Knowledge of the Transfer Preclude Magten from Alleging Innocence?**

Defendants argue that Tolton Embry, Magten's sole owner, testified at his deposition that he acquired his interest in the QUIPS with full knowledge of the Transfer of the Montana Utility Assets and Liabilities to NorthWestern before his first acquisition of QUIPS. Magten has conceded that it knew the transfer to NorthWestern had occurred prior to acquisition of the QUIPS. Defendants cite no specific authority in support of their position that because Magten knew of the Transfer of the Montana Utility Assets and Liabilities to NorthWestern it is precluded from making a claim for breach of fiduciary duty. Instead, Defendants rely on general maxims of legal jurisprudence. Without providing further specific authority in support of their position, Defendants' argument must fail.[1]

III.   **Can Magten Stand in the Shoes of its Predecessor-in-Interest to Assert its Creditor Status?**

Defendants argue that Magten is precluded from asserting a claim for breach of fiduciary duty because the claim was not conveyed or assigned to Magten in writing, and Defendants rely upon Mont. Code Ann. § 30-1-206, to support their argument, which states:

---

[1] As an aside, Magten cites to *United States ex rel. Hill v. Teledyne, Inc.*, 103 F.3d 143 (9th Cir. 1996) in support of their argument. However, this is an unpublished opinion and Magten gave no indication to the Court in their argument that said opinion was unpublished. Further, the Federal Rules of Appellate Procedure with Ninth Circuit Rules and Circuit Committee Notes Rule 36-3 specifically states that unpublished dispositions and orders of the Ninth Circuit are not binding precedent and a copy of any cited unpublished disposition or order must be attached to the document in which it is cited, as an appendix. Counsel for Magten should take note of and abide by Rule 36-3 for all future filings with this Court.

(1) Except in the cases described in subsection (2) a contract for the sale of personal property is not enforceable by way of action or defense beyond $5,000 in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by the party's authorized agent.

However, a further reading of Mont. Code Ann. § 30-1-206(2), supports Plaintiff's argument that Mont. Code Ann. § 30-1-206 is inapplicable because Mont. Code Ann. § 30-1-206(2) states that subsection (1) of the statute does not apply to contracts for the sale of goods (30-2-201) nor of securities (30-8-123) nor to security agreements (30- 9A-203).

Further, Section 610 of the Indenture provides that if the Property Trustee "fails to enforce its rights with respect to the Securities or the related Trust Agreement, a holder of Preferred Securities may institute legal proceedings directly against the Company to enforce the Property Trustee's rights with respect to the Securities or such Trust Agreement, to the fullest extent permitted by law . . ." The Trustee did not bring a claim against Defendants, and Magten is acting as an express third party beneficiary to the Indenture. Therefore, Defendants's argument fails.

## IV.     Did Magten Waive Complaints Stemming from the Transfer?

Defendant argues that Magten waived any complaints it may have from the transfer because Magten's predecessor and the Trustee acquiesced to the transfer. Magten relies on case law from other jurisdictions in support of their argument that waiver is a question of fact for the jury and summary judgment is appropriate only when waiver is the sole reasonable inference that can be drawn from the evidence (cited by Magten as *Lynch v. CIBY 2000*, No. Civ.A 97-9022, 1998 U.S. Dist. LEXIS 23497, *13-14 (D.Cal., July 6, 1998). Magten also argues that failure to

object immediately to a party's unlawful act does not by itself constitute a waiver. *See* 28 Am. Jur. 2d Estoppel and Waiver § 209; *Hansen v. 75 Ranch Company*, 1998 MT 77, 957 P.2d 32.

It appears that this argument or a similar argument has appeared before Judge Case, and in his August 20, 2004 Opinion, Judge Case discusses Magten's allegations that Defendants had a fraudulent intent and whether NorthWestern's assumption of obligations pursuant to the transaction was meaningless. Magten asserts that the Second and Third Supplemental Indentures were executed at a time when the only financial information publicly available concerning NorthWestern's financial condition were fraudulent and, therefore, the execution of the supplement indentures cannot be deemed a waiver of a right to assert a claim based upon the transaction. Because of these allegations by Magten, there appears to be several issues of material fact raised by Magten which would be best left to a jury's determination.

For the foregoing reasons, Defendants' Motion for Summary Judgment (*Doc. #14*) is DENIED. The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 27th day of January, 2005.

Richard F. Cebull
U.S. DISTRICT COURT JUDGE

CERTIFICATE OF MAILING
DATE: 1/27/05 BY: dn
I hereby certify that a copy
of this order was mailed to:

J. Goetz
J. Devian Geddes
B. Steingart
J. Brewer
K. Beatty
S. Kaleczye

8

**TAB 6**

LEXSEE

**In re: NORTHWESTERN CORPORATION, Debtor. NORTHWESTERN CORPORATION and CLARK FORK AND BLACKFOOT, LLC, Plaintiffs, -vs- MARGARET A. MCGREEVEY, JO ANN BARKELL, and JOSEPH MARTELLI, on behalf of themselves and the class of similarly situated individuals, Defendants.**

**Chapter 11, Case Nos. 03-12872 (JLP), Adv. No. 05-52525 (JLP)**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

*2005 Bankr. LEXIS 2146*

**October 25, 2005, Decided**

**COUNSEL:** [*1] For Northwestern Corporation and Clark Fork and Blackfoot LLC, Plaintiff: Dennis A. Meloro, Greenberg Traurig, Wilmington, DE; William E. Chipman, Jr., Greenberg Traurig, LLP, Wilmington, DE.

For McGreevey Class Action Claimants, Defendant: Steven K. Kortanek, Klehr Harrison Harvey Branzburg & Ellers, Wilmington, DE.

For Northwestern Corporation and Clark Fork and Blackfoot LLC, Counter-Defendant: Dennis A. Meloro, Greenberg Traurig, The Nemours Building, Wilmington, DE.

