## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MAGTEN ASSET MANAGEMENT )
CORPORATION, Suing individually and )
Derivatively on behalf of CLARK FORK )
AND BLACKFOOT, LLC, )
)
Plaintiff, )
) C.A. No. 04-1256-JJF
v. )
)
PAUL HASTINGS JANOFSKY )
& WALKER LLP )
)
Defendant. )

## ANSWERING BRIEF OF MAGTEN ASSET MANAGEMENT IN OPPOSITION TO THE MOTION OF DEFENANT PAUL HASTINGS JANOFSKY & WALKER LLP FOR JUDGMENT ON THE PLEADINGS

David A. Jenkins (ID No. 932)
Kathleen M. Miller (ID No. 2898)
SMITH, KATZENSTEIN & FURLOW, LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899
Phone: (302) 652-8400
Fax: (302) 652-8405
*Attorneys for Magten Asset*
*Management Corporation*

OF COUNSEL:

Bijan Amini, Esq.
Avery Samet, Esq.
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY 10017

May 12, 2006

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

PROCEDURAL HISTORY ................................................................................... 2

STATEMENT OF FACTS .................................................................................... 2

STANDARD OF REVIEW ................................................................................... 6

LEGAL ARGUMENT .......................................................................................... 6

      I.      THE COMPLAINT STATES A CLAIM FOR CONSPIRACY
           AND AIDING AND ABETTING UNDER MONTANA LAW ............... 6

      II.     MAGTEN HAS STANDING TO ASSERT ITS CLAIMS
           OF AIDING AND ABETTING THE BREACH OF
           FIDUCIARY DUTIES AND MALPRACTICE ....................................... 9

CONCLUSION ................................................................................................... 11

TABLE OF AUTHORITIES

Cases                                                                                              Page(s)

*Banco Popular N.A. v. Gandi,*
        876 A.2d 253 (N.J. 2005) .............................................................................. 7, 8, 9

*Bierling v. Ringling,*
        204 P. 829 (Mont. 1925) ..................................................................................... 9

*Chepstow Ltd. v. Hunt,*
        381 F.3d 1077, 1089-90 (11th Cir. 2004) ........................................................... 8

*Chu v. Hong,*
        185 S.W.3d 507 (Tex. App. 2006) ....................................................................... 7

*Dalton v. Meister,*
        239 N.W. 2d 9 (Wis. 1976) .................................................................................. 8

*Double Oak Constr., LLC v. Cornerstone D'vlpmt. Int'l LLC,*
        97 P.3d 140 (Colo. Ct. App. 2004) ...................................................................... 8

*Farmers Plant Aid, Inc. v. Fedder,*
        999 P.2d 315 (Mont. 2000) .................................................................................. 7

*FDIC v. S. Prawer & Co.,*
        829 F. Supp. 453 (D. Me. 1993) .......................................................................... 9

*Filip v. Bucurenciu,*
        28 Cal. Rptr. 3d 884 (Cal. Ct. App. 2005) .......................................................... 8

*Freeman v. First Union Nat'l Bank,*
        865 So. 2d 1272 (Fla. 2004) ................................................................................ 7

*Gulf Ins. Co. v. Clark,*
        20 P.3d 780 (Mont. 2001) .................................................................................... 7

*In re Northwestern Corp.,*
        313 B.R. 595 (Bankr. D. Del. 2004) ............................................................. 5, 10

*In re Vereen,*
        Nos. Civ.A. 96-78369-W, 98-80262-W, 1999 WL 33485639
        (Bankr. D.S.C. April 16, 1999) ........................................................................... 8

*Independent Ass'n of Continential Pilots v. Continential Airlines,*
     No. CIV.A. 96-389-SLR, 1997 WL 309438
     (D. Del. Apr. 29, 1997) ............................................................................... 6

*Institute for Scientific Info. v. Gordon & Breach, Sci. Publs., Inc.,*
     931 F.2d 1002 (3d Cir. 1991) ..................................................................... 6

*Joel v. Weber,*
     602 N.Y.S. 2d 383 (N.Y. App. Div. 1993) ............................................... 8

*Lewis v. Chiles,*
     719 F.2d 1044, 1048 (9th Cir. 1983) ......................................................... 11

