# Exhibit 1

Westlaw

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 309438 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
INDEPENDENT ASSOCIATION OF CONTINENTAL PILOTS, Plaintiff,
v.
CONTINENTAL AIRLINES, Defendant.
No. CIV. A. 96-389-SLR.

April 29, 1997.

Perry F. Goldlust, Esquire, of Heiman, Aber & Goldlust, Wilmington, Delaware, attorney for plaintiff. Of counsel: Roland P. Wilder, Jr., Esquire and Christy Concannon, Esquire, of Baptiste & Wilder, P.C., Washington, District of Columbia, and E.E. Sowell, Esquire, General Counsel, Independent Association of Continental Pilots, Houston, Texas.
Josy W. Ingersoll, Esquire, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, attorney for defendant. Of counsel: Jon A. Geier, Esquire, and Margaret H. Spurlin, Esquire, of Paul, Hastings, Janofsky & Walker, L.L.P., Washington, District of Columbia, and Margaret Coullard Phillips, Esquire, of Continental Airlines, Inc., Houston, Texas.SUE L. ROBINSON, District Judge.

## I. INTRODUCTION

*1 Plaintiff, the Independent Association of Continental Pilots ("IACP"), filed the present suit on July 23, 1996, pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201. IACP seeks a declaration that defendant Continental Airlines, Inc. ("Continental") is required to arbitrate certain specific questions put forth by IACP and an injunction directing defendant to do so. (D.I.1) Defendant has filed an answer and counterclaim, seeking an order remanding all issues, including the arbitrability of the specific issues raised by plaintiff, to the arbitrator. (D.I.11)

Presently before the court is defendant's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons that follow, defendant's motion shall be granted.

## II. BACKGROUND

The facts as alleged in the complaint and supported by the one pertinent document attached to defendant's brief are as follows: [FN1]

> FN1. On a motion to dismiss under Fed.R.Civ.P. 12(c), the court "may consider a concededly authentic document upon which the complaint is based when the defendant attaches such a document to its motion to dismiss." Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1996 (3d Cir.1993), cert. denied, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). In its complaint, plaintiff invokes several agreements between the parties, including the Cost Reduction Memorandum ("CRM"), the collective bargaining agreement, and an Interim Agreement for Resolution of Disputes, Discipline, and Dismissal ("Interim Grievance Procedure"). Defendant has attached to its brief in support of its motion for judgment on the pleadings 1) a copy of the Interim Grievance Procedure; 2) the section of the collective bargaining agreement pertaining to grievances which slightly modified and replaced the Interim Grievance Procedure after the grievance in this case was filed; 3) a two-page transcript of the arbitration hearing; and 4) an article from an unspecified source explaining the grievance procedures. (D.I.26, Ex. 1-4) Because plaintiff relied on the Interim Grievance Procedure in its complaint, the court will consider it in deciding this motion. The remaining documents do not appear to form any part of the basis for plaintiff's complaint. The court, therefore, will not consider them in deciding this motion.

Plaintiff is a labor organization that has represented pilot-employees of defendant airline for purposes of collective bargaining, contract administration, and grievances since July 1993. (D.I. 1 at §§ 4, 16) Before the IACP was certified as the pilots' representative, the Pilot Operations Group negotiated agreements on behalf of Continental's pilots. (D.I. 1

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-01256-JJF   Document 92-2   Filed 05/12/2006   Page 3 of 14

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 309438 (D.Del.)  
(Cite as: Not Reported in F.Supp.)

Page 2

at ¶¶ 8, 11) On August 19, 1992, defendant and the Pilot Operations Group signed the CRM, which reduced the pilots' pay by eliminating a fuel bonus program and certain other allowances. (D.I. 1 at ¶ 12) The CRM, however, provided for a gradual recovery of the lost wages according to an agreed-upon formula. (D.I. 1 at ¶ 13) In addition, the CRM contained a "me too" provision guaranteeing that if any other Continental employees received pay raises in the period before the pilots' pay was completely restored, the pilots would receive a comparable raise in wages. (D.I. 1 at ¶ 15)

At the time the CRM was created, issues of pay, rules, and working conditions were governed by the Pilot Employment Policy. On November 17, 1993, soon after the IACP was designated the pilots' bargaining representative, the IACP and Continental entered into the Interim Grievance Procedure. A collective bargaining agreement was concluded on September 1, 1995. (D.I. 1 at ¶ 8) As required by the RLA, Continental and the pilots' representatives have established a board of adjustment to resolve grievances and disputes over the interpretation of "agreements concerning rates of pay, rules and working conditions." (D.I. 1 at ¶ 7)

