# Exhibit D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No. 03-12872 (CGC) |
| | : |
| Debtor. | : |
| | : |
| | : |
| | : |
| MAGTEN ASSET MANAGEMENT | : |
| CORPORATION and LAW DEBENTURE TRUST | : |
| COMPANY OF NEW YORK, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Adv. No. 04-53324-CGC |
| | : |
| NORTHWESTERN CORPORATION, | : |
| | : |
| Defendant. | : |
| | : |

**NORTHWESTERN CORPORATION'S MOTION, AND SUPPORTING BRIEF,
TO DISMISS THE COMPLAINT OF MAGTEN ASSET MANAGEMENT
CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED**

NorthWestern Corporation, a Delaware corporation ("NorthWestern" or the

"Debtor"), by and through its undersigned counsel, and pursuant to Federal Rule of

Bankruptcy Procedure 7012(b), which makes Federal Rule of Civil Procedure 12(b)(6)

applicable to bankruptcy cases, files this Motion (the "Motion"), and Supporting Brief, to

Dismiss the Complaint of Magten Asset Management Corporation ("Magten") and Law

Debenture Trust Company of New York ("Law Debenture" and collectively "Plaintiffs")

on the grounds set forth below:

## INTRODUCTION

Plaintiffs' Complaint fails to state a claim upon which relief can be

granted. First, Plaintiffs lack standing to bring this Complaint because Plaintiffs, by

operation of the Indenture Agreement which govern their claims, are creditors of

NorthWestern and not creditors of Clark Fork.[1] As creditors of NorthWestern, Plaintiffs

cannot use avoidance powers to avoid the allegedly fraudulent transfers of assets from

Clark Fork to NorthWestern. Second, the intention to transfer assets from Clark Fork to

NorthWestern was disclosed in both public documents and in amendments to the

Indenture that were executed by the Trustee and cannot be set aside under applicable law.

Third, the Indenture expressly permits the transfer of assets that occurred, and does not

grant Plaintiffs the right to object to transfers of property or assets covered by the

Indenture. Plaintiffs should not be allowed to request that this Court grant Plaintiffs

rights they do not have under the Indenture. Finally, the Indenture Trustee never objected

to any of the transfers and, consequently, waived any potential right to object by this

failure to assert a position contrary to the documents.

## BACKGROUND

1.      On September 14, 2003, NorthWestern filed its voluntary petition for

relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

---

[1] Capitalized terms used in this Introduction shall be as defined herein.

Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, NorthWestern continues to operate its business and manage its properties as debtor-in-possession.

  2. No request has been made for the appointment of a trustee or examiner in this case. The Official Committee of Unsecured Creditors was appointed by the Office of the United States Trustee on September 30, 2003.[2]

  3. NorthWestern is a publicly traded Delaware corporation which was incorporated in 1923. NorthWestern and its direct and indirect non-NorthWestern subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.

  4. Magten is a holder of certain Series A 8.45% Quarterly Income Preferred Securities (the "QUIPS") issued by Montana Power Capital I (the "Trust"). The Trust is a business trust established pursuant to the Delaware Business Trust Act. The sole assets of the Trust are the 8.45% Junior Subordinated Debentures due 2036 (the "Junior Debentures").

  5. Law Debenture is a limited purpose trust company organized under the laws of New York and is the successor Trustee to the Bank of New York ("BNY"), the original Trustee of the Trust.

**The Indenture**

---

[2] Magten and Law Debenture were members of the Official Committee of Unsecured Creditors (the "Committee"). Recent action by the U.S. Trustee has resulted in Magten and Law Debenture being removed from the Committee.

ATL/1029981.12

6.    In or around November 1996, The Montana Power Company ("Montana Power") created the Trust to hold the Junior Debentures that were issued by Montana Power.

7.    After formation of the Trust, Montana Power and BNY, as Trustee, entered into the Indenture For Unsecured Subordinate Debt Securities dated as of November 1, 1996 relating to Trust Securities (the "Indenture").  A true and correct copy of the Indenture is attached hereto as Exhibit A.

8.    In or around November 1996, the Trust issued $65,000,000 of 8.45% Cumulative Quarterly Income Preferred Securities ("QUIPS"), Series A.  The proceeds from the sale of the QUIPS were used to purchase an equal amount of Junior Debentures, 8.45% Series due 2036, from Montana Power.

9.    Pursuant to the Indenture Section 1101, Montana Power was authorized to "convey or otherwise transfer, or lease, its properties and assets substantially as an entirety to any Person," if:

> a) the corporation formed by such consolidation or into which the Company is merged …shall be a Person organized and validly existing under the laws of the United States, any State thereof, …and shall assume, either by the operation of applicable law or by an indenture supplemental hereto, executed and delivered to the Trustee, in form satisfactory to the Trustee, the due and punctual payment of the principal of and premium, if any, and interest, if any, on all Outstanding Securities and the performance of every covenant of the Indenture on the part of the Company to be performed or observed;
>
> b) immediately after giving effect to such transaction no Event of Default with respect to Securities of any series, and no event which, after notice or lapse of time or both, would become an Event of Default with respect to Securities of any series, shall have occurred and be continuing; and

ATL/1029981.12

c) the Company shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, merger, conveyance, or other transfer or lease and such supplemental indenture comply with this Article and that all conditions precedent herein provided for relating to such transactions have been complied with.

10.    If Montana Power, in conveying or otherwise transferring substantially all of its assets to another entity, complied with Section 1101 of the Indenture, Section 1102 of the Indenture would control the effect of the transfer on the both Montana Power, as the predecessor entity, and the purchasing, or successor, entity.

11.    Section 1102 of the Indenture provides that:

[T]he Successor Corporation shall succeed to, and be substituted for, and may exercise every right and power of, the Company [Montana Power] under this Indenture with the same effects as if such Successor Corporation had been named as the Company herein, and <u>thereafter the predecessor Person shall be relieved of all obligations and covenants under this indenture and the Securities Outstanding hereunder</u>.

12.    Magten's rights, as a holder of certain QUIPS, are governed by the Indenture.  On information and belief, Magten acquired its interests in the QUIPS immediately prior to or after NorthWestern filed its Chapter 11 petition.

13.    Law Debenture's duties as Successor Trustee are governed by Section 901 of the Indenture which gives the Trustee "all the duties and responsibilities specified with respect to an indenture trustee in the Trust Indenture Act."

14.    Montana Power also entered into the Amended and Restated Trust Agreement by and among the Montana Power Company, as depositor and, *inter alia*, The Bank of New York, as Property Trustee, and The Bank of New York (Delaware) as

-5-

Delaware Trustee (the "Trust Agreement"), a true and correct copy of which is attached hereto as Exhibit B.

15.     Montana Power also entered into the Guarantee Agreement with the Bank of New York (the "Guarantee Agreement") dated as of November 1, 1996, under which, Montana Power, as guarantor, agreed to a limited guarantee of obligations with respect to the QUIPS. A true and correct copy of the Guarantee Agreement is attached hereto as Exhibit C. The Guarantee Agreement was limited by its terms to guarantee distributions to the QUIPS "…only if and to the extent that the Property Trustee has available in the Payment Account funds sufficient to make payment…." *See* Guarantee Agreement, Sec. 1.01 Definitions, "Guarantee Payments."

**The Acquisition of Montana Power by NorthWestern**

16.     On or about September 29, 2000, NorthWestern entered into a Unit Purchase Agreement with Montana Power, by which NorthWestern was to purchase substantially all of Montana Power's electric, natural gas, and propane utility assets (the "Montana Assets").

17.     To facilitate the transfer of the Montana Assets to NorthWestern, Montana Power created a subsidiary, The Montana Power L.L.C. ("MP-LLC").

18.     As part of the transaction under the Unit Purchase Agreement, NorthWestern disclosed it intentions to make Montana Power a division of NorthWestern, not just a wholly owned subsidiary. This transaction has been referred to by NorthWestern as "going flat."

-6-

19.     On or about December 20, 2000, NorthWestern disclosed its intention to "go flat" with the Montana Assets in a joint application by NorthWestern and Montana Power filed with the Federal Energy Regulatory Commission ("FERC"), a true and correct copy of which is attached hereto as Exhibit D.  The application stated that the proposed transaction was not contingent on any particular structure and that NorthWestern would either:  (a) form a holding company so that it would acquire MP-LLC as a wholly-owned subsidiary; or (b) acquire MP-LLC in its current "flat" structure, whereby MP-LLC would become a separate division of NOR rather than a subsidiary. Attached to the FERC application as Exhibit C were charts demonstrating NorthWestern's post-transaction organizational structure for both potential options.

20.     On or about January 12, 2001, NorthWestern again disclosed its intention to "go flat" with the Montana Assets in a joint application filed with the Montana Public Service Commission ("MPSC").  A true and correct copy of the MPSC application is attached hereto as Exhibit E.  Notice of this application was published in the Federal Register.

21.     On or about February 20, 2001, FERC issued a statement granting approval of the purchase of the Montana Assets by NorthWestern, a true and correct copy of which is attached hereto as Exhibit F.

22.     On or about June 27, 2001, the MPSC issued an Order Denying Application as Filed and Providing Direction and an Opportunity to Refile, determining that it needed additional information and analysis from NorthWestern and Montana

Power regarding the transfer of the Montana Assets. A true and correct copy of the

MPSC order is attached hereto as Exhibit G.

23.     On or about December 28, 2001, NorthWestern and Montana Power filed

a stipulation (the "Stipulation"), along with other interested parties, resolving issues

between the parties, including issues related to the transfer of the Montana Assets. A true

and correct copy of this Stipulation is attached hereto as Exhibit H. The Stipulation

concluded that the MPSC should approve NorthWestern's acquisition of MP-LLC as a

subsidiary or division of NorthWestern.

