IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
MAGTEN ASSET MANAGEMENT :
CORPORATION, suing individually and :
derivatively on behalf of CLARK FORK :
AND BLACKFOOT, LLC :
   :
             Plaintiff, :
   :
      v. : Civil Action No. 04-1256 JJF
   :
PAUL, HASTINGS, JANOFSKY & :
WALKER LLP, :
   :
            Defendant. :
---------------------------------------------------------x

## REPLY BRIEF IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                Robert J. Dehney (#3578)
                Curtis S. Miller (#4583)
                1201 North Market Street
                P.O. Box 1347
                Wilmington, Delaware  19899-1347
                (302) 658-9200
                    Attorneys for Defendant Paul, Hastings,
                    Janofsky & Walker LLP

OF COUNSEL:

Dennis E. Glazer
Paul Spagnoletti
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

June 2, 2006

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    MAGTEN'S CLAIMS FOR AIDING AND ABETTING AND
         CONSPIRACY RUN AFOUL OF THE PURPOSE OF THE
         UNIFORM FRAUDULENT TRANSFER ACT .......................................... 2

    II.   PLAINTIFF LACKS STANDING TO BRING DERIVATIVE
         CLAIMS BECAUSE IT HELD NO EQUITY IN CLARK FORK
         AND HAD NO INTEREST IN THE COMPANY WHEN THE
         ALLEGED FRAUD OCCURRED ................................................................ 8

CONCLUSION ..................................................................................................................... 11

## TABLE OF CITATIONS

PAGE

Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,
 869 P.2d 454 (Cal. 1994) ..........................................................................................3

Astarte, Inc. v. Pac. Indus. Sys., Inc.,
 865 F. Supp. 693 (D. Colo. 1994) ..............................................................................3

Banco Popular North America v. Gandi,
 876 A.2d 253 (N.J. 2005) ..........................................................................................4

Biering v. Ringling,
 240 P. 829 (Mont. 1925) ............................................................................................8

Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb,
 385 F. Supp. 2d 449 (D. Del. 2004) ..........................................................................8

Elliott v. Glushon,
 390 F.2d 514 (9th Cir. 1967) ....................................................................................4

Farmers Plant Aid, Inc. v. Fedder,
 999 P.2d 315 (Mont. 2000) ........................................................................................7

Forum Ins. Co. v. Devere Ltd.,
 151 F. Supp. 2d 1145 (C.D. Cal. 2001) ....................................................................4

Gulf Insurance Co. v. Clark,
 20 P.3d 780 (Mont. 2001) ......................................................................................5, 6

Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.),
 320 F.3d 291 (2d Cir. 2003) ......................................................................................9

Las Vegas Sun, Inc. v. Summa Corp.,
 610 F.2d 614 (9th Cir. 1979) ....................................................................................3

Litchfield Asset Mgmt. Corp. v. Howell,
 799 A.2d 298 (Conn. App. 2002) ..............................................................................4

Mack v. Newton,
 737 F.2d 1343 (5th Cir. 1984) ..................................................................................4

PAGE

McAndrew v. Lockheed Martin Corp.,
   206 F.3d 1031 (11th Cir. 2000) ..................................................................................3

Neset v. Fifer,
   942 P.2d 712 (Mont. 1997) .........................................................................................8

Northern Tankers (Cyprus) Ltd. v. Backstrom,
   968 F. Supp. 66 (D. Conn. 1997).................................................................................4

Production Resources Group, L.L.C. v. NCT Group, Inc.,
   863 A.2d 772 (Del. Ch. 2004)......................................................................................8

Raymond v. Blancgrass,
   93 P. 648 (Mont. 1908)............................................................................................6, 7

Wieboldt Stores, Inc. v. Schottenstein,
   111 B.R. 162 (N.D. Ill. 1990) ......................................................................................4

Wiles v. Capitol Indemnity Corp.,
   75 F. Supp. 2d 1003 (E.D. Mo. 1999) .........................................................................3

### STATUTES & RULES

Fed. R. Civ. P. 12(c) ..........................................................................................................1

Mont. Code Ann. § 31-2-327 .............................................................................................5

Mont. Code Ann. § 31-2-342 ......................................................................................5, 6, 7

Mont. Code Ann. § 35-8-1104 .....................................................................................9, 10

### OTHER AUTHORITIES

Howard J. Steinberg, Liability of Participants in Fraudulent Transfers,
   2 Bankr. Litig. § 14.9 (Dec. 2003)...............................................................................5

Defendant Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"), by and through its counsel, respectfully submits this reply brief in further support of its motion, pursuant to Federal Rule of Civil Procedure 12(c), for a judgment dismissing Plaintiff's claims on the pleadings.

