IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORP. and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>: Civil Action No. 04-1494-JJF<br>:<br>:<br>:<br>:<br>: |
| MAGTEN ASSET MANAGEMENT CORP.,<br><br>Plaintiff,<br><br>v.<br><br>MIKE J. HANSON and ERNIE J. KINDT,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>: Civil Action No. 05-499-JJF<br>:<br>:<br>:<br>: |
| MAGTEN ASSET MANAGEMENT CORP<br>Suing individually and derivatively on behalf<br>of CLARK FORK and BLACKFOOT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PAUL HASTINGS JANOFSKY & WALKER LLP,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>: Civil Action No. 04-1256-JJF<br>:<br>:<br>:<br>:<br>: |

**JOINT RESPONSE OF DEFENDANTS NORTHWESTERN CORPORATION, MICHAEL J. HANSON AND ERNIE J. KINDT TO THE MOTION OF PLAINTIFFS MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK TO COMPEL PRODUCTION OF DOCUMENTS AND FOR EXPENSES**

Defendants NorthWestern Corporation ("NorthWestern"), Michael J. Hanson ("Hanson") and Ernie J. Kindt ("Kindt") (collectively the "NorthWestern Defendants"), by and through their

counsel, respond to the motion of plaintiffs Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York ("Law Debenture" and together with Magten the "Plaintiffs") pursuant to Rules 34 and 37 of the Fed. R. Civ. P. to compel the NorthWestern Defendants to produce documents "immediately" and for the payment of expenses. In responding to that motion the NorthWestern Defendants state as follows:

## BACKGROUND

1.  Plaintiffs' motion is based on a misleading and incomplete recitation of the procedural history of this action and allegations that documents have not been produced which were not even requested at the time of the motion. Plaintiffs demand production of all responsive documents "immediately" notwithstanding that the NorthWestern Defendants have been producing, and continue to produce, voluminous documents and that over four months remain in the six-month schedule for fact discovery established by this Court's Rule 16 Scheduling Order. The motion is frivolous and part of Plaintiffs' strategy to force NorthWestern to settle a lawsuit in which it has no financial stake by making it exorbitantly expensive to defend. The motion should be denied and the NorthWestern Defendants should be awarded their costs and expenses, including attorneys fees, incurred in responding to the motion in accordance with Fed. R. Civ. P. 37(a)(4)(B).

2.  Plaintiffs recite an incomplete history of this litigation and imply that the NorthWestern Defendants have somehow failed in their discovery obligations for eleven months because the First Request for Production of Documents is dated January 24, 2006. The fact is that those Requests were stayed by operation of Local Rule 30.2 when NorthWestern timely filed its motion for a Protective Order on February 2, 2006. As of that date the Court had not entered

a Scheduling Order pursuant to Fed. R. Civ. P. 16(b). NorthWestern sought to focus discovery on the one issue it believed to be relevant to Plaintiffs' claims – whether the Indenture Trustee was defrauded into executing documentation which transferred the obligations relating to certain debt securities called QUIPS to NorthWestern from its subsidiary Clark Fork and Blackfoot LLC.[1] If NorthWestern's motion were successful it would have obviated every one of Plaintiffs' requests.

3. The Court denied NorthWestern's motion for a Protective Order on September 29, 2006. Thereafter on October 13, 2006 the parties held a teleconference to discuss the planning of discovery and related matters as required by Fed. R. Civ. P. 26(f).[2] During that conference, counsel for NorthWestern stated that document production would be voluminous and would be made on a rolling basis. Counsel for the Plaintiffs did not object. However, the parties were unable to reach agreement on a schedule for discovery and thereafter communicated to the Court their competing schedule requests. Plaintiffs demanded an expedited discovery schedule which would have required the defendants in these three consolidated actions to complete all fact discovery by February 28, 2007. (Delaney Decl. Ex. B.) The Court entered its Rule 16 Scheduling Order on November 2, 2006. That Order rejected Plaintiffs' request and instead provided that "all fact discovery shall be commenced so as to be completed by May 2, 2007." (Steingart Decl. Ex. I.) The NorthWestern Defendants have been, and continue to be, in compliance with that Order. Indeed, pursuant to the Fed. R. Civ. P. 26(d), Plaintiffs were barred from seeking any discovery before the Rule 26(f) conference of October 13, 2006.

---

[1] A concise discussion of the pleadings in this matter and the basis for NorthWestern's motion to focus discovery can be found at pages 4 through 6 of NorthWestern's Memorandum of Law in support of its Motion for a Protective Order which is attached as Exhibit A to the Delaney Declaration.