For Northwestern Corporation aka Northwestern Public Service aka The Montana Power, L.L.C. aka Northwestern Energy, L.L.C. aka Northwestern Energy-SD/NE aka Northwestern Energy-Montana, Debtor: Charles Michael Terribile, William E. Chipman, Jr., Greenburg Traurig LLP, The Brandywine Building, Wilmington, DE; Dennis A. Meloro, Scott D. Cousins, Victoria Watson Counihan, Greenberg Traurig, The Nemours Building, Wilmington, DE; Evelyn J. Meltzer, Pepper Hamilton LLP, Hercules Plaza, Wilmington, DE; Monica Leigh Loftin, Paul D. Brown, Greenberg Traurig, LLP, The Nemours Building, Wilmington, DE; Robert Lee Striker, Leonard Street and Deinard, Minneapolis, MN; William Pierce Bowden, Ashby & Geddes, Wilmington, [*2] DE.

Mark S. Kenney, U.S. Trustee, Office of the U.S. Trustee, Wilmington, DE.

For OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Creditor Committee: Charlene D. Davis, Eric Michael Sutty, GianClaudio Finizio, The Bayard Firm, Wilmington, DE; Donna L. Harris, Cross & Simon, LLC, Wilmington, DE; John C. Phillips, Jr, Phillips, Goldman & Spence, Wilmington, DE.

**JUDGES:** JOHN L. PETERSON, United States Bankruptcy Judge.

**OPINIONBY:** John L. Peterson

**OPINION:**

### *MEMORANDUM OF DECISION and ORDER*

In Cause No. 05-52525, Plaintiff Northwestern Corporation ("NOR") filed an adversary complaint and objections to claims against the defendants Margaret A. McGreevey, *et al.*, who represent a class of former shareholders of the Montana Power Company ("MPC") which seek damages and other relief against a number of individuals and entities arising out of the divestiture of MFC. The McGreevey class filed an action on August 11, 2005, styled *McGreevey, et al v. MPC, NOR and the Clark Fork and Blackfoot LLC* ("CFB"), as defendants, Cause No. DV-05199, Montana Second Judicial District Court, Butte-Silver Bow County, Montana, seeking a judgment to impress a constructive or equitable trust on utility assets [*3] of the NOR purchase in 2002 from MPC, as more fully explained herein. NOR has removed the action to the United States District Court for the District of Montana, where it is now pending on McGreevey's motion for remand.

The present action seeks to enjoin the McGreevey state court action on the basis that it violates provisions of the confirmed chapter 11 plan of reorganization of NOR, has no basis in law or fact and seek an award of attorney's fees and costs. The matter is before this Court on NOR's Motion for Order to Show Cause why a Per-

manent or Preliminary Injunction should not be issued enjoining the continued prosecution of the cause DV-05199. Hearing on the Motion was held October 19, 2005, with counsel for each party present. Each party has filed pre-hearing memoranda in support of their respective positions and oral argument was made by counsel at the hearing. At the conclusion of the hearing the Court took the matter under advisement and is now prepared to rule.

The gravamen of the dispute is based on NOR's purchase of the utility assets, namely the transmission and distribution system of the MPC, under a Unit Purchase Agreement ("UPA") dated September 29, 2000, between [*4] NOR, as Buyer and Touch America Holdings, Inc., MPC and MPC LLC as sellers. One of the provisions of the UPA (sec. 2.23) required the sellers to obtain the affirmative vote of the holders of record of at least 2/3rds of the outstanding common stock of MPC approving the sale. While the McGreevey state court complaint alleges MPC wrongfully sold "all or some of its assets without obtaining shareholders approval in violation of *§ 35-1-823, MCA*", that allegation is not true as to the purchase of the utility assets of MPC by NOR because on October 2, 2000, MPC and NOR announced the sale, and MPC represented in its 8-K filing with the SEC that purchase needed approval of MPC's shareholders, which MPC sought and received n1.

n1 Allegations from *Plan Trust of Touch America Holdings, Inc. v. Goldman, Sachs et al.* (DV-04-250), attached as an agenda item.

In the McGreevey class Fourth Amended Complaint, Cause No. DV-01-141, Montana Second Judicial District, Butte Silver Bow County, now pending in U.S. District Court, [*5] attached as a hearing agenda item, the plaintiff alleges as true allegations in paragraph 6, p. 7, and paragraph 9(c), p. 9, as follows:

7. The final step of the original integrated plan to exit the energy business involved selling defendant Montana Power company's gas and electric distribution system to Northwestern Corp. for more than $ 1 billion, and then converting the old company into Touch America, Defendant Montana Power Company's telecommunication subsidiary. Defendant Montana Power Company has merged Defendant Montana Power Company into a Montana Power L.L.C., a subsidiary of Touch America Holding with Montana Power

LLC being the surviving entity. The Montana Power L.L.C. entity has been sold to Northwestern Corp., leaving Touch America Holdings with only two companies, those being Touch America, Inc. And Tctragcnics Co., which develops computer based monitoring systems. Under the scheme, shareholders of Defendant Montana Power Company have or will become shareholders of Touch America Holdings.

***

9. (C) As a final phase, Defendant Montana Power agreed to sell its transmission facilities to Northwestern Corp. and guaranteed that Montana Power Company would [*6] either obtain shareholder approval or pay $ 10 million liquidated damage sum to Northwestern Corp. (Emphasis added).