*Marshall v. Fenstermacher,*
     388 F. Supp. 2d 536 (E.D. Pa. 2005) ......................................................... 8

*McElhanon v. Hing,*
     728 P.2d 256 (Ariz. 1985) ......................................................................... 8

*Morganroth & Morganroth v. Norris, McGlaughlin & Marcus, P.C.,*
     331 F.3d 406 (3d Cir. 2003) ...................................................................... 8

*Neset v. Fifer,*
     942 P.2d 712 (Mont. 1997) ....................................................................... 9

*Raymond v. Blancgrass,*
     93 P. 648 (Mont. 1908) ............................................................................. 7

*Starrels v. The First Nat'l Bank of Chicago,*
     No. 85 C 6458, 1987 WL 5952 (N.D.Ill. January 27, 1987) ..................... 11

*Summers v. Hagen,*
     852 P.2d 1165 (Alaska 1993) ................................................................... 8


<u>Statues and Other Authorities</u>                                                     <u>Page(s)</u>

FED. R. CIV. P. 231 ........................................................................................... 11

MONT. CODE ANN. § 28-2-701 ....................................................................... 9

MONT. CODE ANN. § 31-2-326 ....................................................................... 1

MONT. CODE ANN. § 31-2-339 ....................................................................... 7

MONT. CODE ANN. § 31-2-342 ....................................................................... 7

MONT. CODE ANN. § 35-8-101  .................................................................................. 1

MONT. CODE ANN. § 35-8-1104  ........................................................................... 9, 10

MONT. CODE ANN. § 72-33-218  ................................................................................ 9

5C Charles Alan Wright & Arthur R. Miller,
FEDERAL PRACTICE & PROCEDURE § 1368 (2004)  ................................................... 6

Plaintiff Magten Asset Management Corp. ("Plaintiff" or "Magten") submits this memorandum of law in opposition to the motion of defendant Paul Hastings Janofsky & Walker LLP ("Defendant" or "Paul Hastings") for judgment on the pleadings.

**PRELIMINARY STATEMENT**

Paul Hastings' motion comes almost two years to the date this action was begun. Contrary to Paul Hastings' assertion (see Opening Brief ("OB") at 1) (D.I. 87), Magten's "core" allegations are that Paul Hastings represented both sides to a fraudulent transaction despite its obvious conflict and, with knowledge that it was fraudulent, devised, structured, negotiated and documented the fraudulent transfer for the benefit of the transferee and at the expense of the transferor rendered insolvent by its acts. This motion, made prior to any substantive discovery, should be denied.

Paul Hastings seeks judgment on the pleadings on two grounds: (i) that Magten's claims are barred by Montana's Uniform Fraudulent Transfer Act, MONT. CODE ANN. § 31-2-326, *et seq*, ("MUFTA"), and (ii) that the Montana Limited Liability Company Act, MONT. CODE ANN. § 35-8-101, *et seq* ("MLLCA") deprives Magten of standing to prosecute its malpractice and negligence claims that are derivative in nature. Neither statute contains the proposition Paul Hastings attributes to it.

Paul Hastings' claim that MUFTA bars such an action is unsupported by any language in the statute, is contrary to the Montana Supreme Court's interpretation of the statute and is in conflict with Montana common law. Moreover, contrary to Paul Hastings' suggestion, other state courts interpret the UFTA to not bar claims against attorneys for scheming to violate the statute.

1

Paul Hastings' claim that the MLLCA bars Magten's claims is similarly unsupported by any statutory language or Montana precedent. Moreover, this is at least the third time it has been raised by defendants in the actions arising from the fraudulent transfer, including previously by Paul Hastings as counsel to its client, Northwestern Corporation ("Northwestern"). On each occasion, both the United States Bankruptcy Court in this District and the United States District Court for the District of Montana have affirmed Magten's standing to pursue these claims.

## PROCEDURAL HISTORY

This action was commenced on May 19, 2004 in Montana state court. It was subsequently removed to the United States District Court of Montana and then transferred to this Court. Paul Hastings answered the Complaint on July 24, 2004, simultaneously seeking to stay the action pending the outcome of the related proceedings against Northwestern. On September 21, 2005, this Court denied Paul Hastings' motion for a stay with leave to renew at a conference then scheduled for October 20, 2005. At that conference no renewal motion was made. Instead, the parties were sent to mediation and told discovery would follow thereafter if efforts at mediation were unsuccessful. Nevertheless, Paul Hastings continues to avoid discovery through a series of motions for protective orders and simply refusing to proceed.