The grievance that led to the case at bar was filed on September 9, 1994, before the collective bargaining agreement took effect but after the effective date of the Interim Grievance Procedure. (D.I. 1 at ¶ 19) After noticing that his pay rate was below what he thought it should be in light of a recent pay increase for flight attendants, First Officer Jackson R. Martin filed a grievance under the Interim Grievance Procedure. (D.I. 1 at ¶ 19) The complaint quotes the grievance as follows:

*2 The Cost Reduction Memorandum establishes that fuel bonus will be restored, it establishes a protocol for the use of a higher hourly rate in lieu of quarterly fuel bonus payments and it defines Continental's total liability toward restoration of pilot wage reductions to be April 1, 1992 pay rates plus the value of the fuel bonus program. Continental Airlines should honor the agreement it reached with its pilots under the Cost Reduction Memorandum and fully restore pilot wage reductions; to not do so [would] substantially alter the letter and intent of the current Pilot Employment Policy.

(D.I. 1 at ¶ 20) Martin was denied relief at the first two stages prescribed by the Interim Grievance Procedure; he appealed to the board of adjustment on January 4, 1995. (D.I. 1 at ¶ 21) On February 8, 1995, the IACP refiled the appeal on behalf of Martin "and all other similarly situated Continental Airline pilots." (D.I. 1 at ¶ 22) The appeal identified as the basis of the grievance Continental's alleged failure to adhere to paragraph 6(A) of the CRM, pertaining to the restoration of the value of the eliminated bonus programs, and 6(B), which guaranteed wage increases comparable to those granted other employees. Continental maintained that the union could bring the appeal only on behalf of Martin, and that consideration of the paragraph 6(B) claim was barred by Martin's failure to properly raise it at previous stages of the grievance procedure. (D.I. 1 at 23, 24) The IACP refused to submit the case to the arbitrator unless Continental would agree to have a district court decide the issues of whether the union could bring the grievance on behalf of similarly situated pilots and whether the paragraph 6(B) issue had been properly raised. Continental declined, and the IACP filed the present suit. (D.I.25)

III. DISCUSSION

A. Standard for Dismissal Under Rule 12(c)

Rule 12(c) permits a party to move for judgment on the pleadings at any time "after the pleadings are closed but within such time as not to delay the trial." The standard for Rule 12(c) motions is the same as that governing motions to dismiss under Fed.R.Civ.P. 12(b). *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir.1995). In ruling on a Rule 12(b) motion, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (*per curiam*). The court is bound to give the plaintiffs the benefit of every reasonable inference to be drawn from the complaint. *Retail Clerks International Association v. Schermerhorn,* 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). Additionally, the court must resolve any ambiguities concerning the sufficiency of the claims in favor of plaintiffs. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (*per curiam*). The "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

B. Arbitrability Under the RLA

*3 The RLA statutory scheme recognizes two

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1997 WL 309438 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

categories of disputes between employers and employees covered by the Act. Major disputes, as defined by the Supreme Court in *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989), "seek to create contractual rights," whereas "minor disputes [seek] to enforce them." The characterization of a dispute as major or minor depends on whether the disputed action is covered by the collective bargaining agreement. "The distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing agreement." *Id.* at 305.

The RLA requires that minor disputes be resolved by arbitration. Under the provisions of the RLA, the resolution of minor disputes falls under the exclusive jurisdiction of the System Board of Adjustment. 45 U.S.C. § 184. "Federal courts do not have jurisdiction to resolve minor disputes." *International Assn. of Machinists & Aerospace Workers v. Alaska Airlines, Inc.,* 813 F.2d 1038, 1040 (9th Cir.1987); see also *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. at 303-04.[FN2]

> FN2. There are certain extremely limited circumstances under which a court may resolve a minor dispute, namely 1) where the employer repudiates the arbitration process;   2) where arbitration would be futile; 3) where a duty of fair representation claim against the union is joined;  or 4) where the union's failure of fair representation prevents the employee from presenting the grievance. *Miklavic v. USAir, Inc.,* 21 F.3d 551, 555 (3d Cir.1994). None of these conditions have been asserted here.

In 1936, Congress extended the provisions of the RLA to cover air carriers and their employees. 45 U.S.C. § 181 *et seq.* Plaintiff apparently contends that the RLA applies differently to airlines than to railroads because the latter are required to arbitrate their disputes before a statutorily created National Railroad Adjustment Board, whereas the former must create boards of adjustment in conjunction with the employees' representatives. There is no support in the case law for such a differentiation. Airlines, no less than railways, are required to submit all minor disputes to arbitration, and federal courts lack the jurisdiction to decide such matters. *Miklavic v. USAir, Inc.,* 21 F.3d at 553.