24.     On or about January 31, 2002, MPSC approved the Stipulation filed by

NorthWestern and Montana Power, authorizing the transfer of the Montana Assets. A

true and correct copy of the approved Stipulation is attached hereto as Exhibit I.

25.     On or about February 13, 2002, Montana Power transferred the Montana

Assets to MP-LLC.

26.     As part of the conveyance of the Montana Assets to MP-LLC, on or about

February 13, 2002, MP-LLC and BNY, as Trustee, executed the First Supplemental

Indenture, a true and correct copy of which is attached hereto as Exhibit J.

27.     Pursuant to the First Supplemental Indenture, MP-LLC assumed all of the

obligations of Montana Power under the Indenture.

28.     BNY, the Indenture Trustee at the time, did not object to the transfer of

the Montana Assets from Montana Power to MP-LLC.

29.     On or about February 15, 2002, NorthWestern's acquisition of MP-LLC

was completed with the payment by NorthWestern of $478 million in cash to the parent

ATL/1029981.12

of MP-LLC and the assumption of $511 million of MP-LLC liabilities, which liabilities included claims under the QUIPS and the Indenture. As a result of the acquisition, MP-LLC became a wholly-owned subsidiary of NorthWestern.

30.     On March 19, 2002, MP-LLC was renamed NorthWestern Energy, L.L.C. ("NorthWestern Energy").

31.     On or about April 1, 2002, NorthWestern, in its 10-K filing with the SEC for the period ended December 31, 2001, expressly and publicly disclosed its intention to "go flat" with the Montana Assets. NorthWestern announced that "we intend to transfer the energy and natural gas transmission and distribution operations of NorthWestern Energy LLC to NorthWestern Corporation during 2002." NorthWestern made similar announcements in subsequent SEC filings. True and correct copies of these filings are attached hereto as Exhibit K.

32.     On or about August 13, 2002, NorthWestern Energy, NorthWestern and BNY, as Indenture Trustee executed the Second Supplemental Indenture. A true and correct copy of the Second Supplemental Indenture is attached hereto as Exhibit L.

33.     Pursuant to the Second Supplemental Indenture, NorthWestern fully and unconditionally assumed NorthWestern Energy's obligations (as successor to MP-LLC, as the successor to Montana Power) with respect to the QUIPS and the performance of every covenant, obligation and agreement under the Indenture.

34.     The Second Supplemental Indenture expressly subordinated the obligations NorthWestern assumed to the "Senior Indebtedness" of NorthWestern.

-9-

35.    The Second Supplemental Indenture expressly stated that it was entered

into:

> without prejudice to any rights of each of the Company
> [NorthWestern Energy] and NOR [NorthWestern] under the QUIPS
> Debenture, the Indenture and this Second Supplemental Indenture,
> including, without limitation, the right of each of the Company and NOR
> to consolidate with or merge into any other corporation, or convey or
> otherwise transfer, or lease, its properties and assets substantially as an
> entirety to any Person, and to be relieved from its obligations under the
> QUIPS Debenture, the Indenture and hereunder as provided in Article
> Eleven of the Indenture.

36.    The Second Supplemental Indenture, in further confirmation that it did not

impair NorthWestern Energy's ability to transfer the Montana Assets to NorthWestern,

stated:

> the Company [NorthWestern Energy] may consolidate with or
> merge into NOR [NorthWestern] or convey or otherwise transfer, or lease,
> its properties and assets substantially as an entirety to NOR, and be
> relieved of its obligations under the QUIPS Debentures, the Indenture and
> hereunder as provided in Article Eleven of the Indenture notwithstanding
> the fact that NOR has assumed the Company's obligations under the
> QUIPS Debenture and the Indenture pursuant to this Second Supplemental
> Indenture, and such assumption hereunder is expressly subject to such
> right.

37.    BNY, as Indenture Trustee, did not object to the Second Supplemental

Indenture, or express reservations as to the right of NorthWestern and NorthWestern

Energy to transfer substantially all of its assets with a result being that NorthWestern

Energy would be relieved of any obligations under the QUIPS Debenture, the Indenture

and the Second Supplemental Indenture.

38.    NorthWestern, NorthWestern Energy and BNY, as Trustee, also executed

the Amendment to Guaranty Agreement dated as of August 13, 2002 whereby

-10-

ATL/1029981.12

NorthWestern fully and unconditionally assumed the limited obligations of Montana

Power under the Guaranty Agreement.  A true and correct copy of the Amendment to

Guaranty Agreement is attached hereto as Exhibit M.

      39.    The Amendment to the Guaranty expressly stated that it was entered into:

> without prejudice to any rights of the Guarantor [NorthWestern
> Energy] and NOR [NorthWestern] under the Guarantee Agreement and
> this Amendment, including, without limitation, the right of Guarantor and
> NOR to assign their obligations under the Guarantee Agreement and
> hereunder in connection with a consolidation, merger or sale involving the
> Guarantor or NOR that is permitted under Article Eleven of the
> Subordinated Indenture, as the same may be amended.

      40.    The Amendment to the Guaranty, in further confirmation that it did not

impair NorthWestern Energy's ability to transfer the Montana Assets to NorthWestern,

stated:

> such right to assign shall apply to any assignment of the
> Guarantor's [NorthWestern Energy] obligations under the Guarantee
> Agreement and hereunder in connection with a consolidation or merger of
> the Guarantor with or into NOR [NorthWestern] or any conveyance or
> transfer of the Guarantor's properties and assets substantially as an
> entirety to NOR in compliance with Article Eleven of the Subordinated
> Indenture notwithstanding the fact that NOR has assumed the Guarantor's
> obligations under the Guarantee Agreement pursuant to this Amendment
> and such assumption hereunder expressly subject to such right.

      41.    BNY, as Trustee, did not object to the Second Supplemental Indenture, or

expressly reserve rights to NorthWestern and NorthWestern Energy to consolidate, with a

result being that NorthWestern Energy would be relieved of any obligations under the

QUIPS Debenture, the Indenture and the Second Supplemental Indenture.

      42.    On or about October 25, 2002, NorthWestern filed an application with

FERC seeking permission to assume the QUIPS, along with other debt of NorthWestern

ATL/1029981.12

Energy.  A true and correct copy of this FERC Application is attached hereto as Exhibit N.

43.    On or about November 15, 2002, FERC approved NorthWestern's assumption of the QUIPS, along with other debt of NorthWestern Energy.  A true and correct copy of this Approval is attached hereto as Exhibit O.

44.    On or about November 15, 2002, NorthWestern Energy and NorthWestern entered into an Asset and Stock Transfer Agreement dated as of November 15, 2002 pursuant to which the property and assets of NorthWestern Energy substantially as an entirety were transferred to NorthWestern, and NorthWestern assumed substantially all of the liabilities of NorthWestern Energy.

45.    On or about November 15, 2002, as part of the transfer of assets, NorthWestern and BNY, as Trustee, entered into the Third Supplemental Indenture.  A true and correct copy of the Third Supplemental Indenture is attached hereto as Exhibit P. BNY, as Trustee, did not object to the transfer of the Montana Assets from NorthWestern Energy to NorthWestern.

46.    Pursuant to the Third Supplemental Indenture, NorthWestern expressly assumed, "pursuant to Sections 1101(a) and 1201 of the Indenture," the "covenants of NorthWestern Energy contained in the Indenture and the Securities issued thereunder."

47.    Pursuant to the Third Supplemental Indenture, NorthWestern expressly assumed "the due and punctual payment of the principal of and premium, if any and interest, if any, on all Outstanding Securities issued under the Indenture and the

performance of every covenant of the Indenture on the part of NorthWestern Energy to be performed or observed."

48.    The Third Supplemental Indenture also stated that the First Supplemental Indenture was performed in accordance with the requirement of the Indenture and that NorthWestern Energy assumed the "covenants of MPC [Montana Power] contained in the Indenture and the Securities issued thereunder."

49.    Subsequent to NorthWestern Energy's completing the transfer of its assets to and the assumption of the liabilities by NorthWestern, NorthWestern Energy was renamed Clark Fork and Blackfoot LLC ("Clark Fork").

50.    Each of the respective consolidations, conveyances and transfer of assets – from Montana Power to MPC-LLC to NorthWestern Energy to NorthWestern – were consolidations, conveyances and transfers of assets and property in accordance with Section 1101 of the Indenture.

51.    Because each of the respective consolidations, conveyances and transfers of assets were consolidations, conveyances and transfers of assets and property in accordance with Section 1101 of the Indenture, Section 1102 of the Indenture operated to relieve the predecessor entities of "all obligations and covenants under this Indenture and the Securities Outstanding hereunder."

52.    Accordingly, having completed the various consolidations, conveyances and transfers in accordance with the Indenture – which did not require the consent either of the Indenture Trustee or the holders of the QUIPS – Montana Power, MPC-LLC and Clark Fork (f/k/a NorthWestern Energy) were by the express terms of the Indenture

-13-

relieved of obligations and covenants under the Indenture and amounts owing to the

QUIPS, and only NorthWestern remains an obligor thereon.