## PRELIMINARY STATEMENT

The claims alleged by Magten Asset Management Corp. ("Magten" or "Plaintiff") must be dismissed because, as a matter of law, (a) a non-party like Paul Hastings cannot be held liable for an alleged fraudulent transfer, and (b) a creditor such as Magten does not have standing to assert derivative claims on behalf of a debtor when it was indisputably not a creditor when the debtor's cause of action accrued. In attempting to hold Paul Hastings liable for providing legal advice to its client, NorthWestern Corp. ("NorthWestern"), and NorthWestern's wholly owned subsidiary Clark Fork and Blackfoot LLC ("Clark Fork"), Plaintiff misinterprets both Montana statutory and case law and the indenture agreement governing the debt instruments through which Magten ultimately became a creditor of NorthWestern.

Plaintiff attempts to salvage its meritless claims for aiding and abetting and for conspiracy by arguing, inter alia, that Montana law imposes these forms of secondary liability for violations of the state's Uniform Fraudulent Transfer Act ("UFTA"). However, Plaintiffs find no support in the Montana UFTA or case law for this assertion, which has been rejected by the sound majority of courts. Moreover, Plaintiff's "theory" runs counter to the purpose of the UFTA, which is to give creditors equitable remedies to avoid fraudulent transfers and thereby make those assets available in satisfaction of the debtor's liabilities.

Plaintiff's argument that it can assert derivative claims on behalf of Clark Fork under the terms of the indenture is equally infirm. Plaintiff conveniently ignores the fact that even though it might be entitled to sue on behalf of the QUIPS trust, it does <u>not</u> have the right to sue on behalf of Clark Fork. Moreover, even if it could sue on behalf of Clark Fork, it was not a creditor of Clark Fork at the time of the alleged fraudulent transfer. Thus, Plaintiff seeks to violate the "contemporaneous ownership" rule, which is so essential to the law of derivative lawsuits because of the omnipresent threat of "strike suits" like the one at bar, in which a person purchases securities <u>after</u> an alleged fraud has become known in order to reap an undeserved windfall through litigation.

## ARGUMENT

I. **MAGTEN'S CLAIMS FOR AIDING AND ABETTING AND CONSPIRACY RUN AFOUL OF THE PURPOSE OF THE UNIFORM FRAUDULENT TRANSFER ACT.**

Plaintiff does not and cannot dispute that the Montana UFTA does <u>not</u> create a cause of action against a defendant, like Paul Hastings, that was not a party to the alleged fraudulent transfer underlying this action. Furthermore, it has not contested that the purpose of the UFTA is to preserve a debtor's assets for the benefit of its creditors, <u>not</u> to impose civil liability on all persons who may have assisted an alleged violation of the UFTA. Nor does Plaintiff even attempt to distinguish the ample authority declining to cognize claims for aiding and abetting or conspiracy in connection with an alleged fraudulent transfer. Instead, Plaintiff seeks to circumvent the clear intention of the UFTA

2

by asserting meritless claims against Paul Hastings for aiding and abetting and conspiracy in connection with NorthWestern's alleged violation of the Montana UFTA.[1]

Plaintiff's separate proceeding against NorthWestern is evidence that it understands the clear import of the Montana UFTA. In that case, Plaintiff has sued to avoid the transfer of Clark Fork's asserts to NorthWestern – the second part of an integrated transaction in which NorthWestern acquired certain utility assets of the Montana Power Co. ("MPC") – pursuant to the Montana UFTA. See Complaint, Magten Asset Mgmt. Corp. v. NorthWestern Corp., Case No. 03-12872 (CGC), Adv. Pro. No. 04-53324 (Bankr. D. Del.). However, Magten has also pursued these baseless claims against Paul Hastings in a transparent effort to coerce NorthWestern into a settlement by also exerting pressure on Paul Hastings, NorthWestern's counsel.[2]