[2] Significantly, Fed. R. Civ. P. 26(d) provides that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."

4. On October 27, 2006, the NorthWestern Defendants served their Responses to Plaintiffs' First Request for Production of Documents, including objections. (Delaney Decl. Ex. C.) On or about November 9, 2006, the NorthWestern Defendants began their rolling production of documents to Plaintiffs with a production of over 10,200 pages of material. On November 20, 2006, the parties held a teleconference in an effort to narrow the differences between them posed by the NorthWestern Defendants' objections to certain Requests. During that conference the NorthWestern Defendants agreed to withdraw their blanket objections to certain of the Plaintiffs' Requests, undertook to produce documents on behalf of its subsidiary, Clark Fork and Blackfoot, LLC and thus relieve Plaintiffs of the necessity of serving a separate subpoena on that non-party, and represented that the production of documents by NorthWestern would include production from defendants Hanson and Kindt. (Steingart Decl. Ex. M.) The parties also agreed to attempt to negotiate a stipulation concerning the value of the assets transferred and the consideration paid in the "going-flat" transaction which is the basis for Plaintiffs' claims. Such a stipulation would eliminate the need to respond to a significant number of the outstanding Requests. Id. Plaintiffs undertook to prepare an initial draft of that stipulation. Plaintiffs' counsel also undertook to copy counsel for the NorthWestern Defendants on all correspondence with non-parties regarding subpoenas and the production of documents from those non-parties. Id. During the conference, counsel for Plaintiffs pressed for a date certain when all document production would be completed. Counsel for the NorthWestern Defendants responded that is was impossible to give any date certain but that work was proceeding diligently so as to provide Plaintiffs with ample time to complete the ten depositions to which they are entitled under the Court's Rule 16 Scheduling Order. (*See* Delaney Decl. Ex.C.)

5.       On December 4, 2006, counsel for Plaintiffs wrote to NorthWestern's counsel. This letter did not contain or attach the proposed stipulation which Plaintiffs' counsel undertook to draft. Rather, the letter insisted that the NorthWestern Defendants commit to an absolute deadline for the completion of document production and, for the first time, suggested that the NorthWestern Defendants should produce all documents turned over to the SEC in its investigation of NorthWestern, as well as documents produced to other government agencies and to the plaintiffs in another completely unrelated lawsuit, *McGreevey et al. v. Montana Power Company, et al.* (referred to as the McGreevey II case).[3] (Steingart Decl. Ex. O.)

6.       Counsel for NorthWestern responded on December 11, explaining that no date certain could be set for the completion of document production in light of, *inter alia*, the failure of the parties to agree on, or even have a draft of, the proposed stipulation and other outstanding discovery issues. With respect to the request for all documents produced to the SEC, counsel for NorthWestern stated that all such documents which were relevant, called for by Plaintiffs' Requests and not privileged would be produced. Furthermore, counsel advised that no documents produced to the McGreevey II plaintiffs involved the "going-flat" transaction at issue in the instant litigation. (Steingart Decl. Ex. P.)

7.       Plaintiffs' counsel responded on December 14 by demanding the production of all documents turned over to the SEC (documents which were not called for by any Rule 34 document request) and by threatening to inform the Montana Public Service Commission

---

[3]  The case was originally commenced in the Montana Second Judicial Court, Butte- Silver Bow County as Cause No. DV-05-199 but was removed to Federal District Court on September 7, 2005 and is now pending in the United States District Court for the District of Montana, Butte Division as Cause No. CV-05-62-BU-SEH.

("MPSC")[4] of the discovery dispute in an attempt to bring extra judicial pressure to bear on the NorthWestern Defendants. (Steingart Decl. Ex. O.)

        8.     The response of NorthWestern's counsel to this letter, conveniently omitted from Plaintiffs' motion papers, came the next day, December 15, 2006. (Delaney Decl. Ex. C.) It made clear that NorthWestern could not commit to a date certain for the completion of document production because not only was there uncertainty over whether there would be a stipulation which would eliminate the need to respond to multiple requests, but because the sweeping scope of Plaintiff's' Requests required the time consuming task of reviewing hundreds of thousands of pages of documents for relevance and privilege. The letter also assured that "we are working diligently to insure document production is completed so that Magten has sufficient time to take the limited number of depositions to which it is entitled under Judge Farnan's Rule 16 Order before fact discovery is cutoff four and a half months hence." The letter also took issue with Plaintiffs' stance on documents which NorthWestern had provided to the SEC, repeating that relevant non-privileged documents called for by the extant Requests would be produced and disputing Plaintiffs' view that all documents turned over to the SEC must be relevant in this case because of Judge Case's reference to Plaintiffs' fraud theory. As stated in that letter:

> It's obvious that any "fraud" has to relate to the Going-Flat Transaction which is the basis of Magten's claims. Although we have repeatedly asked you what "fraud" you allege in connection with that transaction, you have simply repeated the sole allegation contained in the amended complaint, namely that the Indenture Trustee relied on NorthWestern's financials in executing the Third Supplemental Indenture which released Clark Fork of any liability on the QUIPS. As far as I am aware, this allegation of "fraud", if indeed the allegation even rises to that level, was not the subject of any inquiry or interest by the SEC.

---

[4] The MPSC is undertaking a regulatory review of NorthWestern's sale of its shares to Babcock & Brown Infrastructure Limited ("BBI").

Finally, the letter made clear that any motion to compel which would be made by Plaintiffs would be meritless and that the NorthWestern Defendants would seek to recover costs and attorneys fees if forced to respond to such a motion. Id.

9. Since this last exchange of correspondence, NorthWestern Defendants have continued to comply diligently with their discovery obligations. Tens of thousands of documents have been reviewed for relevance and privilege. (Delaney Decl. ¶6.) On December 18, 2006, the NorthWestern Defendants produced to counsel for Plaintiffs 14,333 pages of documents. On December 21, 2006, another 10,274 pages were produced. On January 4, 2007, an additional 8,269 pages were produced and on January 5, 2007, another 2,331 pages were produced for a total of 45,476 pages of documents produced as of the date of this Response. (Delaney Decl. ¶7.) Review and production of documents continue and every effort is being made to complete document production in a timely fashion.

10. Plaintiffs' conduct, however, is in marked contrast to that of the NorthWestern Defendants. As of the date hereof, Plaintiffs have still not provided the draft of the possible stipulation on the values associated with the going-flat transaction, despite having undertaken to do so more than six weeks ago. Plaintiffs' counsel has not kept the NorthWestern Defendants apprised of contacts with subpoenaed non-parties. Indeed, counsel for NorthWestern has recently discovered that on or about December 14, 2006, Houlihan Lokey Howard & Zukin Financial Advisors Inc. ("Houlihan Lokey") produced 4,712 pages of documents to Magten's counsel in response to a subpoena. That information came from counsel to Houlihan Lokey. Plaintiffs failed to provide copies of these documents to the NorthWestern Defendants or even to inform them that the production occurred. In addition, it should be noted that Plaintiffs also served at least four other third parties with subpoenas compelling the production, Plaintiffs have

neglected to inform the NorthWestern Defendants whether any production has been received from these other third parties and, if any such production has in fact occurred, Plaintiffs have failed to provide copies of these documents to the NorthWestern Defendants.

11. Plaintiffs have also made good on their threat to seek to interfere in the MPSC regulatory approval of the sale of NorthWestern shares to BBI. Notwithstanding that this lawsuit and Plaintiffs' ultimate ability to collect on any judgment have nothing to do with, and are unaffected by, the post-petition sale of shares of new NorthWestern, Plaintiffs have gratuitously injected themselves into that process. This is an obvious effort to bring extra judicial pressure to bear on NorthWestern, both in terms of this motion and also to leverage a settlement totally unrelated to the merits of Plaintiffs' claims. (*See* Delaney Decl. Ex. E.)

12. Moreover, a few days before Christmas, in a not-so-thinly-veiled attempt to bring additional pressure on the NorthWestern Defendants, Magten threatened Hanson, as well as his professional advisors, with new litigation. In its December 20 letter, Magten asserts it is "a major creditor of Mr. Hanson" and warns that Hanson's "personal damages exposure to Magten is in the tens of millions of dollars, which may exceed his ability to pay even when augmented by any available insurance coverage not yet exhausted by other claims." Magten also plainly stated it will not hesitate to initiate new litigation against Hanson, his beneficiaries, and his legal and financial advisors, in the event Hanson attempts to make any gifts of his assets which Magten believes might be "prejudicial to Mr. Hanson's creditors." (Delaney Decl. Ex. F.) The content, tone and timing of this letter could only have been meant to send a direct message to, and pressure Hanson into, forcing a settlement of these cases.