It is noteworthy this Complaint notes lack of shareholder's approval on divestiture of the generation, coal and oil and gas businesses, and independent power production licenses as a prime claim for relief, but does not assert such lack of shareholder approval on the Northwestern sale of the energy component. Moreover, nothing is alleged that the Northwestern purchase was somehow clouded with fraud. In the Memorandum of Understanding ("MOU") in Cause DV-01-141, contained in NOR's Motion for Order under *Rule 9019*, NOR noted it was joined in cause DV-01-141 to cover any judgment against NWE, because the McGreevey class had filed Proof of Claim No. 744 against NOR asserting the assets of NWE LLC were transferred to NOR in violation of fraudulent transfer law. The MOU covered the D & O policies of Montana Power Company, which were to contribute $ 67,000,000.00 to the settlement fund with attendant full release of the claims. It was not approved, but the reason is not in this record. Thereafter, upon stipulation of the parlies, the Bankruptcy Court approved a stipulation [*7] that the McGreevey claimants "shall have until 4:00 p.m. (EDT") on August 13, 2004, to file their objections to the Debtor's proposed plan." The stipulation was signed by the parties on August 2, 2004. The class failed to file any objection. The amended plan was confirmed with this provision (p. 62):

3. Binding Effect. In accordance with *section 1141(a) of the Bankruptcy Code*, the Plan and its provisions shall be, and hereby are, binding upon the Debtor, any Person acquiring or receiving a distribu-

tion under the Plan, any entity issuing securities under the Plan, any lessor of property to the Debtor, any lessee from the Debtor, any creditor of the Debtor and any holder of a claim against or Equity interest in the Debtor, and their respective successors and permitted assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted or rejected the Plan, or will or will not receive a distribution under the Plan" (Emphasis added).

Thus the MPC shareholders, now represented by the McGreevey class, approved the sale by over 2/3rd of the outstanding shares voting affirmatively [*8] in favor of the UPA, thus satisfying the provisions of § 35-1-823 n2. Nevertheless, the McGreevey class now seeks an order avoiding the transfer and directing the return of the utility assets as being fraudulent, with an intentional hindrance of creditors, unjust enrichment, rendering CFB insolvent, so as to impose under the provisions of the Montana Uniform Fraudulent Transfer Act, § § 31-2-328(3) and (4), 333 (1)(a) and (b), and 334(1), an actual and constructive trust in the Montana utility assets held by NOR for the benefit of the MPC shareholders.

n2 No basis is alleged in the state court complaint which resulted in an order in that court establishing the McGreevey class in Cause DV-05199 pursuant to Mont. R. Civ. P. (Mont.) Rule 23 or 23.1. Certainly it could not certify as a violation of § 35-1-823.

The UPA provided that NOR would pay for the utility assets the sum of $ 602 million dollars cash and assume MPC liabilities of just under $ 500 million, for a total consideration of $ 1.1 billion dollars. [*9] NOR made the payment pursuant to the UPA and assumed the debt in 2002 and on November 15, 2002, transferred the assets from CFB and NWE LLC to NOR.

The structure used to facilitate the transfer of the utility assets by MPC involved the creation of MPC LLC by MPC, and CFB together with Northwestern Energy LLC (NWli) by NOR, so that MPC LLC merged with CFB to take the assets to pass on to NOR through NWE. This has been called a "going flat" transaction or upstreaming the assets to NOR. McGreevey argues that when the CFB/N WE merger took place, CFB received no consideration for the transfer, except for the assumption of some debts, which thus left CFB insolvent. McGreevey contends that such structure invoked the provision of § 35-8-1203 MCA which provides "all

debts, liabilities and other obligations of each [merging party] that are party to the merger become the obligations of the surviving entity", namely CFB, a limited liability company in which the shareholders of MPC never had an ownership interest. After MPC utility assets were merged in MPC LLC, that entity was joined in the UPA. State court legal action by McGreevey has ensued against a number of entities, but as to NOR, it [*10] joined that action as party defendant so that it would be responsible for any judgment which McGreevey might recover against NWE to the extent NWE is liable to satisfy the judgment. NOR's joinder by stipulation retained all legal defenses of NOR. Thus, the McGrccvcy class contends it has creditor status against NOR.

NOR filed for chapter 11 bankruptcy relief in September, 2004. In the case, McGreevey filed two proofs of claim, to which objection has been filed by NOR. Moreover, McGreevey moved the bankruptcy court for relief from the automatic stay under 11 U.S.C. § 362 so it could file an adversary proceeding against NOR to establish the constructive trust. McGreevey's motion attached a specimen Adversary Complaint under the heading "In the United Stales Bankruptcy Court for the District of Delaware". After objection to the motion was filed by NOR claiming the claims allowance and disallowance procedure would govern and resolve the matter, the bankruptcy court, based upon the stipulation made by NOR when added as a defendant in the class action suit filed in 2001, would survive and thus the proper method to resolve the issues of alleged fraudulent transfer [*11] would be to allow McGreevey to file the adversary complaint attached to their motion. However, that complaint was never filed. Moreover, the McGreevey class never filed any objections to the Second Amended Plan of Reorganization asserting the constructive trust to the utility assets, and thereby preserving their legal position.

Ironically, another creditor, Magten Asset Management Corp. ("Magten") a holder of "QUIP" debentures assumed by NOR pre-petition, asserted the very same constructive trust/fraudulent conveyance position as McGreevey. In the order confirming the plan, the presiding Bankruptcy Judge Case stated:

"The court hereby finds that the going flat' transaction is all of one transaction and but for the going flat' transaction the Debtor would have no liability on the QUIPS notes."

In addition, Judge Case found that Magten, like McGrccvcy in the state court action, asserted "in rem" property interests in the Montana assets and that such

assets were being held in a constructive trust for the benefit of the QUIPS holders. Judge Case found that Magten

> "took no action to impose a constructive trust in the Montana assets and presented no evidence whatsoever [*12] as to why they should be entitled to a constructive trust with respect to the Montana assets . . . Moreover Magten . . . failed to cite a statute or case in support of their in rem property interest. The court finds persuasive Section 7 of the Uniform Fraudulent Transfer Act, as adopted in Montana, which contemplates that money damages are an adequate remedy for fraudulent transfer claims. Accordingly, the court finds no constructive trust has been established and money damages are an appropriate remedy for the holders of the QUIPS Litigation Claims."

The Court concluded the QUIPS notes were nothing more than general unsecured claims under section 7.5 of the plan, and indeed the confirmed plan specifically provides for such treatment in Class 8 of the plan.