## STATEMENT OF FACTS

This action arises from Northwestern's transfer, without consideration, well over $1 billion of assets from one of its subsidiaries and out of the reach of that subsidiary's creditors. As set forth in Magten's complaint (the "Complaint")[1]:

---

[1] Attached as Ex. A to the Declaration of Kathleen M. Miller ("Miller Decl.") being filed contemporaneously herewith.

2

> The chronology of the events in question is stark testimony to the fraudulent nature of the scheme. In September 2000, Northwestern agreed to acquire the profitable transmission assets and the Milltown Dam of the Montana Power Company. By the time the transaction was consummated on February 15, 2002, Northwestern was drowning in red ink from bad investment decisions. A mere nine months later, slowed only by regulatory requirements, Northwestern transferred Clark Fork's profitable assets of between $1.1 and 1.4 billion in value for no payment whatsoever. Consideration supplied in the form of assumption of $700 million in Clark Fork's debt, on its face inadequate, was in fact itself illusory. Northwestern promptly encumbered the assets with new debt to temporarily cover its ineptitude, disenfranchising Clark Fork's creditors altogether. A mere ten months later, Northwestern was bankrupt.

Compl. ¶ 2. The Complaint also alleges that Clark Fork's officers (the "Clark Fork Officers") were complicit in making Clark Fork insolvent, thereby breaching their duties owed to Clark Fork's creditors. Compl. ¶ 3.

Representing both the transferee and transferor, Paul Hastings knowingly designed and implemented the transfer so as to defraud the creditors of Clark Fork. Compl. ¶ 5, 78-81. The Complaint alleges that Paul Hastings' assistance guiding Clark Fork through the complex legal and regulatory hurdles was crucial to the ultimate success of the fraudulent scheme. Compl. ¶ 4. While for purposes of this motion, the Complaint's allegations must be taken as true, Paul Hastings has admitted that it represented both Clark Fork and Northwestern in drafting and implementing the transfer. *See* Ans. ¶ 5, 40, 42, 47, 81 (attached as Ex. B to Miller Decl.). Paul Hastings has also admitted that as a result of the transfer, the assets of Clark Fork became "available to all creditors of Northwestern, most of whom were not creditors of Clark Fork." *Id.* ¶ 55

One of Clark Fork's creditors was Montana Power Capital I (the "QUIPS Trust"). Compl. at ¶ 17. Pursuant to a November 1, 1996 indenture agreement (the "Indenture"), the QUIPS Trust was issued approximately $65 million in bonds by the predecessor in interest to Clark Fork. *Id.* at ¶ 16. Instead of selling the bonds directly to investors, the QUIPS Trust issued certain Series A 8.45% Quarterly Preferred Securities (the "QUIPS"). Thus, the value of the QUIPS was entirely based upon Clark Fork's ability to pay interest and principal to the QUIPS Trust. *Id.* at ¶ 20.

Pursuant to the Section 610 of the Indenture, Clark Fork (as successor in interest) expressly acknowledged that 1) QUIPS holders were to be the intended beneficiaries of Clark Fork's obligations to the QUIPS Trust and 2) if the QUIPS Trustee failed to act, any holder of the QUIPS could sue directly to enforce the QUIPS Trust's rights. *Id.* at ¶ 23. As has already been held in related proceedings, Magten is an express third-party beneficiary under the Indenture. *See Magten v. Hanson*, CV-04-26-BU-RFC, slip op. at 6-7 (D. Mont. Jan. 27, 2005) (ORDER) ("Montana Jan. Order") (attached as Ex. C to Miller Decl.).

Magten also filed actions against Northwestern in the Bankruptcy Court and against the Clark Fork Officers in the United States District Court in Montana. Both cases are now before this Court.

Paul Hastings moved to dismiss the action against Northwestern arguing that Magten lacked standing to pursue its fraudulent transfer claims and was estopped because it purchased its QUIPS after the fraudulent transfer. *See* Northwestern's Motion to Dismiss[2], Heading II, at 14-16, 25, n.7 (submitted by Paul Hastings) (attached as Ex. D to

---

[2] Filed in *Magten Asset Management Corp. v. Northwestern Corp.*, Adv. Pro. No. 04-53324 (Bankr. D. Del.).