The parties do not dispute that the underlying issues in this case constitute minor disputes under the RLA. (D.I. 1 at ¶ 28) Plaintiff, however, contends that the separate issues of 1) whether the union can appeal Martin's grievance on behalf of all similarly situated pilots, and 2) whether the alleged violation of paragraph 6(B) of the CRM was properly raised lie outside the jurisdiction of the board of adjustment. Plaintiff does not contend that these issues are major, as opposed to minor disputes, but rather that they are issues of substantive arbitrability and thus fall within the jurisdiction of this court. This assertion is incorrect.

Under collective bargaining agreements not governed by the RLA, federal courts do have jurisdiction over matters of substantive arbitrability. In those cases, which fall under the National Labor Relations Act ("NLRA") rather than the RLA, arbitrability is strictly a matter of contract. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The principle that the responsibility of deciding whether a dispute is arbitrable belongs to the court "flows inexorably" from the assumption that the duty to arbitrate is a matter of contract. *Id.* at 649. Moreover, under the NLRA, a dispute must be sent to arbitration only where the collective bargaining agreement "clearly and unmistakably" demonstrates that the union has waived its right to strike in such a circumstance. *International Brotherhood of Electrical Workers v. National Labor Relations Bd.,* 826 F.2d 1283 (3d Cir.1987).

*4 In cases falling under the RLA, however, the duty to arbitrate certain issues, *ie.,* all minor disputes, stems not from a contract but from the RLA itself. In *Southeastern Pennsylvania Transp. Auth. v. Brotherhood of Ry. Signalmen,* 882 F.2d 778 (3d Cir.1989), the Third Circuit made a clear distinction between the standard used for determining arbitrability under the NLRA and that used for deciding whether a dispute is minor under the RLA:

> We find ... that borrowing the "clear and unmistakable" standard from NLRA precedent is wholly inappropriate in the instant case. In *Consolidated Rail* the Supreme Court ... stated that the appropriate standard for determining whether a minor dispute exists is whether the "disputed action of one of the parties can arguably be justified by the existing agreement." ... As such, we conclude that SEPTA need only meet its relatively light burden of proving that the collective bargaining agreements can arguably be read to prohibit the unions from engaging in sympathy strike activity in order to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 309438 (D.Del.)  
**(Cite as: Not Reported in F.Supp.)**

Page 4

categorize the instant dispute as a "minor" one within the parlance of the RLA.

*Id.* at 784.

Simply determining that a dispute is minor under the RLA, however, does not guarantee that an arbitrator will address the merits of the dispute. Although the RLA requires that minor disputes be settled in arbitration rather than by strikes or by the federal courts, it does not prohibit the parties to a collective bargaining agreement from setting procedural limits to the systems boards' jurisdiction. *Brotherhood Ry. Carmen Div. v. Atchison, Topeka & Santa Fe Ry. Co.,* 956 F.2d 156, 158 (7th Cir.1992). Whether the parties have complied with the procedural requirements of the collective bargaining agreement such that an arbitrator may address the merits of a dispute is a matter for the arbitrator to decide. *Id.* at 159, citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

The issue of whether the terms of the Interim Grievance Procedure permit the union to bring a dispute on behalf of similarly situated employees requires an interpretation of the agreement itself. Likewise, Continental has identified a specific provision of the Interim Grievance Procedure as the basis of its contention that the paragraph 6(B) issue is procedurally barred.[FN3] Because the resolution of these disputes require the interpretation of an existing collective bargaining agreement, the court concludes that they are minor disputes. They must, therefore, be decided through arbitration.

> FN3. Plaintiff urges the court not to consider defendant's argument that the paragraph 6(B) claim is barred by Martin's failure to raise in at earlier stages of the grievance procedure. Rather, IACP insists that the court accept its characterization of Continental's position as stated in the complaint:
> [T]he Carrier took the position that the Arbitrator was not empowered to hear any issue arising under paragraph 6(B) of the CRM. In its view, the question whether Continental had violated paragraph 6(B) of the CRM by not granting pilots the same wage and salary increases that it had granted to management employees and executives was not arbitrable, and hence the arbitrator lacked jurisdiction to hear these claims.