## ARGUMENT AND CITATION OF AUTHORITIES

I.    MOTION TO DISMISS STANDARD

In determining whether a complaint should be dismissed for failure to state a

claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6),

which is made applicable to an adversary proceeding in a bankruptcy matter by Federal

Rule of Bankruptcy Procedure 7012(b), the allegations of the complaint are accepted as

true for purposes of testing the sufficiency of the complaint. *Hishon v. King & Spalding*,

467 U.S. 69, 73 (1984). Consistent with this requirement, a complaint should be

dismissed for failure to state a claim if it appears that the plaintiff would not be entitled to

relief under any set of facts which could be proved in support of his claim. *Conley v.*

*Gibson*, 355 U.S. 41, 45-46 (1957). Plaintiffs' complaint fails to state a claim upon

which relief can be granted because it fails to allege facts sufficient to provide Plaintiffs

standing to bring the complaint, it fails to allege the facts necessary to show that a

publicly disclosed transaction is done with fraudulent intent or is fraudulent when no

harm is done by the transfer, it fails to allege facts that show why a transfer that is

expressly permitted by the Indenture should be rescinded, and by not objecting to the

transfer of the Montana Assets at any point prior hereto Plaintiffs have waived the right

to object at this late date.


II.    PLAINTIFFS ARE CREDITORS ONLY OF NORTHWESTERN AND DO
       NOT HAVE STANDING TO BRING THIS ACTION

-14-

A central tenet to support a fraudulent conveyance claim by Plaintiffs on behalf of Clark Fork against NorthWestern is that Plaintiffs must establish they are creditors of Clark Fork. *In re Xonics Photochemicals, Inc.*, 841 F.2d 198, 202 (7th Cir. 1988) ("It is not as if Mitsui [plaintiff in adversary proceeding seeking to set aside fraudulent transfer of debtor] itself has been harmed by the allegedly fraudulent conveyances; they preceded the payments in issue. Mitsui is seeking to stand in the shoes of creditors who may have been harmed, but only a trustee or debtor in possession can do that."); *accord, In re Kathleen Fry*, 1997 Bankr. LEXIS 1709, at *5 (Bankr. N.D. Ill. Oct. 28, 1997); *see also Moldo v. World Net Dev. Group., Inc.*, 2000 U.S. Dist. LEXIS 19092, at *23 (C.D. Cal. 2000) ("The UFTA provides that "creditors" . . . may sue to set aside fraudulent transfers.").

Pursuant to the terms of the Indenture, if consolidations, conveyances and transfer of assets are completed in accordance with Section 1101 of the Indenture, then the successor entity succeeds to and is substituted for the prior entity, and it is solely the successor which is obligated for payment of amounts owing under the QUIPS and to perform the covenants and other obligations under the Indenture. *See* Indenture, Sec. 1102. Section 1102 specifically provides that the predecessor entity (here Clark Fork) has been relieved of all obligations and covenants under the Indenture and the QUIPS. As a result, Plaintiffs do not have standing to pursue a fraudulent conveyance claim as to NorthWestern. *See, e.g., In re Allard*, 198 B.R. 715, 718 (Bankr. N.D. Ill. 1996) ("[I]ndividual creditors are not empowered to use the trustee's avoidance powers either for their own benefit or for the benefit of the estate, not even to attack transfers the

-15-

creditors could have avoided under state law because of harm to them personally."); *In re Feldhahn*, 92 B.R. 834, 836 (Bankr. S.D. Iowa 1988).

Plaintiffs do not assert that any of the predecessor transfers in any way violated Section 1101 of the Indenture. Indeed, in all instances, the transfer of the Montana Assets and the assumption of liabilities from Montana Power to MPC-LLC to NorthWestern Energy to NorthWestern were all conducted in accordance with the specific terms and conditions of the Indenture. At this point, NorthWestern has assumed the obligations of, and has become the successor-in-interest to, Clark Fork with respect to the claims under the Indenture and the QUIPS, and Clark Fork, as the predecessor entity, has been relieved of any and all liability under the express terms of the Indenture. Accordingly, Plaintiffs are creditors of NorthWestern, not Clark Fork, and do not have standing to initiate the proposed adversary proceeding.

III.    THE ULTIMATE TRANSFER OF THE MONTANA ASSETS TO
        NORTHWESTERN WAS DISCLOSED, IN BOTH REGULATORY FILINGS
        AND IN AMENDMENTS TO THE INDENTURE, WELL IN ADVANCE OF
        THE TRANSFER AND CANNOT BE SET ASIDE UNDER MONTANA LAW

Even if Plaintiffs have standing to file their Complaint, the transfer of assets to NorthWestern from Clark Fork was publicly disclosed, in both regulatory filings and in documents executed by the Trustee, and cannot be fraudulent under Section 31-2-333 of Montana Statutes. *See Pare v. Morrison*, 241 Mont. 218, 786 P.2d 655 (1990) (upholding a lower court ruling that the buyers of property that was encumbered with restrictive covenants were not fraudulently induced into purchasing property because the buyers knew of the restrictive covenants before the purchase). Plaintiffs allege that the

-16-

transfer was made with actual intent to hinder, delay, or defraud Plaintiffs and point to several factors that should be considered in determining fraudulent intent. *See* Complaint, ¶ 54-61. These factors, or "badges of fraud," are not per se proof of fraud, but are merely grounds to support an inference of fraud and should be disregarded when the facts show that a transfer was publicly disclosed. *See* MT Stat. §31-2-333; *See* *O'Connor v. Lewis*, 238 Mont. 270, 277, 776 P.2d 1228, 1233 (1989).

Even though certain factors, or "badges of fraud," may be present, NorthWestern lacked actual fraudulent intent, demonstrated by the numerous disclosures of "going flat," both to the public and in documents executed by the Trustee. The potential of NorthWestern "going flat" with the Montana Assets was first disclosed in NorthWestern's and Montana Power's joint application for FERC approval of the purchase of the Montana Assets filed December 20, 2000. The joint application openly discloses that NorthWestern intended, contingent on certain facts, to make Montana Power a division of NorthWestern and included organizational charts showing Montana Power as a division in the "flat" structure of NorthWestern.[3] Also, on January 12, 2001, in a joint application to the MPSC and on December 28, 2001 in a Stipulation filed with the MPSC, NorthWestern and Montana Power disclosed the possibility that the Montana Assets would be made a division of NorthWestern.[4] NorthWestern also stated in its SEC 10-K report for the period ended December 31, 2001, filed on April 1, 2002, that "we

---

[3] The joint application was subsequently approved by FERC on February 20, 2001.

[4] The Stipulation was subsequently approved by the MPSC on January 31, 2002.

-17-

intend to transfer the energy and natural gas transmission and distribution operations of

NorthWestern Energy LLC to NorthWestern Corporation during 2002." Finally,

NorthWestern disclosed its intention to "go flat" with the Montana Assets in its

October 25, 2002 application to the FERC seeking authorization to assume the liabilities

of Clark Fork.[5]  All of these public disclosures were made in advance of the November

15, 2002 transfer of assets from Clark Fork to NorthWestern.

Further, NorthWestern's intention to "go flat" with the Montana Assets was

expressed in two documents executed by the Trustee – the Second Supplemental

Indenture and the Amendment to Guarantee Agreement. Both of these documents were

executed on August 13, 2002 and both state that Clark Fork and NorthWestern retained

the right to transfer substantially all of their assets to another entity. Further, these

documents clarify that Clark Fork was not hindered in its ability to transfer substantially

all of its assets to NorthWestern, with the result that Clark Fork would be relieved of all

obligations under the Indenture and to QUIPS holders. These disclosures, made directly

to and ratified by the Trustee, combined with the numerous public disclosures of "going

flat" show that NorthWestern lacked actual fraudulent intent, and as such Plaintiffs'

Complaint fails to allege facts sufficient to support a fraudulent transfer claim under

Montana Statute § 31-2-333.

Plaintiffs' Complaint also fails to state a claim for fraudulent transfer under

Montana Statute § 31-2-334(1). This section requires that the transfer was not for

_____

[5] This application was subsequently approved by FERC on November 15, 2002.

-18-

equivalent value and that at the time of the transfer the debtor was insolvent or that the debtor became insolvent as a result of the transfer. *See* MT Stat. § 31-2-334(1). Plaintiffs' Complaint fails to allege a claim under this section for two reasons; first, NorthWestern expressly assumed all obligations to Plaintiffs; and second, since NorthWestern assumed all of these obligations that debt was no longer the debt of Clark Fork.

At the time of the transfer of the Montana Assets from Clark Fork to NorthWestern, NorthWestern and the Trustee executed the Third Supplemental Indenture. Under the Third Supplemental Indenture, NorthWestern expressly assumed the responsibility of payment under the Indenture and "the performance of every covenant of the Indenture on the part of NorthWestern Energy to be performed or observed." These obligations would have included any obligation remaining with Clark Fork under the Amendment to Guarantee Agreement. Under these facts, Plaintiffs suffered no harm by the transfer of assets and all of Plaintiffs' debt was now the exclusive obligation on NorthWestern. When a transaction does not harm an alleged creditor, it should not be considered a fraudulent conveyance. *See Melamed v. Lake County Nat'l Bank*, 727 F.2d 1399, 1402 (6th Cir. 1984) (dismissing fraudulent transfer claim because the allegedly fraudulent transfer "did not diminish the assets of the debtor which were available to its creditor"); *In re Trace Int'l Holdings, Inc.*, 287 B.R. 98, 111 (Bankr. S.D.N.Y. 2002) ("creditors must actually be harmed in order to avoid a fraudulent transfer"); *Bear, Stearns Securities Corp. v. Gredd*, 275 B.R. 190 (S.D.N.Y. 2002) (if allegedly fraudulent transfer does not leave creditor in worse position than it

-19-

would have been in had the transfer never occurred, the transfer does not offend

bankruptcy policies).