---

[1] Plaintiff argues that NorthWestern, Paul Hastings, and others violated the Montana UFTA by virtue of the November 2002 transaction by which NorthWestern obtained the energy assets of Clark Fork, which has been obtained several months earlier from MPC. See Compl. ¶¶ 39-49. However, nowhere in this litigation does Plaintiff challenge the findings of Judge Case and Judge Peterson of the Delaware bankruptcy court that NorthWestern's acquisition of MPC's utility assets – first by transferring those assets to the Clark Fork subsidiary and then to NorthWestern – actually constituted a single, integrated transaction. See Def.'s Br. at 3 n.2 (citing previous opinions of the Delaware bankruptcy court).

[2] As frequently noted by Plaintiff, Paul Hastings was NorthWestern's attorney and acted as NorthWestern's agent in its purchase of the Montana utility assets. See, e.g., Compl. ¶¶ 5, 29-31, 35, 42. However, it is well-settled that an agent cannot conspire with his or her principal. Rather, "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000); see also, e.g., Las Vegas Sun, Inc. v. Summa Corp., 610 F.2d 614, 618 (9th Cir. 1979); Wiles v. Capitol Indemnity Corp., 75 F. Supp. 2d 1003, 1005 (E.D. Mo. 1999); Astarte, Inc. v. Pac. Indus. Sys., Inc., 865 F. Supp. 693, 708 (D. Colo. 1994);

Moreover, "[b]y its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to the plaintiff recognized by law and is potentially subject to liability for breach of that duty." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 869 P.2d 454, 457 (Cal. 1994). However, in this case, Paul Hastings is neither the debtor nor the transferee, and therefore is incapable of independently violating the UFTA or breaching a duty to Plaintiff pursuant to that statute. Therefore, as Paul Hastings is not legally capable of committing the breach of duty alleged, it cannot be held liable for conspiracy to commit a fraudulent transfer.

3

This tactic is plainly contrary to the purpose of the UFTA, which is "clearly to preserve the assets of the bankrupt," not "to render civilly liable all persons who may have contributed in some way to the dissipation of those assets." Mack v. Newton, 737 F.2d 1343, 1358 (5th Cir. 1984) (quoting Elliott v. Glushon, 390 F.2d 514, 516 (9th Cir. 1967)). Other courts hearing UFTA cases have recognized this precise distinction. See, e.g., Forum Ins. Co. v. Devere Ltd., 151 F. Supp. 2d 1145, 1150 (C.D. Cal. 2001) (granting motion for summary judgment because the "UFTA provides only equitable remedies solely against transferees, and Defendant is a not a transferee"); Wieboldt Stores, Inc. v. Schottenstein, 111 B.R. 162, 169 (N.D. Ill. 1990) (noting "the narrow purpose of fraudulent conveyance law"); accord Litchfield Asset Mgmt. Corp. v. Howell, 799 A.2d 298, 309 (Conn. App. 2002) (noting that an award of damages in a fraudulent transfer case is "appropriate only where the transferee subsequently disposes of the transferred property and retains the proceeds of that disposition").[3] Because every fraudulent transfer involves more than one person – at the very least, a debtor/transferor and a transferee – every fraudulent transfer claim can theoretically be restated as a claim for conspiracy, an absurd result clearly not contemplated by the UFTA. See Northern Tankers (Cyprus) Ltd. v. Backstrom, 968 F. Supp. 66, 68 (D. Conn. 1997) ("Fraudulent transfers almost always involve a transferor and a transferee who conspire to convey property. . . . [A]llowing a plaintiff to characterize a fraudulent transfer claim as a tort of

---

[3] The New Jersey Supreme Court's decision in Banco Popular North America v. Gandi, 876 A.2d 253 (N.J. 2005), relied on heavily by Plaintiff, is plainly at odds with the purpose of the UFTA, which is to preserve a debtor's assets for the benefit of its creditors, not to impose unlimited joint-and-several liability on any and all persons – including lawyers, banks, and other agents – who might assist a debtor in transferring its assets to others.