13. Finally, Plaintiffs have now served a Second Request for Production of Documents on NorthWestern seeking for the first time the production not only of the documents

provided to the SEC but all documents provided to the Department of Justice, the MPSC, the Montana Consumer Counsel as well as all documents involved in discovery in the McGreevey II case, whether or not those documents are relevant to the issues in this action. (Delaney Decl. Ex. G.) NorthWestern will respond to these additional Requests in due course. They are mentioned here only to illustrate the continuing course of conduct of the Plaintiffs, including this motion, which is designed solely to harass and vex the NorthWestern Defendants rather than to serve any legitimate discovery interests these Plaintiffs may have.

## ARGUMENT

14.  Plaintiffs' entire motion is based on the unsupported, and unfounded, assertion that in order to have a "fair opportunity" to review the documents produced by the NorthWestern Defendants, all responsive documents must be produced "immediately." (Plaintiffs Motion at ¶26.) This assertion is absurd. In the first instance, Plaintiffs have already received 45,476 pages of documents from the NorthWestern Defendants, and an additional 4,712 pages of documents from Houlihan Lokey and potentially thousands of documents from the other non-parties upon whom they served subpoenas. Production is continuing and Plaintiffs are, and will be, receiving substantial additional documents. Furthermore, there are still four months left for the completion of fact discovery, more than enough time to afford Plaintiffs the opportunity to review the documents produced and take the ten depositions permitted by the Court's Rule 16 Scheduling Order.

15.  While Plaintiffs have completely failed to show how they have suffered any prejudice as a result of the pace of document production, it is clear that an order that all documents be produced "immediately" would place an impossible burden on the NorthWestern

Defendants. As stated above, there are tens if not hundreds of thousands of pages of documents that must be carefully reviewed for both relevance and privilege before they can be produced. That exercise is ongoing and is being pursued diligently. It is clearly impossible to produce all responsive documents "immediately" and Plaintiffs know it. The very relief requested, and the circumstances of this motion to compel made in the face of an existing production of over 45,476 documents, exposes the motion as meritless and no more than a continuing attempt by the Plaintiffs to vex and harass the NorthWestern Defendants.

16. Not only is the motion frivolous, but Plaintiffs have the temerity to request relief from that provision of the Court's Rule 16 Scheduling Order limiting the parties to two Rule 37 motions. (*See* Order at ¶ 3(g), Steingart Decl. Ex.. I.) Plaintiffs give no reason why they should be given such relief and indeed the nature of their motion demonstrates that the request should be denied. The purpose of this provision of the Order is no doubt to discourage the parties from engaging in the very tactic employed by Plaintiffs here and to encourage the Parties use of Rule 37 judiciously and only in those circumstances where a true dispute exists and real prejudice to a party is occurring. Those circumstances are not present here. Plaintiffs have shown no prejudice to them. Plaintiffs have not taken issue in this motion with any of the objections the NorthWestern Defendants have raised to their Requests, or with any other discovery issue at all, other than their self-professed need to get every responsive document "immediately." Having chosen to use one of their two Rule 37 motions so frivolously, Plaintiffs should not be given additional opportunities to burden the NorthWestern Defendants, and this Court, with additional frivolous and vexation litigation over discovery issues.

17. Finally, not only should this motion be denied, but the NorthWestern Defendants should be awarded their reasonable expenses incurred in opposing this motion, including

attorneys fees, in accordance with Fed. R. Civ. P. 37(a)(4)(B). There can be no doubt that the Plaintiffs were not "substantially justified" in making this motion. The award of expenses and attorneys fees to the NorthWestern Defendants is clearly appropriate in these circumstances and a necessary deterrent to the Plaintiffs' continuing their harassing litigation tactics.

WHEREFORE, the NorthWestern Defendants request that Plaintiffs' motion to compel the production of documents and for expenses be denied.

Dated: Wilmington, Delaware
January 5, 2007

**GREENBURG TRAURIG LLP**

*/s/ Victoria W. Counihan*
Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360

and

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
Joseph D. Pizzurro
Nancy E. Delaney
101 Park Avenue
New York, NY 10178
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

Counsel for NorthWestern Corporation

Dated: January 5, 2007

Edwards Angell Palmer & Dodge LLP

Denise Seastone Kraft (No. 2778)
919 North Market Street
15th Floor
Wilmington, DE 19801
Telephone: (302) 425-7106

and

Stanley T. Kaleczyc
Kimberly A. Beatty
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624
Telephone: (406) 443-6820

Counsel to Michael J. Hanson And Ernie J. Kindt