It is noteworthy here, that unlike Magten, McGreevey made no effort whatsoever to establish a constructive trust from the "going flat" transaction, in the bankruptcy court, pre-confirmation. McGreevey now claims under fraudulent conveyance/constructive trust theory that claim survived the plan process and passed through unaffected due to a provision in the confirmed plan, sec. 5:13b, which provides:

> "Except as otherwise [*13] expressly provided in this plan, effective automatically on the Effective Date, the Released Parties, their respective representatives and one Additional Indemnities, shall not be released from any and all claims and causes of action arising under Sections 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy code or similar claims or cause of action arising under state or any other law, including, if applicable, claims in the nature of fraudulent transfer, successor liability, corporate veil piercing, or alter ego claims, as a consequence of transactions, events or circumstances involving or affecting the Debtor (or any of its predecessors or any of their

respective businesses or operations that occurred or existed prior to the Effective Date."

The McGreevey argument may carry some weight if they had a viable fraudulent conveyance action under the Montana Fraudulent Conveyance Act. They do not.

The corporate mechanisms established by the seller MPC and the buyer NOR, mat is, the creation of MPC LLC, CFB and NWR LLC, were established to separate the MPC utility assets from the telecommunication assets of Touch America ("TA") so as to allow MPC to divest and sell the utility [*14] assets separate and apart from the telecommunication assets, which were retained by TA and MPC. McGreevey's argument that CFB was left insolvent is a fiction which exalts form over substance. The substance of the transaction, under the UPA, concurred in by the MPC shareholders, plainly provided for the sale and purchase of the utility assets between MPC and NOR for $ 1.1 billion dollars. That sum was paid and received by MPC for its benefit and the benefit of its concurring shareholders. That feet is a given! Thus, when the transaction was completed by November 15, 2002, and the assets passed on to NOR through the various limited liability companies, the debtor/creditor relationship between NOR and MPC and its shareholders was satisfied, and therefore terminated. As a result, when NOR sought bankruptcy relief under chapter 11, MPC and its shareholders were no longer a creditor of NOR. This situation is fatal to the McGreevey class's state court action under the Montana Fraudulent Transfer Act as a matter of law. It is clear that in order for a party to seek the remedies under § 31-2-339, by the express definition of § 31-2-328(3) and (4) the creditor/plaintiff must have a claim, [*15] i.e., right to payment, as a predicate to maintain the action. It is further clear from the undisputed facts here that the McGreevey class does not have such claim, and is thus not a creditor because the UPA was satisfied by NOR's payment. As Judge Case held, and as 1 adopt, the "going flat" transaction is "all one transaction". The mechanism of creation of LLC's to effect the transfer and payment was indeed all one transaction, and it defies logic to argue otherwise. The McGreevey class simply cannot parse one aspect of the transfer and call it fraudulent. That would stand the confirmed plan of reorganization on its head, for the entire basis of the chapter 11 plan rested upon the utilization, implementation and consummation of the acquired Montana utility assets. The Montana court litigation now pending in the U.S. District Court has thus no basis for relief in law or fact. The claims filed by the McGreevey class in the bankruptcy case have no merit.

It is a well established principle of bankruptcy jurisprudence that an alleged creditor which files a claim in a bankruptcy case triggers the process of "allowance and

disallowance of claims", thereby subjecting that person to the bankruptcy [*16] court's equitable powers. *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990); *Gardner v. New Jersey*, 329 U.S. 565, 573, 67 S. Ct. 467, 91 L. Ed. 504 (1947). *In re Carnell Construction Corp.*, 424 F.2d 296, 298 (3rd Cir. 1970) (quoting *In re Beasley-Gilbert's, Inc.*, 285 F.Supp. 359, 361 (S.D. Ohio 1968)) plainly holds:

> "It is settled that a creditor who proves a claim submits himself to the summary jurisdiction of the Bankruptcy court in respect of preferences or voidable transfers, including the jurisdiction of the Bankruptcy Court to enter a monetary judgment or order a return,"

Moreover, it is axiomatic that a bankruptcy court possesses the inherent authority to enforce its own orders, such as one confirming a chapter 11 plan of reorganization. *In re Continental Airlines, Inc.*, 236 B.R. 318, 325-26 (Bankr. Del. 1999); *see, also,* F.R.B.P. Rule 3020(d). Finally, to preserve the plan post-confirmation by the bankruptcy court, *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154 (3rd Cir. 2004) and *In re Pegasus Gold Corporation*, 394 F.3d 1189 (9th Cir. 2004) [*17] hold "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold jurisdiction over the matter." Not only is there a close nexus in the cause *sub judice*, there is complete nexus for this Court to entertain jurisdiction to preserve the implementation and consummation of the plan for the plan creditors where, as here, the McGreevey class seeks erroneously, and without legal basis, to upset the entire underpinnings of the confirmed plan or reorganization by asserting a constructive trust over the Montana utility assets which form the bases of the success of the plan and are assets of the bankruptcy estate. This is so, because a person subject to constructive trust which arises under Montana state law, being involuntary in nature, has a duty to convey it to another on grounds that the person holding bare legal title would be unjustly enriched if he were permitted to retain it. *In re Estate of McDermott*, 2002 MT 164, 51 P.3d 486, 310 Mont. 435 (2002). That would be an unjust result in this case where full consideration under the UPA was paid by NOR.