Miller Decl., without exhibits).  By decision dated August 20, 2004, the Bankruptcy Court denied Paul Hastings' motion, holding that Magten's claim that Northwestern "intentionally and fraudulently concealed the fact that its financial condition was much worse than reported publicly" in order to obtain the Trustee's release for the fraudulent transfer "may have legs." *In re Northwestern Corp.*, 313 B.R. 595, 602 (Bankr. D. Del. 2004).

Similarly, the Clark Fork Officers moved to dismiss and for summary judgment on the grounds that Magten lacked standing to assert its breach of fiduciary duty claims. By decision dated January 27, 2005, the District Court for Montana upheld Magten's standing as an express third-party beneficiary to the Indenture to maintain actions arising from the fraudulent transfer.  Montana Jan. Order at 6-7.  By decision dated April 18, 2005, the Montana District Court rejected the Clark Fork Officers' claim that the MLLCA, relied upon by Paul Hastings here, insulated them from fiduciary duties to creditors, including Magten as the third-party beneficiary of the Indenture.  *See Magten v. Hanson*, CV-04-26-BU-RFC, slip op. at 4 (D. Mont. April 18, 2005) (ORDER) ("Montana April Order") (attached as Ex. E to Miller Decl.).

## STANDARD OF REVIEW

Federal Courts follow "a fairly restrictive standard in ruling on motions for judgment on the pleadings." 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1368 (2004). As with Rule 12(b)(6) motions to dismiss, the Court must accept every factual allegation of the Complaint as true. *See Independent Ass'n of Continential Pilots v. Continential Airlines*, No. CIV.A. 96-389-SLR, 1997 WL 309438 at *2 (D. Del. April 29, 1997). Every reasonable inference from those facts must be drawn in favor of the Plaintiff. *See Id.* at *2 ("the court must resolve any ambiguities concerning the sufficiency of the claims in favor of plaintiffs."). Throughout, the burden rests on Paul Hastings "to clearly establish that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Institute for Scientific Info. v. Gordon & Breach, Sci. Publs., Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991).

## LEGAL ARGUMENT

### I. THE COMPLAINT STATES A CLAIM FOR CONSPIRACY AND AIDING AND ABETTING UNDER MONTANA LAW

Paul Hastings' contention that the MUFTA bars actions against persons who knowingly conspired to effect a fraudulent transfer does not withstand scrutiny. Not surprisingly, Paul Hastings can cite no Montana case or even statutory language to support its contentions.

Montana has recognized a cause of action for conspiracy to defraud creditors for almost 100 years:

> There can be no doubt of the soundness of the proposition
> that a creditor who has been prevented by the wrongful acts
> of a third person acting in connection with or independently

> of the debtor from having satisfaction of his claim may
> have his action for damages against such person, the
> measure of recovery being the value of the property put
> beyond the creditor's reach. This is sustained both by
> reason and authority.

*Raymond v. Blancgrass*, 93 P. 648 (Mont. 1908).[3]    Nothing in the Montana UFTA

abrogates this principle.    Instead, MUFTA explicitly preserves principles existing at

common law and equity.    *See Gulf Ins. Co. v. Clark*, 20 P.3d 780, 787 (Mont. 2001)

(holding with reference to MONT. CODE ANN. § 31-2-342 that MUFTA does <u>not</u> abrogate

other causes of action or remedies existing at law or equity).    *See also* MONT. CODE ANN.

§ 31-2-339(1)(c)(iii)("Remedies of Creditors") (In an action for relief against a transfer or

obligation under this part, a creditor... may obtain... subject to applicable principles of

equity and in accordance with applicable rules of civil procedure... any other relief the

circumstances may require.").