(D.I. 1 at ¶ 24) While Fed.R.Civ.P. 12(c) requires the court to accept all well-pleaded factual allegations in the complaint and all reasonable inferences arising therefrom, the court is not obligated to accept plaintiff's characterization of defendant's legal position. Moreover, Continental's argument clarifies rather than contradicts IACP's allegation. According to Continental, the arbitrator had no jurisdiction to decide the merits of the paragraph 6(B) claim because of the grievant's procedural default. There is no other reasonable inference more favorable to IACP that can be drawn from plaintiff's allegation.

IV. CONCLUSION

For the reasons stated above, the court concludes that judgment on the pleadings is appropriate. As the court has no jurisdiction to hear this dispute, IACP's claim, as well as Continental's counterclaim, will be dismissed.

D.Del.,1997.  
Independent Ass'n of Continental Pilots v. Continental Airlines  
Not Reported in F.Supp., 1997 WL 309438 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:96CV00389 (Docket) (Jul. 23, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 2

Westlaw.

Not Reported in B.R.
Not Reported in B.R., 1999 WL 33485639 (Bkrtcy.D.S.C.)
(Cite as: Not Reported in B.R.)

Page 1

**H**
Only the Westlaw citation is currently available.
United States Bankruptcy Court, D. South Carolina.
In re: Charles W. VEREEN, Debtor.
Robert F. ANDERSON, Trustee, Plaintiff,
v.
Charles VEREEN, Charles Clark Vereen, Sonya Ann Vereen Clark, Melanie Renee Vereen, Russell Wilson Vereen, Hamilton Julian Vereen, Mark Groves, Garrett Sutton, Nancy Lake, Vereen Joint Revocable Inter Vivos Trust, East Cambridge Limited Partnership and Five Star Management, Defendants.
Nos. Civ.A. 96-78369-W, 98-80262-W.

April 16, 1999.

ORDER

WAITES, Bankruptcy J.
*1 THIS MATTER comes before the Court upon the motions of the Defendant Garrett Sutton ("Mr.Sutton") to dismiss the Complaint in this adversary proceeding and his motion for abstention. Mr. Sutton has also requested a jury trial. Based upon a review of the pleadings and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[FN1]

FN1. The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

FINDINGS OF FACT

In 1995, the Debtor, Charles W. Vereen ("Mr.Vereen") had an interest in a bungee jumping business operated in Myrtle Beach, South Carolina called Beach Bungee, Inc., a South Carolina Corporation owned by the Debtor and others. Michael Nash and Zachary Steinke were killed at Beach Bungee and on October 27, 1995, the Estates of Mr. Nash and Mr. Steinke obtained a Twelve Million Dollar judgment against the Debtor, Beach Bungee, Inc., Carolina Land Holding Company of Little River, Inc., Harold Morris, and Billy Player.

On November 14, 1996, the Debtor filed a voluntary Chapter 7 bankruptcy petition. On November 4, 1998, the Trustee filed the within adversary proceeding asserting his strong arm powers pursuant to 11 U.S.C. § 544 and alleging two causes of action; a fraudulent conveyance cause of action pursuant to the South Carolina Statute of Elizabeth codified at S.C.Code Ann. § 27-23-10 and a civil conspiracy cause of action. The applicable paragraphs of the Complaint state as follows:
20. Subsequently, Defendant Garrett Sutton met with the Debtor in South Carolina and Nevada on numerous occasions and discussed ways to protect the Debtor's assets from his creditors, including the Steinkes. Defendant Garrett Sutton was aware of the pending litigation brought by the Steinkes against the Debtor.

33. The documents necessary to create the Trust, Five Star and East Cambridge were prepared by Defendants Mark Groves and Garrett Sutton.

37. The Defendants knew or should have known of the claims against the Debtor, including the claim of the Steinkes, at the time of the purported conveyances, and each said Defendant formulated, designed, participated in and/or acquiesced in the fraud perpetrated on the creditors of the Debtor, including the Steinkes, by devising, preparing, executing, accepting and/or recording the documents purporting to make such conveyances.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 1999 WL 33485639 (Bkrtcy.D.S.C.)
(Cite as: Not Reported in B.R.)

Page 2

41. The Debtor, Defendant Garrett Sutton, Defendant Mark Groves and Defendant Nancy Lake conspired to transfer the Debtor's assets into the Trust, East Cambridge and/or Five Star for the purpose of defrauding the Debtor's creditors and rendering him judgment proof.

On February 1, 1999, Mr. Sutton filed his Answer to the Complaint demanding a jury trial as well as the within motion to dismiss and motion for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2).