As part of the transfer of the Montana Assets to NorthWestern from Clark Fork,

NorthWestern expressly assumed the debt under the QUIPS.  Plaintiffs allege that this

asset transfer rendered Clark Fork either insolvent or undercapitalized.  *See* Complaint, ¶

62-71.  Pursuant to the Third Supplemental Indenture, however, NorthWestern expressly

assumed the debt under the QUIPS, and obsolving Clark Fork of any ongoing obligation

to pay the QUIPS.  For that reason, the debt under the QUIPS cannot be considered in

determining if Clark Fork was insolvent or undercapitalized after the transaction.  When

the debt under the QUIPS, and the other debt expressly assumed by NorthWestern as part

of the transfer[6] are removed from the equation, Clark Fork is not insolvent or

undercapitalized.  Consequently, because Clark Fork was not rendered insolvent or

undercapitalized as a result of the transfer of the Montana Assets to NorthWestern,

Plaintiffs' complaint fails to allege facts sufficient to state a claim under Montana Statute

§ 31-2-334.

Furthermore, because the Plaintiffs' Complaint fails to allege any facts that allege

a claim for fraudulent transfer, the Plaintiffs' claim for unjust enrichment must also be

dismissed.  The Plaintiffs allege that NorthWestern was unjustly enriched by receiving an

---

[6] FERC expressly allowed NorthWestern to assume $355,402,000 of First Mortgage
Bonds, $40,000,000 of Medium-Term Notes and $62,700,000 of Transition Bonds from
Clark Fork.  *See* Authorization from FERC dated November 15, 2002.  These debts
should also not be taken into account when determining the financial condition of Clark
Fork as a result of the transfer of assets to NorthWestern.

-20-

alleged fraudulent transfer of the Montana Assets.  *See* Complaint ¶ 74-76.  The facts

alleged do not support any of the Plaintiffs' claims of fraudulent transfer.  In the absence

of a fraudulent transfer, the Plaintiffs' claim fails to allege fact sufficient to support a

claim of unjust enrichment and, consequently, fails to state a claim upon which relief can

be granted.

IV.    THE INDENTURE DOCUMENTS EXPRESSLY PERMITTED THE
       TRANSFER OF THE MONTANA ASSETS TO NORTHWESTERN

       Plaintiffs' Complaint fails to state a claim upon which relief can be granted

because the Indenture expressly states that a transfer of assets conducted in accordance

with section 1101 of the Indenture has the affect of releasing the predecessor entity of all

obligations under the Indenture or any Outstanding Securities thereunder.  *See* Indenture,

Sec. 1101-1102.  Further, the Indenture controls the rights of Plaintiffs and Plaintiffs

should not be allowed to object to acts that were performed in accordance with the terms

of the Indenture.  *cf. In re Terry Limited Partnership*, 27 F.3d 241, 243 (7th Cir.

1994)(stating a presumption that bankruptcy courts should uphold prebankruptcy

contractual entitlements to increased postpetition interest rates when equitable

considerations do not rebut the presumption); *cf. In re Holiday Mart, Inc*, 715 F.2d 430,

432 (9th Cir. 1983)(recognizing that valid subordination agreements are normally

enforced in accordance with their terms); *cf. In re Coronet Capital Company*, 1995 U.S.

Dist LEXIS 10175, *11 (S.D.N.Y. 1995)(stating that contractual subordination

agreements are enforceable under section 510(a) of the Bankruptcy Code, which seeks to

uphold agreements "regarding order of payments").  Since each of the transfers of the

-21-

ATL/1029981.12

Montana Assets complied with Section 1101 of the Indenture and released the predecessor entities under Section 1102, Plaintiffs should not be allowed to request that this Court rescind a transaction that was completed in accordance with the rights granted to NorthWestern under the Indenture.

The Indenture allows property of the original entity to be transferred to "a Person organized and validly existing under the laws of the United States, any State thereof, or any other jurisdiction." *See* Indenture, Sec. 1101. Plaintiffs' Complaint confirms that this requirement of section 1101 has been satisfied because NorthWestern "is a corporation validly organized under the laws of the State of Delaware." *See* Magten's Complaint, Para. 13. The only other requirements in Section 1101 of the Indenture are that, immediately after the transaction, no Event of Default "shall have occurred and be continuing" and that the Trustee receive an "Officer's Certificate and an Opinion of Counsel, each stating that" all of the conditions for the transfer have been met. *See* Indenture, Sec. 1101(b)-(c). Plaintiffs have not alleged noncompliance with either of these remaining requirements. Conspicuously absent from the Indenture is any requirement of approval by the Indenture Trustee or a holder of an interest in the Indenture Trust. *See* Indenture, Sec. 1101. Therefore, since each of the Transfers complied with Section 1101, Section 1102 releasing predecessor entities should be allowed to operate.

Section 1102 states that a transfer that complies with section 1101 relieves the predecessor entity, such as Montana Power, MP-LLC or Clark Fork, from "all obligations

-22-

and covenants under this Indenture" and makes the successor entity, NorthWestern, subject to those obligations and covenants. *See* Indenture, Sec. 1102. Plaintiffs' Complaint fails to allege facts showing noncompliance with the requirements of Section 1101 or a reason why Section 1102 should not operate when Section 1101 has been complied with and, consequently, Plaintiffs' Complaint fails to allege the facts necessary to state a claim upon which relief can be granted.

Further, the Second Supplemental Indenture and the Amendment to Guarantee Agreement, executed by the Trustee, NorthWestern and Clark Fork, expressly reserve the right of Clark Fork to transfer substantially all of its assets to NorthWestern. The Second Supplemental Indenture clearly states the right of Clark Fork to transfer substantially all of its assets and the document clarifies that this right includes the right of Clark Fork to transfer substantially all of its assets to NorthWestern. *See* Second Supplemental Indenture, Section 201. The language is also clear that such a transfer to NorthWestern would relieve Clark Fork of "its obligations under the QUIPS Debenture, the Indenture and hereunder as provided in Article Eleven of the Indenture." *See* Second Supplemental Indenture, Section 201. The Amendment to Guarantee Agreement contains similar language; it reserves the right of Clark Fork to transfer substantially all of its assets to another entity, and clarifies that this right includes the right of Clark Fork to transfer substantially all of its assets to NorthWestern. *See* Amendment to Guarantee Agreement, section 201. The section also makes clear that such a transfer can be accomplished in compliance with the Indenture. *See* Amendment to Guarantee Agreement, section 201. These documents, executed by the Trustee, further confirm the view that a transfer of

-23-

substantially all of Clark Fork's assets to NorthWestern, in compliance with the

Indenture, would operate to release Clark Fork from any obligations it may have had

under the Indenture. The transfer of the Montana Assets by Clark Fork to NorthWestern

was allowed by the Indenture and confirmed in later documents executed by the Trustee

and cannot be treated as fraudulent because the transfers were within the rights granted to

Clark Fork and NorthWestern by the Indenture and these future documents.

Consequently, the Plaintiffs' Complaint fails to allege facts sufficient to state a claim for

fraudulent transfer upon which relief can be granted.

V.    THE INDENTURE TRUSTEE DID NOT OBJECT TO ANY OF THE
      TRANSACTIONS AND SHOULD BE PRECLUDED FROM OBJECTING AT
      THIS LATE DATE

        Any potential objection to the transfer of the Montana Assets to NorthWestern

from Clark Fork has been waived by the Trustee's failure to object to any of the transfers

at the time of the transfers. Waiver is an intentional relinquishment of a known right

either in express terms or by such conduct as indicates an intention to renounce such a

right. *See e.g., Godwin v. Continental Ins. Co.*, 306 F. Supp. 238, 243 (D. Del. 1969). As

discussed above, the intention to finally transfer the assets to NorthWestern was publicly

disclosed on numerous occasions and well in advance of the actual transfer. Further,

each time a transfer of the Montana Assets occurred (from Montana Power to MP-LLC to

NorthWestern Energy to NorthWestern), the Trustee did not object to the transfer, but

consented to and executed a supplemental Indenture. The Trustee in fact consented to the

Second Supplemental Indenture which specifically reserved the right of Clark Fork to

transfer substantially all of its assets to NorthWestern and clearly stated that Clark Fork

-24-

would be released from any obligation under the Indenture as a result of the transfer of substantially all of its assets. The Trustee did not have to join in such supplemental Indentures, giving tacit approval to the transfers, but the Trustee did so. Also, the Amendment to the Guarantee Agreement expressly reserved the same right, and once again, the Trustee executed the document instead of objecting. Further, the Trustee never objected or even hinted at a desire to withhold approval of any of the transfers. Such consistent silence on the part of the Trustee should be treated as waiver, and the holders of claims under the Indenture should also be treated as having waived any potential objection (and should be forced to seek restitution from the wrongdoing trustee). Consequently, any claims the Plaintiffs may have had have been waived and, the Plaintiffs' Complaint cannot allege facts sufficient to support a claim upon which relief can be granted[7].

Alternatively, the equitable defense of laches precludes the Plaintiffs from asserting this claim. Laches bars an action from proceeding due to "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Hassler v. Assimos*, 53 B.R. 453, 456 (Bankr. D. Del. 1985), citing *E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69 (3d Cir. 1984), cert. dismissed, 469 U.S. 925 (1984). In this case all of the elements of laches exist. As stated numerous times above, NorthWestern's intention to "go flat" with the Montana Assets

---

[7] Magten is estopped from complaining regarding the transfer of the Montana Assets to NorthWestern. Magten purchased the QUIPS well after the transfer of the assets to NorthWestern and with full knowledge of the transaction.

was publicly disclosed to regulatory agencies and even in NorthWestern's 2001 Form 10-K. Further, NorthWestern's intention to "go flat" was clearly shown in documents executed by the Trustee. Despite all of this disclosure, at each transfer of the Montana Assets the Trustee assented to the transfer by executing a supplement to the Indenture. The Trustee could have refused to execute these supplements or made some formal objection, but the Trustee never did either of these things. Instead, the Trustee sat on its hands doing nothing. This lack of action is prejudicial to NorthWestern because now the Plaintiffs, and in particular the Trustee, seek to rescind a legitimate and expressly permitted transfer. Such a result, having to return legitimately received assets, would be prejudicial to NorthWestern, its estate, and creditors of its estate. Under these facts, laches clearly applies and therefore, the Plaintiffs' Complaint cannot allege facts sufficient to support a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons this Court should dismiss Plaintiff's Complaint for failure to state a valid claim upon which relief can be granted.