4

civil conspiracy . . . would be 'legal sophistry' that would swallow the established rule . . . .").

Plaintiff's suggestion that Florida is the only jurisdiction to bar actions against persons who assist violations of the UFTA or the closely related UFCA and bankruptcy statutes is simply untrue. Paul Hastings cited ample authority for this proposition in its moving brief. See Def.'s Br. at 5-9 & nn. 4-6. This conclusion has also been adopted by a leading treatise on the subject. See Howard J. Steinberg, Liability of Participants in Fraudulent Transfers, 2 Bankr. Litig. § 14.9 (Dec. 2003) ("Courts have been hesitant to develop theories of recovery against those who assist in making fraudulent transfers. . . . Most cases simply hold that there can be no recovery from one who aids, participates in, or conspires to affect a fraudulent transfer."). Because the Montana UFTA "must be applied and construed to effectuate the general purpose of making uniform the law with respect to the subject of this part among states enacting it," Mont. Code Ann. § 31-2-327, this authority strongly weighs against a finding of a cause of action in Montana.

The cases cited by Plaintiff do not support its argument that the State of Montana recognizes secondary liability for alleged violations of the UFTA. First, nothing in the Montana common law recognizes a cause of action in connection with a fraudulent transfer against a party other than the debtor and the transferee who received the property in question. Second, while the Montana UFTA preserves pre-existing "principles of law and equity," Mont. Code Ann. § 31-2-342, nothing in the statute indicates that liability should attach to anyone other than a party to the alleged fraudulent transfer. Plaintiff's citation to Gulf Insurance Co. v. Clark, 20 P.3d 780 (Mont. 2001), for the proposition that the Montana UFTA preserves every cause of action pre-dating the UFTA or its

predecessor, the UFCA, is unavailing. In construing Section 31-2-342, <u>Gulf Insurance</u> observed only that an aggrieved creditor had other causes of action – such as an injunction, a writ of attachment, a constructive trust, and an equitable lien – against the parties to the fraudulent transfer, but only those parties, <u>id.</u> at 786-87; that case did not say that Section 31-2-342 operated so as to preserve any cause of action against those who were not parties to the allegedly fraudulent transfer.

Third, Plaintiff seriously misconstrues <u>Raymond v. Blancgrass</u>, 93 P. 648 (Mont. 1908), the single, century-old case it cites for the proposition that Montana common law recognizes a cause of action for "conspiracy to defraud creditors." Pl.'s Br. at 6.[4] First, that case, which pre-dates both the UFTA and its predecessor, the UFCA, concerned a suit against third-party transferees – not non-parties like Paul Hastings – who personally converted the debtor's property with knowledge that the plaintiff had a separate suit pending against the debtor. 93 P. at 650-51. In other words, <u>Raymond</u> acknowledged that there may be a cause of action against a transferee who wrongfully obtains a debtor's property – the very cause of action later enshrined in the UFCA and UFTA. Second, Plaintiff's deceptively selective quotation ignores the actual holding of the case, which reversed the judgment against the defendants because the plaintiff failed to state a claim. The court held:

> [T]he action cannot be maintained unless the plaintiff, by judgment, execution, or attachment, has secured a lien upon the particular property, and thus has a vested right therein which has been rendered nugatory by the acts of the defendant, the plaintiff thereby having sustained a specific injury different from the suffered by other creditors. In other words, in order to warrant a recovery, the plaintiff must allege and show that he had

---

[4] Tellingly, <u>Raymond</u> has not been cited for any point of law in any published decision by any Montana court since 1953, nor by any other court since 1958.

6

> a specific right to subject the particular property to the satisfaction of his judgment, and that the defendant, either alone or with others, has deprived him of this right.  Otherwise a recovery would be had upon the plaintiff's bare chance to have satisfaction of a claim which he possessed in common with other creditors—a wrong too remote, indefinite, and contingent to be the ground of an action. . . .
>
> It thus appears that under the general rule established by the great weight of authority in this country, although it is made clearly to appear that the defendant has willfully become a party to a conspiracy to defeat the judgment of the creditor, such a creditor has no cause of action against him, unless he can show that he has suffered some specific injury different from that suffered by the other creditors.