It is also well established that where a creditor or person files [*18] a proof of claim, and has the opportunity to contest the disclosure statement or proposed plan of reorganization particularly to assert a constructive trust or fraudulent conveyance action and does not do so

in the bankruptcy case, when it could or should have done so, is barred from asserting that claim in another forum. The confirmed plan and order control under *11 U.S.C. § 1141*, defining the effect of confirmation, and acts like a contract that binds the parties who participate in the bankruptcy case or should have participated in the case. *Knupfer v. Wolfberg (In re Wolfberg)*, 255 B.R. 879 (Bankr. 9th Cir. 2000); *Eastern Air Lines, Inc. v. Brown & Williamson Tobacco Corp. (In re Ionosphere Clubs, Inc.)*, 262 B.R. 604 (Bankr; S.D. N.Y. 2001). It is undisputed that the McGreevey class participated in the debtor's chapter 11 case by filing proofs of claim and a motion for relief from stay to file an adversary proceeding in the bankruptcy case, which they did not pursue. Consequently, now asserting after confirmation of the plan in a state court forum, that the Montana utility assets were not property of the bankruptcy estate n3, the McGreevey class is precluded from litigating that issue in the state court action because [*19] they failed to take any steps to raise the issue before the court and litigate to conclusion their contentions prior to confirmation. *Miller v. U.S.*, 363 F.3d 999 (9th Cir. 2004); *In re PWS Holding Corp.*, 303 F.3d 308, 315 (3rd Cir. 2002); *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("Respondents chose not to pursue this cause of action [appeal of the bankruptcy court's decision], but instead to collaterally attack the Bankruptcy Court's *section 105* injunction in the federal court of Texas. This they cannot be permitted to do without undercutting the orderly process of law."); *Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures, Inc.)*, 324 B.R. 510, 521 (Bankr. Del. 2005) ("The application of res judicata, or claim preclusion, bars a party from litigating a claim that it would have raised or did raise in a prior proceeding in which it raised another claim on the same cause of action"). The excuse for not pursing the adversary proceeding, filing objection to plan so as to raise the constructive trust issue, as Magten did, was that a proposed settlement was on the table dealing with the availability of MPC D & O insurance policy proceeds [*20] to be funneled to the McGreevey class, which proposal was later rejected by the Montana U.S. District Court since title to the proceeds is in issue. Such is a weak and unacceptable excuse at best since the McGreevey class could still have pursued its adversary proceeding if it truly believed it had merit, or at a minimum requested a delay in the confirmation process until the settlement issue was resolved. It did neither.

> n3 *Section 1141(b)* provides: "Except as otherwise provided in the plan or order confirming the plan, the confirmation of a plan vests all property of the estate in the debtor."

It is the position of NOR that plan provisions also bar the pending state court action because the McGreevey class claims were channeled into a D & O Trust, and the claims are thus discharged as to NOR with an attendant injunction against the McGreevey class allowing it to pursue their remedy in another forum. Arguing that the McGreevey class disagreement with that position is misplaced, NOR states if the McGreevey class [*21] did not like such plan treatment it should have filed an appropriate objection to confirmation of the plan, which it did not do. NOR's argument, based on the plan language of the plan provisions (provisions L0.5(a) and (e), 13.1, 5.13(b), 1.47 and 4.12) has merit, particularly where the McUreevey class was served with the second amended plan, and did not seek any clarification from the court during the confirmation hearing by way of objection, as to the plan's intent, and how it would affect its constructive trust claim, particularly in light of NOR's position that the MPC D & O policies were not property of NOR's estate. In sum, the McGreevey class slept on its rights. However, due to my finding and conclusion that the McGreevey class was not and is not a creditor of NOR pre-petition I need not pass on NOR's position. This is particularly true since the Bankruptcy Court specifically found that the "Montana assets are property of the estate" in confirming the plan.

*Rubin v. Pringle (In re Focus Media Inc.), 387 F.3d 1077, 1085 (9th Cir. 2004),* involving a fraudulent conveyance action by a bankruptcy trustee to freeze potential estate assets, the court adopted the traditional test for [*22] preliminary injunction as follows:

To determine whether a preliminary injunction should issue, a court

balances the plaintiff's likelihood of success against the relative hardship to the parties. To receive a preliminary injunction, [a plaintiff is] required to show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor. These two alternatives represent extremes of a single continuum, rather than two separate tests.

*Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir. 1999)* (internal citations and quotations omitted).

To establish a substantial likelihood of success on the merits, NOR must show that it will have a fair chance of success on the merits. *Id.* By reason of my conclusion

that the McGreevey class was not and could not be a pre-petition creditor of NOR, it has no chance to establish a constructive trust under Montana's Fraudulent Transfer Act. NOR and its creditors and shareholders in the reorganized company will suffer immediate and irreparable harm if the McGreevey class [*23] is permitted to continue to prosecute the stale court action in any forum. Under settled law, where a party unilaterally violates a bankruptcy court order, that violation, standing alone, constitutes the only harm necessary for an injunction. *American Gen. Fin. v. Tippins (In re Tippins), 221 B.R. 11, 27-28 (Bankr. N.D. Ala. 1998); In re Steffan, 97 B.R. 741, 746 (Bankr. N.D. N.Y. 1989); In re McNeil, 128 B.R. 603, 615 (Bankr. E.D. Pa. 1991).* In sum, the McGreevey class cannot be permitted to "end run" the confirmation process and order confirming the plan by erroneously asserting an equitable interest in the Montana utility assets which were and are a necessary and essential part of the confirmed plan of reorganization. The preliminary injunction will preserve the rights of the debtor and creditors who relied upon the plan and thus preserve the status quo. If the McGreevey class wishes to preserve its alleged pre-petition claims, it must do so in the bankruptcy forum where it initially sought relief by filing their proofs of claim and seeking permission to tile an adversary proceeding to assert its rights. It is in the public interest to preserve the integrity of the bankruptcy [*24] process from collateral attack post-confirmation. Accordingly, for all the above reasons, a preliminary injunction must be issued against the McGreevey class enjoining the class from continuing the litigation in Cause No. DV-05199, presently pending on removal in the Montana U.S. District Court. n4

n4 While not raised as an issue, by cither party, since the alleged McGreevey class claims exceed $ 5 million dollars in value, the jurisdiction of state court is highly questionable due to the passage of the "Class Action Fairness Act of 2005", P.L. 109-2, February 18, 2005, 119 Stat. 4, Sec. 4. Federal District Court Jurisdiction for Interstate Class Actions.

**IT IS ORDERED:**

1. The plaintiffs Margaret A. McGreevey, Jo Ann Barkell and Joseph Martelli, on behalf of themselves and the class of similarly situated plaintiffs, are hereby preliminarily enjoined from further prosecution of Cause No. DV-05199, filed against Montana Power company, a Montana corporation, Northwestern Corporation, a Delaware corporation [*25] and the Clark Fork and Blackfoot LLC, a Montana Limited Liability company, defendants, presently pending in the Montana U.S. Dis-

2005 Bankr. LEXIS 2146, *

trict Court, until further Order of this Court, with leave of the plaintiffs NOR and CFB to seek an award of attorneys' fees and costs.