Paul Hastings' suggestion that a "majority" of other jurisdictions bar actions

against persons who knowingly assist violations of the UFTA also does not withstand

scrutiny.    Paul Hastings' sole citation to a state court decision is that of Florida in

*Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1275, n.4 (Fla. 2004)(holding that

no aiding and abetting liability exists under the Florida UFTA but refusing to address

whether relief could be available via a claim for civil conspiracy).    OB at 5-6.    In fact,

other state courts addressing the issue hold just the opposite.    *See Banco Popular N.A. v.*

*Gandi*, 876 A.2d 253 (N.J. 2005) (upholding claim against an attorney for conspiracy to

violate the New Jersey UFTA); *Chu v. Hong*, 185 S.W.3d 507 (Tex. App. 2006)

(upholding claim against attorney for conspiracy to violate the Texas UFTA); *Double*

---

[3] In *Raymond*, the Court concluded that plaintiff could not maintain a cause of action where she had not
first filed a lien. See *Raymond*, 93 P. at 651-654. However, Montana later abolished the prior lien
requirement. *See Farmers Plant Aid, Inc. v. Fedder*, 999 P.2d 315, 319-320 (Mont. 2000).

7

*Oak Constr., LLC v. Cornerstone D'vlpmt. Int'l LLC*, 97 P.3d 140 (Colo. Ct. App. 2004) (upholding claim for conspiracy to violate the Colorado UFTA).

The same is true for state cases decided under the Uniform Fraudulent Conveyance Act and similar fraudulent conveyance laws. *See McElhanon v. Hing*, 728 P.2d 256 (Ariz. App. Div. 1985), *aff'd in part, vacated on other grounds*, 728 P.2d 273, 283 (Ariz. 1986) (upholding claim against attorney for conspiracy to violate Arizona UFCA); *Dalton v. Meister*, 239 N.W.2d 9 (Wis. 1976) (upholding claim against bank for conspiracy to violate Wisconsin UFCA); *Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1089-90 (11th Cir. 2004) (upholding claim for conspiracy to violate Georgia UFCA); *see also Joel v. Weber*, 602 N.Y.S.2d 383 (N.Y. App. Div. 1993) (upholding claim against law firm for aiding and abetting fraudulent conveyance); *Marshall v. Fenstermacher*, 388 F. Supp. 2d 536, 552-54 (E.D. Pa. 2005)(upholding claim against attorney for conspiracy to effect a fraudulent conveyance under Pennsylvania and New Jersey law).[4] *Accord Morganroth & Morganroth v. Norris, McGlaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) ("when a complaint alleges that an attorney has knowingly and intentionally participated in a client's unlawful conduct to hinder, delay and/ or fraudulently obstruct the enforcement of a judgment of a court, the plaintiff has stated a claim under New Jersey law for creditor fraud against the attorney").[5]

_____

[4] Other state courts have also held that violation of the UFTA or UFCA satisfies the pleading requirement for state conspiracy claims. *See Filip v. Bucurenciu*, 28 Cal. Rptr. 3d 884, 892-3 (Cal. Ct. App. 2005) (upholding claim for conspiracy to violate the California UFTA against transferee); *Summers v. Hagen*, 852 P.2d 1165 (Alaska 1993) (upholding claim for conspiracy to violate Alaska's Fraudulent Conveyance Act against transferee). For cases, relying on this line of authority to uphold conspiracy claims against attorneys for violating slightly different fraudulent conveyance statutes, *see, e.g., In re Vereen*, Nos. Civ.A. 96-78369-W, 98-80262-W, 1999 WL 33485639, at *1-2 (Bankr. D.S.C. Ap. 16, 1999)(upholding claim for conspiracy against attorney for participating in fraudulent conveyance) (attached as Ex. 2).

[5] Subsequently, the New Jersey Supreme Court held that such a fact pattern should be plead instead as a claim for conspiracy to violate the New Jersey UFTA. *See Banco Popular*, 876 A.2d at 261-264.

Many of the cases which Paul Hastings relies upon hold that a violation of the UFTA cannot be considered an underlying wrong for purposes of a civil conspiracy claim. *See, e.g., FDIC v. S. Prawer & Co.*, 829 F. Supp. 453 (D. Me. 1993). However, the Montana Supreme Court has rejected this position and held that violation of the MUFTA does constitute an unlawful act. *See Bierling v. Ringling*, 204 P. 829, 835 (Mont. 1925) (relying on now MONT. CODE ANN. § 28-2-701 to hold that an "unlawful act" for purposes of conspiracy constitutes "any act contrary to express provision of law"); *see also Neset v. Fifer*, 942 P.2d 712, 715 (Mont. 1997) (holding that an act in violation of the Montana UFTA constituted an "an illegal purpose" under MONT. CODE ANN. § 72-33-218). As the New Jersey Supreme Court reasoned, "to the extent that the facts undergirding a UFTA claim also establish other recognized causes of action, for example, breach of contract, negligence, or common-law fraud, a creditor may pursue that claim as well." *See Banco Popular*, 876 A.2d at 263 (holding that an attorney's counseling and assistance in violating the UFTA formed the basis of a civil conspiracy claim).