CONCLUSIONS OF LAW

Mr. Sutton initially asks this Court to be dismissed as a party defendant taking the position that the allegations in the Complaint fail to state a cause of action against him, relying on two cases, *Gaar v. North Myrtle Beach Realty Co., Inc.*, 287 S.C. 522, 339 S .E.2d 887 (Ct.App.1986) and *Stiles v. Onorato*, 318 S.C. 297, 457 S.E.2d 601 (1995). In both of these cases, a litigation defendant sued the attorney for the adverse party, alleging the attorney and the adverse party had conspired to bring an improper lawsuit against him. Such is not the case here. The Trustee's Complaint alleges that Mr. Sutton actively participated in perpetrating a fraud on the Debtor's creditors by virtue of advising the Debtor regarding the fraudulent conveyances and preparation of the documents necessary to make the fraudulent conveyances. As stated in *McDermott v. Russell*, 523 F.Supp. 347 (E.D.Pa.1981), *aff'd*, 722 F.2d 732 (3d Cir.1983), this conduct, if proven at trial, would be unlawful, and would entitle plaintiff to relief. *See also McElhanon v. Hing*, 151 Ariz. 386, 728 P.2d 256 (Ariz.Ct.App.1985), *aff'd in part and vacated in part*, 151 Ariz. 403, 728 P.2d 273 (1986)(attorney's privilege for his actions in representing his client did not apply to intentional acts of furthering and participating in a fraudulent conveyance). Furthermore, South Carolina law specifically makes Defendant Sutton's actions in connection with the fraudulent conveyances unlawful.
*2 All parties to such ... fraudulent ... conveyances, or being privy to and knowing of them, or any of them, who shall wittingly or willingly put in use, avow, maintain, justify or defend them, or any of them, as true, simple and done ... shall incur the penalty and forfeiture of one year's value of such lands, tenements and hereditaments so purchased or charged ... to be recovered by action in any court of competent jurisdiction....

South Carolina Code Ann. § 27-23-30.

On a motion to dismiss, all facts must be construed in the light most favorable to the non-moving party and the allegations of the Complaint are taken as true. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir.1993); *Martin Marietta Corp. v. International Telecommunications Satellite Org.*, 991 F.2d 94 (4th Cir.1992). A Rule 12(b)(6) Motion should be granted only in very limited circumstances. *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989). A motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. *Rogers* at 325 (citing *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir.1969)). Applying these standards and in particular in reviewing paragraphs 20, 33, 37 and 41 of the Complaint, the Court must deny Mr. Sutton's motion to dismiss.

Mr. Sutton has also filed a motion for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) which provides as follows:
Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).[FN2] This Court has previously stated the requirements that must be shown for mandatory abstention.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 3
Not Reported in B.R., 1999 WL 33485639 (Bkrtcy.D.S.C.)
**(Cite as: Not Reported in B.R.)**

> FN2. Mr. Sutton has not asked for this Court to exercise discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1).

There are six requirements for mandatory abstention: (1) a timely motion, (2) a state law claim in dispute, (3) the proceeding must be related to a case under title 11, (4) but not arising under that title, (5) the action could not have been commenced in a federal court, (6) an action must have been commenced in a state forum with jurisdiction to hear the matter.
*In re Dunes Hotel Associates,* 94-75715-W, C-95-8223 (Bkrtcy. D .S.C. 7/11/96). In the *Dunes* opinion, the Court found that a core proceeding is not subject to mandatory abstention.
A matter which is a core proceeding is not subject to mandatory abstention. 28 U.S.C. § 1334(c)(2) ... " 'Arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy." *Id.* (quoting *In re Wood,* 825 F.2d 90, 96-97 (5th Cir.1987)).

*3 *In re Dunes Hotel Associates,* 94-75715-W, slip op. at 8. *Also see In re Summerfield Pine Manor,* 219 B.R. 637 (1st Cir. BAP 1998) ("The provision for mandatory abstention under 28 U.S.C. § 1334(c)(2) clearly does not apply to core matters"). While the causes of action asserted by the Trustee are state law causes of action, they are being asserted through the Trustee's strong-arm powers of 11 U.S.C. § 544. This Court has previously held that actions brought pursuant to 11 U.S.C. § 544 are core proceedings. The Trustee has brought actions based upon Sections 544, 547, and 548 of the Bankruptcy Code. All of the causes of action are core proceedings. *See* 28 U.S.C. § 157 (Core Proceedings include: ... (F) proceedings to determine, avoid, or recover preferences; ... (H) proceedings to determine, avoid or recover fraudulent conveyances); *Duck v. Munn (In re Mankin),* 823 F.2d 1296 (9th Cir.1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 148, 99 L.Ed.2d 698 (1988) (Actions under Section 544(b), even though the Trustee avoids a transfer through the use of a state law, are core proceedings.).