This 14th day of May, 2004.

> Respectfully submitted,
> PAUL, HASTINGS, JANOFSKY & WALKER LLP
> 600 Peachtree Street
> Suite 2400
> Atlanta, GA 30308
> Jesse H. Austin, III
> Karol K. Denniston
> C. Carolyn Chayavadhanangkur
> Telephone: (404) 815-2400

-26-

And

GREENBERG TRAURIG, LLP

 /s/ William E. Chipman, Jr.
Scott D. Cousins (No. 3079)
Victoria Watson Counihan (No. 3488)
William E. Chipman, Jr. (No. 3818)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

Counsel for NorthWestern Corporation, as Debtor and
Debtor-in-Possession

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this date served Plaintiffs' with the foregoing Motion, and Supporting Brief, to Dismiss The Complaint Of Magten Asset Management Corporation And Law Debenture Trust Company Of New York For Failure To State A Claim Upon Which Relief Can Be Granted in the above-captioned case by depositing a copy of the same in the United States Mail, postage prepaid, addressed as follows:

> William J. Burnett
> Blank Rome LLP
> 1201 Market Street, Suite 800
> Wilmington, Delaware 19801
>
> -and-
>
> Fried, Frank, Harris, Shriver & Jacobsen LLP
> One New York Plaza
> New York, New York 10004
> *Counsel for Magten Asset Management*
> *Corporation*
>
> John V. Snellings
> Nixon & Peabody LLP
> 100 Summer Street
> Boston, Massachusetts 02100
> *Counsel for Law Debenture Trust Company of New*
> *York*

This _____ day of May, 2004.


_____
William E. Chipman, Jr. (No. 3818)


ATL/1029981.12

**Exhibit E**



RECEIVED

APR - 4 2005

GOETZ, GALLIK &
BALDWIN, P.C.

FILED
BILLINGS, MT
2005 APR  1  AM 10 33
PATRICK E. DUFFY, CLERK
BY _____ Cheri Anderson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | ) ) ) | Cause No. CV-04-26-BU-RFC |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| MIKE J. HANSON AND ERIE J. KINDT, | ) ) | |
| Defendants. | ) ) ) | |

## BACKGROUND

On February 15, 2002, pursuant to the terms of a Unit Purchase Agreement ("UPA")

entered into between NorthWestern, as purchaser, and Montana Power Company ("MPC") and

Touch America Holdings, Inc. ("TAH"), as sellers, NorthWestern acquired sole unit interest in

Montana Power, LLC ("MPLLC").  Two days previously, as part of a corporate reorganization of

MPC into TAH, the electric and natural gas transmission and distribution assets of MPC, as well

as MPC's interest in the Milltown Dam, was transferred from MPC to MPLLC.  The assets and

liabilities transferred to MPLLC were certain 8.45% Junior Subordinated Debentures due in 2036

which had been issued by MPC in or about 1996.  The interest paid on these Junior Debentures

created the cash flow to make dividend payments on certain Series A 8.45% Quarterly Income Preferred Securities ("QUIPS") which had previously been issued by Montana Power Capital I (The "Trust"). The sole assets of the Trust are the Junior Debentures. Plaintiff Magten is a holder of 33% of the Series A 8.45% QUIPS, with a principal face value in excess of $20 million.

In August 2002, NorthWestern authorized and directed the transfer of the electric and natural gas transmission and distribution assets and liabilities held by its subsidiary to it, the parent corporation. The transfer was effected on November 15, 2002. The Montana Utility Assets and Liabilities transferred included the obligations associated with the Junior Debentures and QUIPS. Other assets and liabilities remained with the limited liability company, whose name was changed to Clark Fork and Blackfoot, LLC. Pursuant to the operation of the QUIPS Trust Documents, as amended on or about August 13, 2002, upon the closing of the transfer, Magten ceased to be a creditor of Clark Fork and became a creditor of NorthWestern only.

Subsequently, on September 14, 2003, NorthWestern filed a voluntary petition for reorganization in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Magten filed an adversary proceeding against NorthWestern in the bankruptcy proceeding. On April 19, 2004 Magten filed a complaint against Officers of Clark Fork, Mike J. Hanson, Jack D. Haffey, Ernie J. Kindt and Ellen Senechal, alleging that Defendants had breached a fiduciary duty to Plaintiff because Clark Fork transferred certain assets and liabilities of Clark Fork (the "Montana Utility Assets and Liabilities") to its corporate parent and sole owner, NorthWestern.

Defendants Hanson and Kindt have moved to dismiss the complaint for the following reasons: (1) as a matter of law, only the member of a limited liability company, in this case

2

NorthWestern, has the legal authority to order the transfer of assets and liabilities out of a limited

liability company; (2) as a matter of law, Defendants owed no fiduciary duty to Magten; and (3)

the terms of the relevant documents on which Magten bases its claim permitted the transfer of

Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

## STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) Fed. R. Civ. P. the Court

must accept as true all well-pleaded allegations of fact in the complaint and construe them in the

light most favorable to the plaintiffs. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d

661, 663 (9th Cir. 2000). Dismissal for failure to state a claim is appropriate if it "appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

## ANALYSIS

1)    **Do only the members of a limited liability company have the legal authority to order
the transfer of assets and liabilities out of a limited liability company?**

Defendants argue that only the members have the authority to transfer all or substantially

all of the limited liability company's assets. Defendants assert that because NorthWestern was

the sole Member of Clark Fork, they could merely carry out the directives of the Member and

Manager and had no individual authority or power to bind or prevent Clark Fork from

transferring the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

Pursuant to the Montana Limited Liability Company Act, "*unless the articles of*

3

*organization or the operating agreement provide otherwise,* the only matters of a member-managed or manager-managed company's business requiring the consent of all of the members are . . . the sale, lease, exchange or other disposal of all, or substantially all, of the company's property with or without goodwill." Mont. Code Ann. §35-8-307(3)(l) (Emphasis added).

Because this Court was not provided with a copy of the operating agreement for Clark Fork and Black Foot, LLC, it is unable to determine whether only the members of the limited liability company have the legal authority to order the transfer of assets and liabilities out of the limited liability company. The language of Montana's Limited Liability Company Act clearly allows for the possibility of the operating agreement to authorize officers to sell, lease, exchange or dispose of the company's property.

2)      **Did Defendants owe a fiduciary duty to Magten, as one of Clark Fork's creditors?**

Defendants allege that NorthWestern was and is the sole Member and Manager of Clark Fork, and therefore, NorthWestern, as either Member or Manager, owes the fiduciary duties of loyalty and care to Clark Fork, so the Officers of Clark Fork have no duties or obligations conferred upon them by the Montana Limited Liability Company Act. This Court previously ruled in its January 27, 2005 Order that despite Judge Case's judicial determination that Magten never was a creditor of Clark, Magten is not precluded from asserting a breach of fiduciary duty claim.

4

3)     **Do the relevant documents on which Magten bases its claim permit the transfer of Montana Utility Assets and Liabilities from Clark Fork to NorthWestern?**

Defendants argue the Indenture and its supplements expressly state that a transfer of assets conducted in accordance with section 1101 of the Indenture has the affect of releasing the predecessor entity of all obligations under the Indenture or any Outstanding Securities thereunder.  Defendants assert that this Indenture controls the rights of Plaintiff and Plaintiff should not be allowed to object to acts that were performed in accordance with the terms of the Indenture.  Plaintiffs rebut this by arguing that there was no authorization for the transaction where the entity purportedly assuming Clark Fork's obligations to the Trust and the holders of the QUIPS were already insolvent and would never be able to meet the obligations.

Defendant is correct in that the Indenture does not expressly require the entity assuming the obligation be solvent.  However, the Court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the plaintiffs.  The Indenture at section 112 provides that it is governed by New York law and in *Blackman v. Estate of Battcock*, 587 N.E.2d 280, 285 (N.Y. 1991), the Court stated that the aim of the contract interpretation is not simply mechanical application of the literal language of the contract, but also consideration of what may reasonably be implied from the language in effectuating the parties' purpose in entering the contract.  Further, as correctly stated by Plaintiff, the Indenture is subject to the inherent covenant of good faith and fair dealing.  The covenant of good faith and fair dealing "is violated when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the

5

benefits under the agreement." *Don King Productions, Inc. v. Douglas*, 742 F.Supp.741

(S.D.N.Y. 1990).  There is a concern as to whether it is good faith and fair dealing in carrying out

a transaction in which Clark Fork will be released of all further obligations under the Indenture

because its obligations have been assumed by another entity which is known to be insolvent.

    For the foregoing reasons, Defendants' Motion to Dismiss [*doc. #4*] is **DENIED**.  The

Clerk of Court is directed to notify the parties of the making of this Order.

    DATED this 18 day of April, 2005.