Id. at 651-52.  This unequivocal holding belies Plaintiff's argument that in addition to the causes of action found in the UFTA, Montana recognizes a general cause of action, applicable to non-parties, for "conspiracy to defraud creditors."[5]  Section 31-2-342 may preserve the claim delineated in Raymond, but as Plaintiff has no specific right to Clark Fork's former assets, it also has no cause of action against Paul Hastings for conspiracy to defraud it.

Finally, the cases cited by Plaintiff for the proposition that a violation of the Montana UFTA can give rise to a cause of action for conspiracy against a non-party to the allegedly fraudulent transfer are similarly inapposite.  Biering v. Ringling, 240 P. 829 (Mont. 1925), concerned neither the fraudulent transfer of assets by a debtor nor the

---

[5] Plaintiff cites Farmers Plant Aid, Inc. v. Fedder, 999 P.2d 315 (Mont. 2000), for the proposition that Montana later abolished the prior lien requirement so forcefully stated in Raymond.  However, Farmers Plant Aid and the authority cited therein concerned suits brought pursuant to the Montana UFCA, not common law claims for aiding and abetting or conspiracy, and expressly held that there was no lien requirement for claims under the UFCA.  Id. at 319.  Moreover, neither Farmers Plant Aid nor the leading case upon which it relied cite Raymond or its holding.  Consequently, Section 31-2-342 of the Montana UFTA – which concerns principles of law and equity outside the terms of the act but does not provide rules of construction for the act itself – does not apply.  Raymond may be an irrelevant anachronism contrary to the weight of modern authority, but neither has it been expressly overruled.  Therefore, if Plaintiff wishes to rely on Raymond for the proposition that, before the UFTA, Montana courts recognized a common law claim for "conspiracy to defraud creditors" – even though Raymond did not involve a claim against a non-party like Paul Hastings – then Plaintiff must take the good with the bad and accept that that claim, if it exists, carries with it a prior lien requirement.

7

liability of a non-party like Paul Hastings for aiding and abetting or conspiracy. Likewise, Neset v. Fifer, 942 P.2d 712 (Mont. 1997), did not decide whether a conspiracy charge could stand against a non-party like Paul Hastings in connection with another's alleged violation of the Montana UFTA. Instead, Neset merely concerned the existence of a "purchase money resulting trust" in a real estate dispute between former domestic partners and, peripherally, whether such a trust was created for an improper purpose. In short, Plaintiff can find no authority for its "theory" that it can salvage a non-cognizable claim under the Montana UFTA by converting that claim into one for conspiracy.

II. PLAINTIFF LACKS STANDING TO BRING DERIVATIVE CLAIMS BECAUSE IT HELD NO EQUITY IN CLARK FORK AND HAD NO INTEREST IN THE COMPANY WHEN THE ALLEGED FRAUD OCCURRED.

Plaintiff's argument that it has standing to pursue derivative claims against Paul Hastings cannot be sustained. As set forth in Paul Hastings' moving papers, Plaintiff lacks standing to assert derivative claims for breach of fiduciary duty and malpractice because (a) Montana law authorized derivative lawsuits against limited liability company only by shareholders, not creditors;[6] and (b) even if a creditor were entitled to sue on the company's behalf, the would-be plaintiff must be a creditor <u>at the time of the transaction of which the plaintiff complains</u>.

---

[6] Notably, Plaintiff does not challenge the Delaware Chancery Court's ruling in Production Resources Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772 (Del. Ch. 2004) (cited in Def.'s Br. at 10-11), which held that a creditor's claims for breach of fiduciary duty are derivative, and do not become direct creditor claims even if a company is in the "zone of insolvency." Thus, Plaintiff's claim against Paul Hastings for aiding and abetting a breach of fiduciary duty must be treated as a derivative claim on behalf of Clark Fork, <u>not</u> a direct creditor claim. See also Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb, 385 F. Supp. 2d 449, 463-64 (D. Del. 2004) (following the Delaware Chancery Court's ruling in Production Resources and observing that creditor claims for breach of fiduciary duty are derivative in nature).