DATED this 25th day of October, 2005,

BY THE COURT

HON. JOHN L PETERSON

United States Bankruptcy Judge District of Delaware

**TAB 7**

JOEL STARRELS, Plaintiff, v. THE FIRST NATIONAL BANK OF CHICAGO et al., Defendants

No. 85 C 6458

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1987 U.S. Dist. LEXIS 518

January 21, 1987, Decided

**OPINIONBY:** {*1}

PARSONS

**OPINION:** *MEMORANDUM OPINION AND ORDER*

This memorandum opinion and order concerns the motions to dismiss brought by the defendants in Starrels v. The First National Bank of Chicago et al., No. 85 C 6458 (which has been consolidated with No. 85 C 7252, a case involving the same parties that was filed in state court and removed to the federal district court). It is a shareholder derivative suit, and also alleges a RICO violation. The defendants are The First Chicago Corporation ("First Chicago"), its wholly owned subsidiary The First National Bank of Chicago ("First National"), the individual members of the board of directors for both First Chicago and First National ("the Directors"), and Arthur Anderson & Co. ("Anderson"), and Illinois partnership and an independent accounting firm that served as auditor and independent accountant for both First Chicago and First National.

The plaintiff alleges in count I of his complaint various acts by First Chicago and First National, under the domination and control of the individual defendants, of egregious mismanagement, malfeasance and breach of fiduciary duty owed to both the corporations and their shareholders. He also alleges that {*2} in certain matters Anderson's actions involved gross negligence and arbitrary and capricious conduct as a result of which First Chicago, First National and their shareholders have been harmed. He styles this count as a derivative and class action count. His count II alleges RICO violations by each of the defendants.

All of the defendants have moved to dismiss Starrels' complaint, each of them claiming that it fails to comply with various of the requirements of **Fed. R. Civ. P. 23.1** and **9(b)**. In addition, the directors claim that it fails to satisfy the pleading requirements of **Fed. R. Civ. P. 8** in that it fails to give any of them fair notice of the grounds upon which the action is premised and fails to particularize as to any of them the acts or omissions for which he seeks to hold them accountable. Anderson in addition claims that the complaint against it must be dismissed for lack of both

personal and subject matter jurisdiction. Anderson says that it fails to allege any federal or state claim based upon it conclusory allegations of either breach of fiduciary duty or "fraud on the market." Anderson insists that the complaint fails to allege any well-pleaded facts which, if proved, {*3} would establish negligence by Anderson.

During the pendency of this litigation, an additional objection arose and is pressed here. On January 31, 1986, the named plaintiff, Joel Starrels, died. The attorneys for Starrels have now sought to substitute for him in the complaint his daughter, Patricia Bernstein, and to name her plaintiff. For all that appears, the 6,860 shares of First Chicago Stock owned by him at the time of his death had not been specifically bequeathed to Bernstein, to whom 50% of the estate had been left. Instead it had become a part of his estate to be administrated by the appointed executor, Harris Trust and Savings Bank. Harris disposed of 1,860 of the shares, distributed 2,500 of the remaining 5,000 shares to Bernstein and placed the balance in a trust for the benefit of Starrels' two grandchildren. Harris also assigned proportionate shares of the interest in this lawsuit to Bernstein and the trust.

All the defendants challenge the substitution of Bernstein as the party plaintiff because under **Fed. R. Civ. P. 23.1**, a complaint must allege "that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or {*4} membership thereafter devolved on him by operation of law . . . ." They claim that the assignment by Harris to Bernstein of the share of First Chicago and of the rights and interests in the present lawsuit was not a devolution by operation of law, and that as a result, the suit may not proceed with Bernstein as the party plaintiff.

All of the defendants also argue that the plaintiff had failed to make a necessary pre-litigation demand upon the Directors and that such failure is not excused by any facts pleaded in the complaint. They then claim that the complaint fails to allege any injury to the plaintiff and to the class of shareholders the plaintiff would purport to represent. Finally, with respect to the RICO claim, they claim that the complaint fails to allege sufficient predicate acts and a pattern of

racketeering, both necessary to satisfy the requirements of a RICO charge.

The Directors also argue that because First National and First Chicago are Delaware corporations, Starrels must but has failed to comply with Delaware substantive law that requires a shareholder to make a demand on the Directors before bringing suit or demonstrate with detailed allegations that a demand would {*5} be futile. Starrels failed to make a demand, and these defendants argue that his "conclusory allegations of futility" are insufficient under Delaware law to excuse a demand. A further violation of **Fed. R. Civ. P. 8** is claimed because the complaint "fails to give these defendants fair notice of the grounds upon which his claims rest by failing to particularize as to any defendant the acts or omissions for which plaintiff seeks to hold him accountable." And concerning the class action claims, the Directors argue that these claims arise from alleged breaches of fiduciary duties, claims which belong to the corporation for which the corporation itself only may seek redress. Then, concerning the RICO claims, the Directors also argue that on substantive grounds the allegations are deficient

Anderson makes additional arguments against Starrels' second amended and consolidated complaint. Anderson claims that Bernstein may not maintain both a class action and a derivative suit without creating a conflict of interest, that the RICO claim failed to survive Starrels' death, and failed to state a claim against Anderson, over whom there is no subject matter jurisdiction.

I have concluded that this {*6} is a demand-required case, and because Starrels' second amended and consolidated complaint does not allege that he first made a demand upon the Directors, it must be dismissed. Whether it should be dismissed with or without prejudice brings up the question of whether it can be amended to allege that demand as that term is interpreted in the case law on these cases. The question of the possibility of necessary amendment is important to another matter also. I have also concluded that Patricia Bernstein is not a proper party plaintiff. If her interest in this litigation and her ownership of the shares of stock did not devolve upon her by operation of law, then she is unable under **Fed. R. Civ. P. 23.1** to maintain this derivative action in her name.