## II.   MAGTEN HAS STANDING TO ASSERT ITS CLAIMS OF AIDING AND ABETTING THE BREACH OF FIDUCIARY DUTIES AND MALPRACTICE

Like its argument regarding MUFTA, Paul Hastings misreads another Montana statute to prohibit Magten, an express third party beneficiary, from alleging the breach of fiduciary duties. Paul Hastings relies upon MONT. CODE ANN. § 35-8-1104(2), the statute establishing the right of LLC members to sue derivatively in the name of the LLC. As with MUFTA, the MLLCA says nothing about the rights of creditors (whether suing

9

derivatively or not) and nothing about the rights of creditors with express third party beneficiary standing to sue.

Paul Hastings raised these same standing arguments on behalf of Northwestern and lost before the Bankruptcy Court. There, it argued, *inter alia*, that 1) Magten had no standing to challenge the fraudulent transfer because it was not a creditor of Clark Fork and that 2) Magten was estopped from challenging the fraudulent transfer because it "purchased the QUIPS well after the transfer of the assets to Northwestern and with full knowledge of the transaction." *See* Motion to Dismiss, 14-16, 25, n.7. On August 20, 2004, the Bankruptcy Court denied Paul Hastings' motion, holding that Magten had standing to challenge the transaction as fraudulent. *See In re Northwestern Corp.*, 313 B.R. 595.

The Clark Fork Officers also raised this identical standing argument before the Montana District Court. Moving for summary judgment, the Clark Fork Officers argued that Magten lacked standing to assert its breach of fiduciary duty claims because it was not a creditor at the time of the fraudulent transfer. *See* the Clark Fork Officers' Brief in Support of Motion for Summary Judgment, *passim* (attached as Ex. F to Miller Decl.). They also argued that Section 610 of the Indenture could not provide Magten with standing to assert the claims of its predecessors-in-interest. *See Id.* at 2, 9-13. The Montana District Court rejected both arguments holding that Magten had standing as an "express third party beneficiary" pursuant to Section 610 of the Indenture. *See* Montana Jan. Order at 6-7.

Attacking the Montana District Court's decision, Paul Hastings chides the Court for failing "even to cite – much less to analyze – MONT. CODE ANN. § 35-8-1104(2)(a),

10

the Montana statute which flatly prohibits the prosecution of this derivative action by

Magten." OB at 15 n.10. However, Paul Hastings points to nothing in the statute or

Montana law for the proposition that an express third party beneficiary lacks standing to

bring breach of fiduciary duty claims.[6] Like the Montana District Court and the

Bankruptcy Court, the Court should reject Paul Hastings' duplicative standing arguments.

---

[6] Paul Hastings cites to two cases from other jurisdictions with little if anything to do with this issue. *See Lewis v. Chiles*, 719 F.2d 1044, 1048 (9th Cir. 1983)(holding under Oregon law that a former shareholder's derivative claim did not survive the dissolution of the corporation where she accepted cash in exchange for her shares); *Starrels v. The First Nat'l Bank of Chicago*, No. 85 C 6458, 1987 WL 5952 (N.D. Ill. Jan. 27, 1987) (interpreting Fed. R. Civ. P. 23.1). Neither of these cases discusses third party beneficiary standing.

11

## CONCLUSION

For the arguments advanced above, the Court should deny Paul Hastings' motion for judgment on the pleadings.

Dated: May 12, 2006                           SMITH, KATZENSTEIN & FURLOW, LLP

_____

David A. Jenkins (ID No. 932)
Kathleen M. Miller (ID No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899
Phone: (302) 652-8400
Fax: (302) 652-8405
*Attorneys for Magten Asset
Management Corporation*

OF COUNSEL:
Bijan Amini, Esq.
Avery Samet, Esq.
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY 10017