*In re United Trading Co., Inc.,* 93-76076-W, C-94-8277 (Bkrtcy.D.S.C.4/13/95). As it appears that the allegations in the Complaint pursuant to 11 U.S.C. § 544 are core proceedings, mandatory abstention is not available.

Additionally, mandatory abstention is not available unless it is shown that an action has been commenced in a state forum with jurisdiction to hear the matter. In this case, such an action in state court has not been shown. *Matter of Walker,* 224 B.R. 239 (Bkrtcy.M.D.Ga.1998) and *In re Baltimore Motor Coach Co.,* 103 B .R. 101 (D.Md.1989). Therefore, for all of these reasons, Mr. Sutton's motion for mandatory abstention must be denied.

Mr. Sutton has also demanded a jury trial in this adversary proceeding but has not stated any grounds that would entitle him to a jury trial. However, while the Trustee opposes the request for a jury trial, counsel for the Trustee similarly has not stated any basis for an objection. Therefore, in the interest of justice, the Court will allow the parties ten (10) days from the entry of this Order to submit memorandums in the form of proposed orders to support their respective positions related to the issue of the jury demand.

AND IT IS SO ORDERED.

Bkrtcy.D.S.C.,1999.
In re Vereen
Not Reported in B.R., 1999 WL 33485639 (Bkrtcy.D.S.C.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 3

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 5952 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Joel STARRELS, Plaintiff,
v.
The FIRST NATIONAL BANK OF CHICAGO et al., Defendants.
No. 85 C 6458.

Jan. 27, 1987.

MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

*1 This memorandum opinion and order concerns the motions to dismiss brought by the defendants in *Starrels v. The First National Bank of Chicago et al.,* No. 85 C 6458 (which has been consolidated with No. 85 C 7252, a case involving the same parties that was filed in state court and removed to the federal district court). It is a shareholder derivative suit, and also alleges a RICO violation. The defendants are The First Chicago Corporation ("First Chicago"), its wholly owned subsidiary The First National Bank of Chicago ("First National"), the individual members of the board of directors for both First Chicago and First National ("the Directors"), and Arthur Anderson & Co. ("Anderson"), an Illinois partnership and an independent accounting firm that served as auditor and independent accountant for both First Chicago and First National.

The plaintiff alleges in count I of his complaint various acts by First Chicago and First National, under the domination and control of the individual defendants, of egregious mismanagement, malfeasance and breach of fiduciary duty owed to both the corporations and their shareholders. He also alleges that in certain matters Anderson's actions involved gross negligence and arbitrary and capricious conduct as a result of which First Chicago, First National and their shareholders have been harmed. He styles this count as a derivative and class action count. His count II alleges RICO violations by each of the defendants.

All of the defendants have moved to dismiss Starrels' complaint, each of them claiming that it fails to comply with various of the requirements of Fed.R.Civ.P. 23.1 and 9(b). In addition, the directors claim that it fails to satisfy the pleading requirements of Fed.R.Civ.P. 8 in that it fails to give any of them fair notice of the grounds upon which the action is premised and fails to particularize as to any of them the acts or omissions for which he seeks to hold them accountable. Anderson in addition claims that the complaint against it must be dismissed for lack of both personal and subject matter jurisdiction. Anderson says that it fails to allege any federal or state claim based upon its conclusory allegations of either breach of fiduciary duty or "fraud on the market." Anderson insists that the complaint fails to allege any well-pleaded facts which, if proved, would establish negligence by Anderson.

During the pendency of this litigation, an additional objection arose and is pressed here. On January 31, 1986, the named plaintiff, Joel Starrels, died. The attorneys for Starrels have now sought to substitute for him in the complaint his daughter, Patricia Bernstein, and to name her plaintiff. For all that appears, the 6,860 shares of First Chicago Stock owned by him at the time of his death had not been specifically bequeathed to Bernstein, to whom 50% of the estate had been left. Instead it had become a part of his estate to be administered by the appointed executor, Harris Trust and Savings Bank. Harris disposed of 1,860 of the shares, distributed 2,500 of the remaining 5,000 shares to Bernstein and placed the balance in a trust for the benefit of Starrels' two grandchildren. Harris also assigned proportionate shares of the interest in this lawsuit to Bernstein and the trust.

*2 All the defendants challenge the substitution of Bernstein as the party plaintiff because under Fed.R.Civ.P. 23.1, a complaint must allege "that the plaintiff was a shareholder or member at the time of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 5952 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Page 2

transaction of which he complains or that his share or membership thereafter devolved on him by operation of law...." They claim that the assignment by Harris to Bernstein of the shares of First Chicago and of the rights and interests in the present lawsuit was not a devolution by operation of law, and that as a result, the suit may not proceed with Bernstein as the party plaintiff.