                                        Richard F. Cebull
                                        U.S. DISTRICT COURT JUDGE


CERTIFICATE OF MAILING
DATE: 4/1/05  BY: CA-
I hereby certify that a copy
of this order was mailed to:

S. Kaleczyc
K. Beatty
B. Steingart
J. Bresler
J. Goetz
J. Geddes

6

# Exhibit F



1   Stanley T. Kaleczyc
    Kimberly A. Beatty
2   BROWNING, KALECZYC, BERRY & HOVEN, P.C.
    139 North Last Chance Gulch
3   P.O. Box 1697
    Helena, MT 59604-6669
4   Phone: (406) 443-6820
    Fax: (406) 443-6883
5
    Attorneys for Defendants.
6
7
8                IN THE UNITED STATES DISTRICT COURT
9                   FOR THE DISTRICT OF MONTANA
10                          BUTTE DIVISION
11  MAGTENASSET MAMAGEMENT            |    Case No. CV-04-26-BU-RFC
    CORPORATION,                      |
12                                    |    BRIEF IN SUPPORT OF MOTION
                Plaintiff,            |    FOR SUMMARY JUDGMENT
13                                    |
          v.                          |
14                                    |
    MIKE J. HANSON and ERNIE J. KINDT |
15                                    |
                Defendants.           |
16
17  ────────────────────────────────────
18          Defendants Mike J. Hanson and Ernie J. Kindt, by and through their undersigned counsel

19  of record, hereby submit this Brief in Support of their Motion for Summary Judgment.

20                              **INTRODUCTION**

21          The allegations raised in the Complaint, and each argument raised by Magten in its brief

22  in opposition to the Motion to Dismiss, are based on one primary assertion:  That Magten was a

23  creditor of, or that its predecessors-in-interest were creditors of, Clark Fork and Blackfoot, LLC

24  (aka NorthWestern Energy, LLC, fka MPLLC) (hereinafter collectively referred to as "Clark

25  Fork") at the time Clark Fork's parent corporation and sole Member and Manager transferred

26  Montana Utility Assets and Liabilities ("Transfer") from Clark Fork to NorthWestern

27  Corporation ("NorthWestern").  As a result, if Magten's primary assertion, namely that it was a

- 1 -

1   creditor of Clark Fork or was the successor-in-interest to creditors of Clark Fork, proves to be
2   false, Magten's allegations fail and the Defendants are entitled to summary judgment.

3         As will be discussed in greater detail below, Magten's assertion that it was a creditor of
4   Clark Fork fails for two reasons:  (1) on July 23, 2004, the Honorable Charles G. Case II, held
5   that Magten "was never a creditor of Clark Fork at a time when Clark Fork had the disputed
6   energy assets;" and (2) on July 27, 2004, Magten's sole owner admitted under oath in a
7   deposition that (a) Magten did not acquire its QUIPS until "late April, 2003" (more than five
8   months after the closing of the asset transfer at issue) and (b) Magten was not a creditor of Clark
9   Fork or of NorthWestern at the time of the closing of the asset transfer at issue.  As a result of
10  this prior adjudication by Judge Case and of the admissions made by Magten, Magten is now
11  precluded from arguing that it was Clark Fork's creditor or that Defendants owed any duty to
12  Magten.[1]  Defendants, therefore, are entitled to summary judgment and to dismissal of this
13  action.

14        Further, Magten's averment that it has standing to assert the rights of the Trust and its
15  alleged predecessors-in-interest as owners of the QUIPS who were creditors of Clark Fork at the
16  time of the Transfer, also fails.  First, absent a specific assignment, any chose in action which
17  may have been owned by those from whom Magten purchased the QUIPS was not conveyed to
18  Magten; and, therefore, Magten lacks standing to assert such rights.  Second, both the Trustee
19  and the prior holders of the QUIPS acquiesced in the Transfer, so complaints stemming from that
20  Transfer have now been waived.

21                                **STANDARD**
22        Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be
23  rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on
24  file, together with the affidavits, if any, show that there is no genuine issue as to any material fact
25  and that the moving party is entitled to judgment as a matter of law." Where, as here, the non-
26

27  _____
    [1] Defendants have also filed with this Court a Motion to Dismiss in which they argue that, as a matter of law, they
    owed no fiduciary duty to any creditors of Clark Fork and thus Plaintiff's Complaint should be dismissed with
    prejudice.

                                    - 2 -

1  moving party bears the burden of proof at trial, the moving party is entitled to summary

2  judgment by demonstrating that the non-moving party cannot establish the existence of any

3  element of the non-moving party's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)

4  ("The plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after

5  adequate time for discovery and upon motion, against a party who fails to make a showing

6  sufficient to establish the existence of an element on which that party will bear the burden of

7  proof at trial.").  In Celotex, the Supreme Court explained:

8         In such a situation, there can be no 'genuine issue as to any material fact,' since a
          complete failure of proof concerning an essential element of the nonmoving
9         party's case necessarily renders all other facts immaterial. The moving party is
          entitled to 'judgment as a matter of law' because the nonmoving party has failed
10        to make a sufficient showing on an essential element of her case with respect to
11        which she has the burden of proof.

12  477 U.S. at 323.  The moving party in such a case is not required to offer evidence negating any

13  element of the nonmoving party's claim.  Id. at 323.  Rather, the burden on the moving party

14  may be discharged by "pointing out to the district court that there is an absence of evidence to

15  support the nonmoving party's case."  Id. at 325.  Here, Plaintiff Magten bears the burden of

16  proof at trial as to their claims for damages.

## ARGUMENT

**I.     Magten was never a creditor of Clark Fork and thus
        Magten lacks standing to assert a creditor's claim, nor do
        Defendants owe any duty to Magten.**

21        The gist of Magten's complaint against  Messrs. Hanson and Kindt is that, as officers of

22  Clark Fork, they owed a fiduciary duty to the creditors of Clark Fork at the time Clark Fork's

23  sole Member and Manager, NorthWestern, decided to transfer the Montana Utility Assets and

24  Liabilities from Clark Fork (its wholly owned subsidiary) to itself (the parent corporation).

25  While there are numerous flaws with Magten's assertions, one proves to be both fundamental

26  and fatal to Magten's analysis:  it has now been judicially determined that Magten never was a

27

1    creditor of Clark Fork, an adjudicative fact which has been affirmed by the sworn testimony of

2    Magten's sole owner and manager.

3          **A.**     **A prior judicial determination has been made that Magten was not a creditor of Clark Fork.**

4

5          In an opinion dated July 23, 2004 the Hon. Charles B. Case II, who is presiding over

6    NorthWestern's bankruptcy, held as follows:

7          The Debtor [NorthWestern] has consistently alleged, and Magten has never
         disputed, that Magten did not own any of the debentures prior to the time the

8          assets were transferred to the Debtor [NorthWestern]. Rather, Magten acquired
         the debentures after the transaction was complete. Therefore, the Debtor

9          [NorthWestern] asserts and Magten has not disputed, that <u>Magten was never a
         creditor of Clark Fork at a time when Clark Fork had the disputed energy assets.</u>

10         Rather, Magten became a holder of the debentures only after the transaction was
         completed and was a matter of public record.

11

                           *     *     *

12
               As noted above, <u>Magten was not a creditor of Clark Fork at the time the
13         transaction took place.</u> Rather, it only became a creditor of the Debtor
         [NorthWestern] after the Debtor [NorthWestern] assumed the liability associated
14         with the junior subordinated debenture initially issued by Montana Power
         Company. Thus, Magten is not only not a party directly affected by the
15         transaction – such as Clark Fort itself – but it was also not an indirect party at the
         time the transaction took place.
16

17   Memorandum Decision at 3, 6-7 (emphasis added)[2]

18         This Court, of course, may take judicial notice of the adjudicative facts determined by

19   Judge Case in the Bankruptcy proceedings and entered in his July 23, 2004 Memorandum and

20   Order. Fed. R. Evid. 201. The fact that Magten was never a creditor of Clark Fork is not a

21   matter of dispute, as Judge Case noted. Moreover, in this case, as explained more fully below, it

22   is a fact "capable of accurate and ready determination by resort to sources whose accuracy can

23

24   _____

25   [2] A copy of the Memorandum Decision is attached as Exhibit H to Defendants' Statement of Uncontroverted Facts. Magten has
     filed a Motion for Reconsideration of Judge Case's Memorandum and Order, arguing that an affidavit filed by one of the counsel

26   for the Debtor NorthWestern had incorrectly stated that the directors of Clark Fork had approved the "going flat" transaction. As
     the Defendants here have explained to the Court in our opening brief, since Clark Fork is a limited liability company, it has a sole

27   Member-Manager, NorthWestern. Clark Fork has no board of directors. The error in discussing the management of Clark Fork
     was subsequently corrected by counsel in the bankruptcy proceeding. Most significantly, in Magten's Motion to Reconsider, it
     does <u>not</u> contest the findings of the Bankruptcy Court that Magten never was a creditor of Clark Fork.

1   not reasonably be questioned." Fed. R. Evid. 201(b)(2).  Thus, Magten is precluded from making

2   any arguments based on Magten's alleged status as a creditor of Clark Fork.

3        **B.    Magten has admitted it was not a creditor of Clark Fork at the time of the
               Transfer.**

4

5        On July 27, 2004, a week before Magten filed its Opposition Brief in this Court, Talton

6   Embry, Magten's sole owner, testified at his deposition taken in the Bankruptcy proceeding that

7   Magten did not acquire an interest in any QUIPS until "late April 2003", nearly six months after

8   NorthWestern completed its transfer of the Utility Assets from Clark Fork to itself.  Dep. Tr. p.

9   20.[3]  Mr. Embry further testified that at the time of the Transfer of Utility Assets from Clark Fork

10  to NorthWestern, Magten was not a creditor of Clark Fork. Dep. Tr. p. 27.