Both of these requirements are to be found in the Montana Limited Liability Company Act, Mont. Code Ann. § 35-8-1104, which Plaintiffs dismiss as irrelevant because it "says nothing about the rights of creditors." Pl.'s Br. at 9.  However, that is precisely the point:  If the statute explains who may bring a derivative suit on behalf of an LLC and the requirements for doing so, and is silent as to the derivative rights of creditors, then ipso facto creditors like the Plaintiff may not bring a suit like the one before this court.

Furthermore, Plaintiff fails to acknowledge the "contemporaneous ownership" requirement for derivative suits, much less offer any authority that would deny its application here.  The strong public policy against strike suits – where, as here, a would-be plaintiff acquires securities after the event complained of, in hopes of reaping an undeserved windfall – demands that an action be dismissed where, as here, the plaintiff only acquired its interest in the company after the cause of action accrued and with full knowledge of the facts and circumstances giving rise to the cause of action.  See Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.), 320 F.3d 291, 297 (2d Cir. 2003) ("The main purpose of this… rule is to prevent courts from being used to litigate purchased grievances.").  Moreover, what is the rule for equity holders, see Mont. Code Ann. § 35-8-1104(2)(a), should clearly be the rule for creditors, whose relationship to the corporation and whose ability to represent its interests are far more attenuated.[7]

---

[7] Plaintiff's contention that this Court should follow the holdings of two other courts in related matters conveniently ignores the fact that both of those courts were addressing different issues.  First, the Delaware Bankruptcy Court's decision of August 20, 2004, involved a direct action against NorthWestern, not a derivative action.  Thus, the issue of Plaintiff's standing to maintain a derivative action was neither presented to nor decided by the Bankruptcy Court, and the court's decision has no bearing on this case.

Similarly, Plaintiff's action against the Clark Fork officers in Montana District Court involved direct claims against those officers as alleged creditors of Clark Fork, not derivative claims on behalf of (…continued)

9

Plaintiff also insists that it is entitled to maintain a derivative suit pursuant to Section 610 of the Indenture. This reasoning is flawed for two principal reasons. First, as set forth in Paul Hastings' initial papers, while the Indenture may allow Plaintiff, under appropriate circumstances, to bring an action on behalf of the QUIPS trust, it does <u>not</u> give Plaintiff the right to bring derivative claims on behalf of Clark Fork. Second, Section 610 does not represent a free-standing source of authority pursuant to which Plaintiff can bring any conceivable lawsuit. Rather, Section 610 allows a QUIPS holder like the Plaintiff to sue in the name of the trust "<u>to the fullest extent permitted by law</u>." Notably, the Montana Limited Liability Company Act does not allow a plaintiff to bring suit where it is merely a creditor of a Montana LLC and/or does not satisfy the "contemporaneous ownership" rule embodied in Mont. Code Ann. § 35-8-1104(2)(a). Simply put, the law does <u>not</u> permit Plaintiff to maintain a derivative action against Paul Hastings. Accordingly, Paul Hastings' motion should be granted.

---

(continued...)
Clark Fork. Thus, that decision does not speak to Plaintiff's standing to pursue a derivative action on Clark Fork's behalf against Paul Hastings. Moreover, the strength of the Montana District Court's decision is severely undermined by its failure to address, much less distinguish, Mont. Code Ann. § 35-8-1104(2)(a), the section of the Montana Limited Liability Company Act imposing a contemporaneous ownership requirement on those who would pursue a derivative action.

## CONCLUSION

For the reasons set forth above, Paul Hastings respectfully requests that the Court enter a judgment on the pleadings dismissing Magten's claims against Paul Hastings with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Robert J. Dehney (#3578)
Curtis S. Miller (#4583)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
   Attorneys for Defendant Paul, Hastings,
   Janofsky & Walker LLP

OF COUNSEL:

Dennis E. Glazer
Paul Spagnoletti
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

June 2, 2006