Rule 23.1 requires in relevant part that "the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law . . . ." Bernstein came into possession of the shares she now holds through an assignment of them

by the executor of Starrels' estate. The assignment, which is attached to {*7} the second amended and consolidated complaint, states that the executor, Harris,

became the owner, as Executor of 6,860 shares in FIRST CHICAGO CORPORATION; has disposed of 1,860 of said shares, and still retains 5,000 of the shares. It also succeeded to the interest of the decedent in two lawsuits filed on his behalf in [the two cases that have been consolidated . . . It] has determined to distribute the shares in FIRST CHICAGO CHICAGO [sic] and its interest in aforesaid cases, to PATRICIA BERNSTEIN and the HARRIS TRUST AND SAVINGS BANK, as trustee.

Therefore, as executor aforesaid, HARRIS TRUST AND SAVINGS BANK assigns and transfers:

(a) To (i) PATRICIA BERNSTEIN, 2,500 Shares; and (ii) to HARRIS TRUST AND SAVINGS BANK, as trustee, for ANDREW STARRELS and SALLY STARRELS, 2,500 Shares -- in FIRST CHICAGO CORPORATION.

(b) To (i) PATRICIA BERNSTEIN, and (ii) to HARRIS TRUST AND SAVINGS BANK, as Trustee, for ANDREW STARRELS and SALLY STARRELS, in proportion to the shares in FIRST CHICAGO CORPORATION, it is hereby assigning and transferring to them, its entire interest in the aforesaid cases pending in the United States District Court. . . .

Plaintiff argues that **Hirshfield v. {*8} Briskin, 447 F.2d 694 (7th Cir. 1971)** is sufficiently similar to this case so as to require a holding that the shares came into Bernstein's possession in a manner not proscribed by the Rule. In that shareholder derivative case, the widow of an original shareholder sought to bring a derivative action, and her standing was challenged on the ground that ownership of the shares was disputed and litigated between the executor and the brother of the deceased, who claimed the shares as trustee of a living trust. The dispute was settled by agreement, which provided that if the executor prevailed in the litigation, the widow would be entitled to one-third of 40,000 shares. If the executor had not prevailed, she apparently would have been entitled to none of the shares. By agreement, she reduced her claimed portion to 10,000 shares, and the case was settled. **Id. at 698.**

The court observed that the "transfer to her was not in all respects solely and perfectly a result of the operation of law, and some element of bargain or consent was present. Yet we think her acquisition sufficiently approximated a devolution by operation of law and did not present the sort of occurrences

involving speculation, {*9} champerty, or collusion to confer jurisdiction, which Rule 23.1 seeks to preclude." Id.

I do not think that Hirshfield controls the present case. The court declined to read Rule 23.1 so literally as to require a devolution completely free of any element of bargain and consent, but it appears that the elements of bargain and consent were minimal and were in that case made between parties holding strongly adverse interests. In fact, the plaintiff's derivative suit was brought against the person with whom she had settled the dispute. The risk of collusion was therefore small. Furthermore, the corporation for which the derivative action was brought was a family-held concern. Under these circumstances the court understandably concluded that the purposes of Rule 23.1, to prevent speculation, champerty or collusion would not be met by a literal reading of the Rule.

The instant case is distinguishable because it involves a substantially greater degree of bargain and consent in the assignment of the shares to Bernstein. Moreover, it involves a much larger corporation whose stock is traded nationally. In this context, it cannot be said confidently the the continuation of this lawsuit {*10} in the name of Bernstein would be free from the evils sought to be avoided by the Rule. Our case here doe sought fit within Hirshfield, and instead is much more like **Stephenson v. Landegger, 464 F.2d 133** (2d Cir.), cert. denied, **409 U.S. 1049 (1972).** In that case the shareholder who had initiated the suite previously had placed the shares into a revocable trust. The court determined that he himself and standing to initiate the suit on the basis of his equitable interest in the shares, but that after his death, that interest was terminated when the remainder interests of the trust became operative under the provisions of the trust which had become irrevocable upon his death. The court observed that the remainder interests vested by contract, i.e., under the provisions of the trust, and not by operation of law. **464 F.2d at 135.** Thus, the executors and the trustees of the estate were denied leave to be substituted as parties plaintiff. Id.

Similarly, Bernstein's interest in the shares here arose out of the assignment of the shares to her by Harris. Although Starrel's interest in the suit did not terminate upon his death and devolved upon the executor of his estate, Harris, the {*11} executor's transfer of that interest to Bernstein was not by operation of law. The transfer was by a contractual assignment. Accordingly, Bernstein may not maintain this derivative action in her name. Furthermore, if Bernstein is to be denied the status to bring the suit in a derivative capacity, the class allegations in count I of the second amended and consolidated complaint do not state a claim upon which relief may be granted. The fraud and RICO claims belong to the corporation, and Bernstein cannot allege that she has standing to bring them in an individual capacity. That count accordingly must be dismissed.

Count II also must be dismissed because the RICO claim does not survive Starrels' death. See Tellis v. United States Fidelity & Guaranty Company, No. 85-2704 slip op. at 9 (7th Cir. Nov. 6, 1986) (civil RICO is penal in nature); **Smith v. No. 2 Galesburg Crown Finance Corp., 615 F.2d 407, 414 (7th Cir. 1980)** (general rule is that actions for penalties do not survive the death of the plaintiff). Because of the resolution of these issues, it is unnecessary to address the other arguments raised in the motions to dismiss Starrel's complaint.

In view of the foregoing, it {*12} is ORDERED that:

The complaint in Starrels v. The First National Bank of Chicago, No. 85 C 6458 is dismissed. However, it cannot be determined at this time whether this dismissal should be with or without prejudice. If in a still further amendment it can be alleged that adequate demand was made, and the allegations of demand are in sufficient detail to indicate that the demand was more than pro-forma but rather satisfied the observations of **Renfro v. Federal Deposit Insurance Corp., 773 F.2d 657, 659 (5th Cir. 1985),** dismissal with prejudice for this reason could be avoided.