All of the defendants also argue that the plaintiff had failed to make a necessary pre-litigation demand upon the Directors and that such failure is not excused by any facts pleaded in the complaint. They then claim that the complaint fails to allege any injury to the plaintiff and to the class of shareholders the plaintiff would purport to represent. Finally, with respect to the RICO claim, they claim that the complaint fails to allege sufficient predicate acts and a pattern of racketeering, both necessary to satisfy the requirements of a RICO charge.

The Directors also argue that because First National and First Chicago are Delaware corporations, Starrels must but has failed to comply with Delaware substantive law that requires a shareholder to make a demand on the Directors before bringing suit or demonstrate with detailed allegations that a demand would be futile. Starrels failed to make a demand, and these defendants argue that his "conclusory allegations of futility" are insufficient under Delaware law to excuse a demand. A further violation of Fed.R.Civ.P. 8 is claimed because the complaint "fails to give these defendants fair notice of the grounds upon which his claims rest by failing to particularize as to any defendant the acts or omissions for which plaintiff seeks to hold him accountable." And concerning the class action claims, the Directors argue that these claims arise from alleged breaches of fiduciary duties, claims which belong to the corporation for which the corporation itself only may seek redress. Then, concerning the RICO claims, the Directors also argue that on substantive grounds the allegations are deficient.

Anderson makes additional arguments against Starrels' second amended and consolidated complaint. Anderson claims that Bernstein may not maintain both a class action and a derivative suit without creating a conflict of interest, that the RICO claim failed to survive Starrels' death, and failed to state a claim against Anderson, over whom there is no subject matter jurisdiction.

I have concluded that this is a demand-required case, and because Starrels' second amended and consolidated complaint does not allege that he first made a demand upon the Directors, it must be dismissed. Whether it should be dismissed with or without prejudice brings up the question of whether it can be amended to allege that demand as that term is interpreted in the case law on these cases. The question of the possibility of necessary amendment is important to another matter also. I have also concluded that Patricia Bernstein is not a proper party plaintiff. If her interest in this litigation and her ownership of the shares of stock did not devolve upon her by operation of law, then she is unable under Fed.R.Civ.P. 23.1 to maintain this derivative action in her name.

*3 Rule 23.1 requires in relevant part that "the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law...." Bernstein came into possession of the shares she now holds through an assignment of them by the executor of Starrels' estate. The assignment, which is attached to the second amended and consolidated complaint, states that the executor, Harris,

became the owner, as Executor of 6,860 shares in FIRST CHICAGO CORPORATION; has disposed of 1,860 of said shares, and still retains 5,000 of the shares. It also succeeded to the interest of the decedent in two lawsuits filed on his behalf in [the two cases that have been consolidated ... It] has determined to distribute the shares in FIRST CHICAGO CHICAGO [sic] and its interest in aforesaid cases, to PATRICIA BERNSTEIN and the HARRIS TRUST AND SAVINGS BANK, as trustee.

Therefore, as executor aforesaid, HARRIS TRUST AND SAVINGS BANK assigns and transfers:

(a) To (i) PATRICIA BERNSTEIN, 2,500 Shares; and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 5952 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Page 3

(ii) to HARRIS TRUST AND SAVINGS BANK, as trustee, for ANDREW STARRELS and SALLY STARRELS, 2,500 Shares-in FIRST CHICAGO CORPORATION.

(b) To (i) PATRICIA BERNSTEIN, and (ii) to HARRIS TRUST AND SAVINGS BANK, as Trustee, for ANDREW STARRELS and SALLY STARRELS, in proportion to the shares in FIRST CHICAGO CORPORATION, it is hereby assigning and transferring to them, its entire interest in the aforesaid cases pending in the United States District Court....

Plaintiff argues that *Hirshfield v. Briskin,* 447 F.2d 694 (7th Cir.1971) is sufficiently similar to this case so as to require a holding that the shares came into Bernstein's possession in a manner not proscribed by the Rule. In that shareholder derivative case, the widow of an original shareholder sought to bring a derivative action, and her standing was challenged on the ground that ownership of the shares was disputed and litigated between the executor and the brother of the deceased, who claimed the shares as trustee of a living trust. The dispute was settled by agreement, which provided that if the executor prevailed in the litigation, the widow would be entitled to one-third of 40,000 shares. If the executor had not prevailed, she apparently would have been entitled to none of the shares. By agreement, she reduced her claimed portion to 10,000 shares, and the case was settled. Id. at 698.