11       **C.    The principles of issue preclusion and collateral estoppel dictate summary
               judgment be entered in Defendants' favor.**

12

13       The judicial findings of Judge Case and the admission of Mr. Embry that Magten was not

14  a creditor of Clark Fork are dispositive of the issues in this case and Magten is precluded from

15  arguing to the contrary.  The basic principle of issue preclusion applies in this case:

16          The general principle announced in numerous cases is that a right, question, or
            fact distinctly put in issue and directly determined by a court of competent
17          jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit
            between the same parties or their privies; and, even if the second suit is for a
18          different cause of action, the right, question, or fact once so determined must, as
            between the same parties or their privies, be taken as conclusively established, so
19          long as the judgment in the first suit remains unmodified.  This general rule is
            demanded by the very object for which civil courts have been established, which
20          is to secure the peace and repose of society by the settlement of matters capable of
            judicial determination.  Its enforcement is essential to the maintenance of social
21          order; for the aid of judicial tribunals would not be invoked for the vindication of
            rights of person and property if, as between parties and their privies,
22          conclusiveness did not attend the judgments of such tribunals in respect of all
            matters property put in issue, and actually determined by them.
23

24  Southern Pacific Railroad v. United States, 168 U.S. 1, 48-49 (1897).

25       In the present case, the relationship between NorthWestern and Clark Fork, and the

26  relationship between Clark Fork and the Defendants here are the relationships between privies

27

---
[3] Copies of the relevant portions of the deposition transcript are attached as Exhibit B to Defendants' Statement of
Uncontroverted Facts.

1    and the doctrine of *res judicata* should apply to the issue of whether Magten was a creditor of

2    Clark Fork.  In First Bank v. Fourth Judicial District, 226 Mont. 515, 519, 737 P.2d 1132, 1134

3    (1987), the Montana Supreme Court held, "The doctrine of *res judicata* is firmly established to

4    stand for the proposition that a party should not be able to relitigate a matter that that party has

5    already had *opportunity* to litigate, and the public policy that there must be some end to

6    litigation."  In this instance, Magten clearly had the opportunity to litigate the issue of its status

7    as a creditor of Clark Fork before the Bankruptcy Court.

8            Although Clark Fork is not a party to the bankruptcy proceedings, for purposes of the

9    issue of whether Magten was a creditor of Clark Fork or NorthWestern in November 2002 when

10   the Transaction closed, Clark Fork and the Defendants here are in privity with NorthWestern.  It

11   is well settled law in Montana that the doctrine of *res judicata* applies both to parties and their

12   privies.  Newlan Creek Water District v. Walter, 169 Mont. 358, 361, 547 P.2d 850, 852 (1976).

13   Under Montana law, "[a] privy is broadly defined as one who has an interest in an action."

14   Brault v. Smith, 209 Mont. 21, 27, 679 P.2d 236, 239 (1984).  In this case, there is no question

15   that Clark Fork has an interest in the issue of whether the Transfer from Clark Fork to

16   NorthWestern is a fraudulent conveyance, as Magten has asserted in its Adversary Proceeding

17   pending in the bankruptcy court, and whether, for these purposes, either NorthWestern or Clark

18   Fork were debtors of Magten at the time of the alleged defective Transfer, especially since

19   NorthWestern, as the sole Member and Manager of Clark Fork, directed the Transfer occur.

20   Likewise, Messrs. Hanson and Kindt, as officers of Clark Fork, are in privity with Clark Fork.

21   First Bank v. Fourth Judicial District, supra, 226 Mont. at 520, 737 P.2d at 1135.  Therefore,

22   when Judge Case determined Magten was not a creditor of Clark Fork, a fact plainly put in issue

23   by Magten within the course of NorthWestern's bankruptcy proceedings, that determination

24   cannot be disputed in any subsequent litigation by Magten against NorthWestern, Clark Fork or

25   Defendants here.

26           Even if, however, this Court were reluctant to consider those relationships as ones

27   between privies, classic principles of collateral estoppel control and preclude Magten from

- 6 -

1   relitigating the Bankruptcy Court's finding that it was not a creditor of Clark Fork at the time of

2   the Transfer:

3           Under collateral estoppel, once a court has decided an issue of fact or law
            necessary to its judgment, that decision may preclude relitigation of the issue in a
4           suit on a different cause of action involving a party to the first case.

5   Allan v. McCurry, 449 U.S. 90, 94 (1980).

6           Likewise, the Montana Supreme Court has held that collateral estoppel is a form of *res*

7   *judicata* and bars the reopening of an issue that has been litigated and resolved in a prior suit.

8   The Stanley L. and Carolyn M. Watkins Trust v. LaCosta, 2004 MT 644, ¶ 26, 92 P.3d 620, 626

9   ¶ 26. (citing Kullick v. Skyline Homeowners Association, 2003 MT 137, ¶ 17, 69 P.3d 225, ¶17.)

10          As noted at the outset of this brief, Magten's entire case is predicated upon their

11  allegations that Messrs. Hanson and Kindt, as "officers" of Clark Fork, owed a fiduciary duty to

12  Clark Fork's creditors. See Complaint, ¶ 1; See also Magten's Brief in Opposition to Motion to

13  Dismiss at 1. Even if Magten were correct that the Defendants had owed a duty to Clark Fork's

14  creditors at the time of the asset transfer - - a legal conclusion which the Defendants dispute and

15  which is the subject of Defendants' pending Motion to Dismiss - - it is not only undisputed by

16  Magten, but in fact affirmatively admitted by Magten's sole owner, that Magten was not a

17  creditor of Clark Fork at the time of the Transfer. *A fortiori*, Messrs. Hanson and Kindt could

18  not have owed any duty to Magten at the time of the Transfer.

19          Finally, even if this Court were to find the principles of collateral estoppel are not

20  controlling, the clear admissions made by Magten prevent Magten from pursuing any argument

21  that has at its essence the claim that Defendants owed a duty to Magten at the time of the

22  Transfer because Magten was a creditor of Clark Fork. Magten simply was not a creditor of

23  Clark Fork, both by the own admission of the Plaintiff and by the judicial determinations of

24  Judge Case.

25

26

27

**D.    Magten's acquisition of the QUIPS after-the-fact and with full knowledge of the Transfer preclude Magten from alleging innocence.**

As Mr. Embry admitted later in his deposition, he acquired his interest in the QUIPS with full knowledge of the Transfer of the Montana Utility Assets and Liabilities to NorthWestern (the so called "going flat" transaction) before his first acquisition of QUIPS:

> Q:      When did you first become aware of the going-flat transaction?
>
> A.:      In reviewing the company's 10-Q, the quarter ending September 30, 2002.
>
> Q:      Did you review that document prior to your acquisition of the QUIPS, your initial acquisition f the QUIPS?
>
> A:      I believe so.

Dep. Tr. p. 33-34.  <u>See also</u>, Dep. Tr. p. 16.

Mr. Embry, admitted he is a "veteran" investor who has been investing in distressed debt since 1978. Dep. Tr. p. 14; 78. He routinely performs due diligence before making investments. Dep. Tr. p. 17. Mr. Embry performed due diligence prior to his acquisition of the QUIPS and then personally made the decision to acquire the QUIPS. Dep. Tr. p. 16-17. Mr. Embry further testified:

> Q.      At the time prior to the acquisition of the QUIPS, were you satisfied with your understanding of the going-flat transaction?
>
> A.      Yes.

Dep. Tr. p. 37.  In fact, Mr. Embry made more than one acquisition of the QUIPS:  He continued to acquire QUIPS even after NorthWestern filed for bankruptcy protection, with his last trade being as recently as a "month ago." Dep. Tr. p. 21-23, 25, 55.

In light of Mr. Embry's testimony, Magten can not be heard to say that it had no knowledge of the Transfer which occurred six months before it first acquired the QUIPS, the very transaction about which it now complains.  If, in hindsight, Magten believes it made a bad, albeit well-informed, business decision when it initially purchased and continued to purchase the QUIPS, it is not the responsibility of this Court to save Magten from its own business decisions.

**E.    There is no set of facts on which Magten may prevail.**

The judicial determinations made by Judge Case, coupled with the clear admissions made by Magten, preclude Magten from asserting any argument or theory that Defendants breached any duty owed to Magten as a result of Magten's false allegations that it was a creditor of Clark Fork. Because Magten must first prove that it was a creditor of Clark Fork at the time of the transfer, a burden of proof it simply cannot meet, there is no set of facts on which Magten may prevail against Messrs. Hanson and Kindt in their capacity as "officers" of Clark Fork. For these reasons alone, Defendants are entitled to summary judgment.

**II.    Magten cannot stand in the shoes of its predecessor-in-interest to assert its creditor status.**

In its Complaint, Magten alleges that its predecessors-in-interest were creditors of Clark Fork and, as such, Defendants had a duty to them which Defendants breached. Complaint ¶ 50-51. Magten further alleges that this breach of duty by the Defendants to Magten's predecessors-in-interest caused substantial injury to Magten. Complaint ¶ 52. Magten's argument is fundamentally flawed. Magten lacks standing to assert the rights of the Trust or its predecessors-in-interest as owners of the QUIPS. First, absent a specific written assignment, any chose in action held by those from whom Magten purchased the QUIPS was not conveyed to Magten. Therefore, Magten lacks standing to assert such rights. Second, both the Trustee and the prior holders of the QUIPS acquiesced in the Transfer, so complaints stemming from that Transfer have now been waived.

**A.    A Chose in Action which value exceeds $5,000 may only be conveyed or assigned by a specific written instrument.**

In essence, in their Complaint, Magten has asserted that the officers of Clark Fork owed a duty to its predecessors-in-interest ("Predecessors") by virtue of the Predecessors' status as holders of the QUIPS which, in turn, rendered them creditors of Clark Fork prior to the Transfer. Magten further alleges that the officers of Clark Fork breached an alleged duty owed to the Predecessors at the time of the Transfer; and, therefore, by virtue of Magten's acquisition of the

- 9 -

1  QUIPS from the Predecessors (albeit six months after the Transfer), the officers breached a duty

2  to Magten and Magten has suffered damages as a result[4].