Further, if in another amended complaint allegations are made which would indicate that the assignment of the shares of stock to Bernstein by the executor of the will was not dehors the provisions of the will itself and thus was a transfer by operation of the laws of Illinois with regard to decedent's estates, then the amended complaint would survive the defendants' objections to her being named the party plaintiff. I conclude that a dismissal with prejudice must be delayed for a period of time sufficient to permit the plaintiff to explore these contingencies. I consider 30 days sufficient time for these {*13} purposes. Wherefore, the Court's entry of orders pursuant to its rulings herein are postponed until February 15, 1987.

JAMES B. PARSONS, United States District Court Judge

**TAB 8**

THOMSON KERNAGHAN & CO.; SOVEREIGN PARTNERS & CO., and ATLANTIC-CAPITAL FUND, LTD., Plaintiffs, -v- GLOBAL INTELLICOM, INC.; DAVID A. MORTMAN; JOHAN DE MUINCK KEIZER; N. NORMAN MUELLER; FRANK HARITON; GH ACQUISITION CORP.; and GII ACQUISITION CORP., Defendants.

99 CIV. 3005 (DLC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1999 U.S. Dist. LEXIS 13723

September 7, 1999, Decided

September 7, 1999, Filed

**DISPOSITION:** {*1} Hariton's motion to dismiss granted in full.

**COUNSEL:** Hillary Richard, Laurie Edelstein, Brune & Richard LLP, New York, NY, for plaintiffs.

Roy L. Jacobs, New York, NY, for Frank Hariton, defendant.

**JUDGES:** DENISE COTE, United States District Judge.

**OPINIONBY:** DENISE COTE

**OPINION:** OPINION AND ORDER

DENISE COTE, District Judge:

Plaintiffs Thomson Kernaghan & Co., Sovereign Partners & Co., and Atlantic-Capital Fund, Ltd., are the purchasers of convertible securities. Defendant Global Intellicom, Inc. ("Global") is the issuer of the securities. The remaining defendants are individuals or entities associated with Global. One of these individuals, Frank Hariton ("Hariton"), now moves to dismiss the two claims against him. For the reasons stated, Hariton's motion is granted.

Global filed this action on April 26, 1999. The complaint alleged several causes of action, including breach of contract and violation of sections of the Securities and Exchange Act, not at issue in this motion because they do not name Hariton as a defendant. The present motion to dismiss only deals with the last two claims, the Fifth and Sixth Claims, that name Hariton as a defendant.

The Fifth Claim is based on a fraudulent {*2} conveyance theory. Plaintiffs are alleged to be creditors of Global. Global is alleged to have announced that it was entering into a transaction in which it would surrender all of its shares in one of its subsidiaries, Global-Insync, Inc., in exchange for 3,500 preferred shares of a newly formed Delaware corporation called GH Acquisition Corporation

("GH"). According to the Fifth Claim, this transaction is a fraudulent conveyance because either it was made with actual intent to defraud or because Global was insolvent at the time of the transfer and did not receive reasonably equivalent value. Hariton is not alleged to have been either a transferee or a beneficiary of any transfer. Rather, Hariton is alleged to have participated since he "was involved in the formulation of the plan" to make the transfer. Specifically, he

incorporated [GH] for the purpose of facilitating . . . [Global's] fraud. Hariton was counsel for [Global] regarding the disputes underlying these counterclaims [sic] and therefore [had] actual and constructive knowledge of [Global's] financial condition and the Plaintiffs' claims against it.

The Sixth Claim seeks injunctive relief against all {*3} defendants. Global has consented to the dismissal of the Sixth Claim against Hariton. The only issue for the Court is therefore Hariton's motion to dismiss the Fifth Claim.

**DISCUSSION**

This Court may grant a motion to dismiss pursuant to Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." **Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994)** (quoting **Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).** In considering a motion to dismiss, the Court must take "as true the facts alleged in the complaint and draw[] all reasonable inferences in the plaintiff[s'] favor." **Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994).** In other words, the Court can dismiss claims only if, assuming all facts as true, the claimant still has failed to plead the basic elements of his causes of action.

Both parties have briefed the fraudulent conveyance claim under New York law and thereby have

consented to the application of the law of the forum state. See **American Fuel Corp. v. Utah Energy Development Co., 122 F.3d 130, 134 (2d Cir. 1997).** {*4} Nonetheless, neither side addresses the Court of Appeals decision in **Federal Deposit Ins. Corp. v. Porco, 75 N.Y.2d 840, 552 N.Y.S.2d 910, 911, 552 N.E.2d 158 (N.Y. 1990),** which upheld the continued validity of the rule that a fraudulent conveyance claim may not be maintained against "parties who . . . were neither transferees of the assets nor beneficiaries of the conveyance." See also **Foufas v. Leventhal, 1995 U.S. Dist. LEXIS 7641, *9,** No. 94 Civ. 7924(NRB), **1995 WL 332020,** at *2 (S.D.N.Y. June 5, 1995); **Geren v. Quantum Chemical Corp., 832 F. Supp. 728, 736 (S.D.N.Y. 1993).** Porco is dispositive of the Fifth Claim. Global does not allege that Hariton was either a transferor or a beneficiary of the alleged fraudulent conveyance. Cf. **Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1172 (2d Cir. 1993)** (mastermind used transferred assets to pay personal expenses). Global also does not plead an alternative theory, such as piercing the corporate veil, under which Hariton could be held liable. See, e.g., **Symbax, Inc. v. Bingaman, 219 A.D.2d 552, 631 N.Y.S.2d 829, 831 (App. Div. 1995).** As such, under New York law no fraudulent {*5} conveyance claim may be maintained against Hariton merely for his participation in the alleged transfer.

## CONCLUSION

Hariton's motion to dismiss is granted in full.

SO ORDERED:


Dated: New York, New York

September 7, 1999

DENISE COTE

United States District Judge