The court observed that the "transfer to her was not in all respects solely and perfectly a result of the operation of law, and some element of bargain or consent was present. Yet we think her acquisition sufficiently approximated a devolution by operation of law and did not present the sort of occurrences involving speculation, champerty, or collusion to confer jurisdiction, which Rule 23.1 seeks to preclude." Id.

I do not think that *Hirschfield* controls the present case. The court declined to read Rule 23.1 so literally as to require a devolution completely free of any element of bargain and consent, but it appears that the elements of bargain and consent were minimal and were in that case made between parties holding strongly adverse interests. In fact, the plaintiff's derivative suit was brought against the person with whom she had settled the dispute. The risk of collusion was therefore small. Furthermore, the corporation for which the derivative action was brought was a family-held concern. Under these circumstances the court understandably concluded that the purposes of Rule 23.1, to prevent speculation, champerty or collusion would not be met by a literal reading of the Rule.

*4 The instant case is distinguishable because it involves a substantially greater degree of bargain and consent in the assignment of the shares to Bernstein. Moreover, it involves a much larger corporation whose stock is traded nationally. In this context, it cannot be said confidently that the continuation of this lawsuit in the name of Bernstein would be free from the evils sought to be avoided by the Rule. Our case here does not fit within *Hirshfield,* and instead is much more like *Stephenson v. Landegger,* 464 F.2d 133 (2d Cir.), cert. denied, 409 U.S. 1039 (1972). In that case the shareholder who had initiated the suit previously had placed the shares into a revocable trust. The court determined that he himself had standing to initiate the suit on the basis of his equitable interest in the shares, but that after his death, that interest was terminated when the remainder interests of the trust became operative under the provisions of the trust which had become irrevocable upon his death. The court observed that the remainder interests vested by contract, i.e., under the provisions of the trust, and not by operation of law. 464 F.2d at 135. Thus, the executors and the trustees of the estate were denied leave to be substituted as parties plaintiff. Id.

Similarly, Bernstein's interest in the shares here arose out of the assignment of the shares to her by Harris. Although Starrel's interest in the suit did not terminate upon his death and devolved upon the executor of his estate, Harris, the executor's transfer of that interest to Bernstein was not by operation of law. The transfer was by a contractual assignment. Accordingly, Bernstein may not maintain this derivative action in her name. Furthermore, if Bernstein is to be denied the status to bring the suit in a derivative capacity, the class allegations in count I of the second amended and consolidated complaint do not state a claim upon which relief may be granted. The fraud and RICO claims

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 5952 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Page 4

belong to the corporation, and Bernstein cannot allege that she has standing to bring them in an individual capacity. That count accordingly must be dismissed.

Count II also must be dismissed because the RICO claim does not survive Starrels' death. See *Tellis v. United States Fidelity & Guaranty Company*, No. 85-2704 slip op. at 9 (7th Cir. Nov. 6, 1986) (civil RICO is penal in nature); *Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 414 (7th Cir.1980) (general rule is that actions for penalties do not survive the death of the plaintiff). Because of the resolution of these issues, it is unnecessary to address the other arguments raised in the motions to dismiss Starrel's complaint.

In view of the foregoing, it is ORDERED that:

The complaint in *Starrels v. The First National Bank of Chicago,* No. 85 C 6458 is dismissed. However, it cannot be determined at this time whether this dismissal should be with or without prejudice. If in a still further amendment it can be alleged that adequate demand was made, and the allegations of demand are in sufficient detail to indicate that the demand was more than pro-forma but rather satisfied the observations of *Renfro v. Federal Deposit Insurance Corp.*, 773 F.2d 657, 659 (5th Cir.1985), dismissal with prejudice for this reason could be avoided.

*5 Further, if in another amended complaint allegations are made which would indicate that the assignment of the shares of stock to Bernstein by the executor of the will was not dehors the provisions of the will itself and thus was a transfer by operation of the laws of Illinois with regard to decedent's estates, then the amended complaint would survive the defendants' objections to her being named the party plaintiff. I conclude that a dismissal with prejudice must be delayed for a period of time sufficient to permit the plaintiff to explore these contingencies. I consider 30 days sufficient time for these purposes. Wherefore, the Court's entry of orders pursuant to its rulings herein are postponed until February 15, 1987.

N.D.Ill.,1987.
Starrels v. First Nat. Bank of Chicago
Not Reported in F.Supp., 1987 WL 5952 (N.D.Ill.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.