3      Any claim by the Predecessors that the officers breached any duty to them is a chose in

4  action. Mont. Code Ann. § 70-2-101 (2003) ("A thing in action is a right to recover money or

5  other personal property by a judicial proceeding.")[5].  See, also, State ex rel. Coffey, 74 Mont.

6  355, 240 P. 667, 669 (1925) (noting "The Supreme Court of the United States has said that a

7  chose in action 'include[s] all debts and all claims for damages for breach of contract or for tort

8  connected with the contract.'" Bushnell v. Kennedy, 9 Wall 387, 390, 19 L. Ed. 736); Moore v.

9  Nassau County Dept. of Public Transp., 357 N.Y.S.2d 652, 656-57 (1974) ("Choses in action are

10  personal property, and, although intangible, are property subject to encumbrances."); Garford

11  Motor Truck Company v. Buckson, 143 A. 410, 411(Sup. Ct. De. 1927) (holding a chose in

12  action which survives death is assignable; Del. Code Ann. tit. 10, § 3701 (2003) (indicating the

13  chose in action, breach of fiduciary duty, survives death.)

14      It is established by case law and statute that; "[A] chose in action is intangible personal

15  property." Lewis v. Puget Sound Power & Light Co., 2001 MT 145, ¶ 20, 29 P.3d 1028, 1031

16  (Mont. 2001) (citing Mont. Code Ann. § 1-1-205(1)); See also, Moore 357 NYS 2d at 656-57

17  (1974); In re Morace, 74 A. 375, 376 (Sup. Ct. De. 1909) ("A chose in action is personal

18  property, generally speaking ...."). The Uniform Commercial Code which has been adopted by

19  Montana, New York and Delaware states that a contract for the sale of personal property in

20  excess of $5,000 in value must be in writing, must reasonably identify the subject matter, and

21  must state the price. Mont. Code Ann. § 30-1-206 (2003); N.Y. [UCC] Law § 1-206 (McKinney

22  2004); Del. Code Ann. tit. 6, § 1-206 (2003).  See also, Lewis, 2001 MT at ¶ 20, 29 P.3d 1028,

23  1031-32 (citing Mont. Code Ann. § 30-1-206); Beldengreen, DDS v. Ashinsky, DDS, 528

24  N.Y.S.2d 744 (1987) (citing Uniform Commercial Code § 1-206).  Thus, the sale of a chose in

25  [4] Because the QUIPS Trust Documents are variously governed by the laws of the State of New York or the State of
26  Delaware, this brief will cite to Montana, New York and Delaware law.  The result in any of the three jurisdictions
   is the same:  Magten lacks standing to assert the rights of the Trust or its Predecessors.

27  [5] A "thing in action" and a "chose in action" are terms that are used interchangeably.  See, State ex rel. Coffey, 240
   P. 667, 669 (Mont.1925) ("In the common parlance of the law, a thing in action is designated a chose in action.
   Chose in action means literally thing in action." (citations omitted)).

- 10 -

1    action with a value exceeding $5,000 can only be made by a specific written instrument. It is not

2    enough to simply convey the QUIPS debt instruments themselves; rather, the claim for breach of

3    duty must be particularly described in a written conveyance instrument. See Lewis, 2001 MT at

4    ¶ 20, 29 P.3d at 1031 (in a case for structural damages to real property, the court held: "If the

5    claim [for structural damages] is severed from the real estate by a transfer of the property without

6    assignment [of the claim], the claim, as a chose in action, is intangible personal property."). See

7    also, Moore, 357 N.Y.S.2d at 656-57 (noting choses in action are personal property).

8           As a result, because any claim by the Predecessors for breach of a duty owed by the Clark

9    Fork officers will be considered a chose in action, and because Magten asserts the value of that

10   chose in action well exceeds $5,000, any conveyance or assignment of that chose in action to

11   Magten must have been specifically described in writing, or Magten cannot stand in its

12   Predecessors' shoes. Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the

13   real party in interest.")  Nowhere in Magten's Complaint does it assert that the owners of the

14   QUIPS at the time of the Transfer specifically assigned to Magten in writing their right to assert

15   a breach of the officers' duty to those former QUIPS owners. As discussed earlier in this brief,

16   because Magten cannot assert it was a direct creditor of Clark Fork, it can only assert a breach of

17   duty owed to previous creditors through whatever rights it obtained from its predecessors. Since

18   it obtained no such right from its Predecessors, Magten lacks standing to assert the rights of the

19   Trust and its Predecessors.

20          **B.      Complaints stemming from the Transfer have been waived.**

21          As discussed earlier in this brief, and as admitted by Mr. Embry, Magten first acquired

22   the QUIPS some six months after the Transfer, with full knowledge of the Transfer and its

23   effects. Magten acknowledges it was not a creditor of Clark Fork at the time of the Transfer. By

24   that time, as a result of the operation of the Trust Indenture Documents, Magten's Predecessors

25   were no longer creditors of Clark Fork, but were rather creditors of NorthWestern. Further,

26   Magten had actual knowledge of these facts, as it acquired the QUIPS six months after the

27

- 11 -

1    Transfer was completed, after performing due diligence, and after Mr. Embry was "satisfied"

2    with his understanding of the Transfer.

3        Under the Second Supplemental Indenture, executed by the Trustee, NorthWestern and

4    Clark Fork reserved the right of Clark Fork to transfer all of its assets to NorthWestern and that

5    such transfer would relieve Clark Fork of "its obligations under the QUIPS Debenture, the

6    Indenture and hereunder as provided in Article Eleven of the Indenture.  Second Supplemental

7    Indenture, §201.  This Second Supplemental Indenture was duly executed by all parties, and

8    neither the Trustee nor any of the Predecessors have challenged its validity or effect.  Section

9    1101 of the Indenture clearly empowered the Montana Power Company, and Clark Fork

10   thereafter, to "convey or otherwise transfer, or lease, its properties and assets substantially as an

11   entirety to any Person."  Indenture § 1101.  The prerequisites of any such transaction were also

12   spelled out in the Indenture, which required:

13        1.    The surviving corpration to be "organized and validly existing under the laws of

14   the United States, and State thereof …" and

15        2.    The surviving corporation "assume" in an indenture "executed and delivered to

16   the Trustee, in form satisfactory to the Trustee" the "due and punctual payment of the principal

17   of and premium, if any, and interest, if any, on all Outstanding Securities and the performance of

18   every covenant of the Indenture on the part of the Company to be performed or observed."

19        In its Adversary Proceeding Complaint, Magten has conceded that NorthWestern meets

20   each of these prerequisites.  Adversary Proceeding Complaint, ¶¶ 14, 43.  Further, all parties

21   executed the Third Supplemental Indenture in which NorthWestern "expressly assume[d] the due

22   and punctual payment of the principal of and premium, if any, and interest, if any, on all

23   Outstanding Securities issued under the Indenture and the performance of every covenant of the

24   Indenture on the part of NorthWestern Energy to be performed or observed."   Third

25   Supplemental Indenture, § 101.

26        Both Magten's Predecessors and the Trustee acquiesced to the Transfer, and thus have

27   waived all such claims to challenge the Transfer.  The Montana Supreme Court has held "A

1   waiver is the intentional and voluntary relinquishment of a known right, claim or privilege."

2   Reiter v. Yellowstone CountyU, 192 Mont. 194, 202, 627 P.2d 845, 850 (1981).  Further, the

3   Court has held a waiver:

> May be proved by express declarations, or by acts and declarations
> manifesting an intent and purpose not to claim the supposed
> advantage, or by a course of acts and conduct, or by so neglecting
> and failing to act, as to induce the belief that it was his intention
> and purpose to waive.

8   Northwestern F. & M. Ins. Co. v. Pollard, 74 Mont. 142, 238 P. 594, 596 (1925).  By executing

9   the various supplemental indentures, and by failing to challenge the validity of such transactions

10  at the time the transactions were entered, the Trustee and the Predecessors have waived any such

11  right to do so.  As a result of this waiver, Magten, therefore, lacks standing to assert the rights (if

12  any remain) of the Trust or its Predecessors.

### CONCLUSION

14      Magten was never a creditor of Clark Fork and Blackfoot, LLC, nor may it "stand in the

15  shoes" of its so-called predecessors-in-interest or the Trustee who never objected to the Transfer

16  of the Montana Utility Assets and Liabilities from Clark Fork some six months before Magten

17  began to acquire QUIPS.  Magten therefore has no standing to allege a breach of any fiduciary

18  duty which Magten believes the Defendants owed to the creditors of Clark Fork at the time of the

19  Transfer.  (And, of course, the Defendants deny that any such duty was even owed by them to

20  the creditors who are not parties to this litigation for all the same reasons that Defendants deny

21  any duty was ever owed to Magten and as set forth in the Motion to Dismiss currently pending

22  before this Court.)  Accordingly, the Defendants respectfully request that summary judgment be

23  entered in their favor and that this case be dismissed with prejudice.

24  //

25  //

- 13 -

DATED this _20th_ day of _August_, 2004.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By _Kimberly Beatty_

Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59604-6669
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants.

- 14 -

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on the 20th day of August, 2004, a true copy of the
foregoing was mailed by first-class mail, postage prepaid, addressed as follows:

3

4    James Goetz
J. Devlan Geddes

5    Goetz, Gallik & Baldwin, P.C.
35 North Grand

6    P.O. Box 6580
Bozeman, MT 59771-6580

7

8    Bonnie Steingert
John W. Brewer

9    Fried, Frank, Harris, Shriver & Jacobson, LLP
One New York Plaza

10    New York, New York 10004

11

12

13    _____

14    BROWNING, KALECZYC, BERRY & HOVEN, P.C.

15

16

17

18

19

20

21

22

23

24

25

26

27

Title                                    - 15 -                          144934.doc/1674.044