*EXHIBIT A*

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, | : : : | |
| Plaintiffs, | : : | C.A. No. 04-1494-JJF |
| v. | : : | |
| NORTHWESTERN CORPORATION, | : : | |
| Defendant. | : : | |
| MAGTEN ASSET MANAGEMENT CORPORATION, | : | |
| Plaintiff, | : : | |
| v. | : : | |
| PAUL HASTINGS JANOFSKY & WALKER LLP, | : : | C.A. No. 04-1256-JJF |
| Defendant. | : | |
| MAGTEN ASSET MANAGEMENT CORPORATION, | : | |
| Plaintiff, | : : | |
| v. | : : | |
| MIKE J. HANSON & ERNIE J. KINDT, | : : | C.A. No. 05-0499-JJF |
| Defendants. | : | |

## DEFENDANT NORTHWESTERN CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER

Dated: February 2, 2006

**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**

Joseph D. Pizzuro, Esq.
Steven J. Reisman, Esq.
Nancy E. Delaney, Esq.
Miriam K. Harwood, Esq.
101 Park Avenue
New York, New York 10178-0061
Tel: (212) 696-6000
Fax: (212) 697-1559

**GREENBERG TRAURIG, LLP**

Victoria Counihan, Esq. (No. 3488)
Dennis Meloro, Esq. (No. 4435)
The Nemours Building
1007 Northwestern Orange Street
Suite 1200
Wilmington, Delaware 19801
Tel: (302) 661-7000
Fax: (302) 661-7360

Co-Counsel for Defendant NorthWestern Corporation

2686958v4

NorthWestern Corporation ("NorthWestern"), defendant in the above-captioned action styled *Magten Asset Management Corp. et al. v. NorthWestern Corp.*, C.A. 04-1494-JJF (the "Magten/NorthWestern Action"), by and through its counsel, Greenberg Traurig, LLP and Curtis, Mallet-Prevost, Colt & Mosle LLP, hereby moves, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, for a Protective Order limiting discovery sought by Plaintiffs Magten Asset Management Corp. ("Magten") and Law Debenture Trust Company of New York ("Law Debenture") (collectively, "Plaintiffs") in connection with the Magten/NorthWestern Action and the other above-captioned actions (collectively, the "Consolidated Actions").

## PRELIMINARY STATEMENT

NorthWestern seeks to structure an efficient and expeditious resolution of the Magten/NorthWestern Action which will avoid putting NorthWestern and its shareholders to the considerable and unnecessary expense of what otherwise promises to be a protracted and expensive litigation. Resolution of the Magten/NorthWestern Action will also advance the resolution of the two other Consolidated Actions now pending before this Court, as they involve claims against NorthWestern's officers, directors and attorneys which are derivative of the core claims asserted against NorthWestern.

By this Motion, NorthWestern asks the Court to require Plaintiffs to focus their discovery on the key relevant issue presented in this case - whether, in the context of the "Going Flat Transaction," The Bank of New York as Indenture Trustee was defrauded into executing the Third Supplemental Indenture which replaced Clark Fork LLC ("Clark Fork") as obligor on the securities known as the "QUIPS." Based upon the existing rulings in this case, in which the Bankruptcy Court already dismissed the core of the claims alleged in Plaintiffs' complaint, unless Plaintiffs can show such fraud, their claims cannot go forward.

A protective order is especially justified in this case. The alternative to the limitation on discovery which NorthWestern requests is the broad, wide-ranging discovery which Plaintiffs seek in the Consolidated Actions. More than thirty witnesses are listed in Plaintiffs' Initial Disclosures as individuals from whom they will seek deposition testimony. Plaintiffs have served broad document requests upon NorthWestern and the other defendants, seeking hundreds of thousands of pages of documents. Plaintiffs have also subpoenaed NorthWestern's accountants and financial advisers involved in its Chapter 11 bankruptcy case, and seeks both the production of documents and deposition testimony. None of that discovery is relevant to the Plaintiffs' one surviving claim.

## BACKGROUND

Understanding the basis for NorthWestern's motion requires a brief explanation of the Magten/NorthWestern Action and the rulings by the Bankruptcy Court which have already severely limited Plaintiffs' claims.

### The Genesis of the Magten/NorthWestern Action

Plaintiffs each filed a Proof of Claim against NorthWestern's bankruptcy estate in or about January 2004 (the "QUIPS Claims"), asserting that a pre-petition transaction in which substantially all of the assets of a NorthWestern subsidiary, Clark Fork, were transferred to NorthWestern, in exchange for NorthWestern's assumption of its liabilities (the "Going Flat Transaction"), constituted a fraudulent conveyance. Plaintiffs then commenced an Adversary Proceeding against NorthWestern in the Bankruptcy Court in April 2004 (the "Adversary Proceeding"), asserting that the Going Flat Transaction was a fraudulent conveyance, and seeking to: (1) avoid the transfer of assets; (2) declare that those assets were not property of the estate; and (3) impose a constructive trust upon those assets on behalf of the QUIPS holders.

Despite Plaintiffs' objections to Confirmation of NorthWestern's Chapter 11 Plan, which Plaintiffs argued improperly relied upon the assets transferred by Clark Fork to NorthWestern, the Bankruptcy Court confirmed the Plan, and NorthWestern emerged from bankruptcy as of November 1, 2004. However, under the Plan, a reserve of shares of the Reorganized Debtor was set aside in the Disputed Claims Reserve to cover a potential recovery in the event the QUIPS claimants succeeded in obtaining final judgment in their favor in litigating their claims against the estate. This Court withdrew the reference from the Bankruptcy Court in the Magten/NorthWestern Action on September 22, 2005.

### Plaintiffs' Sole Surviving Claim in the Magten/NorthWestern Action

Plaintiffs' original claim against NorthWestern was that the November 2002 Going Flat Transaction constituted a fraudulent conveyance. Plaintiffs alleged that the value of the assets received by NorthWestern substantially exceeded the amount of liabilities assumed and that the transaction rendered Clark Fork insolvent. Of course, Plaintiffs' claims were entirely predicated on their alleged status as creditors of Clark Fork. If in fact they had become creditors of NorthWestern as a result of the transaction, they had no claim. This was precisely the basis of NorthWestern's motion to dismiss the Adversary Proceeding in the Bankruptcy Court.

In August 2004, the Bankruptcy Court dismissed Plaintiffs' fraudulent conveyance claims, holding that as a result of the Going Flat Transaction, Clark Fork was released from all liability under the QUIPS, which had been assumed by NorthWestern, and therefore Plaintiffs lacked any standing to sue.[1] The Bankruptcy Court allowed, however, the

---

[1] *Magten Asset Management Corp. and Law Debenture Co. of New York v. NorthWestern Corp.*, Adv. Pro. No. 04-53324 (U.S. Bankruptcy Court, District of Delaware), Under Advisement Decision dated August 20, 2004, at pp. 10-11 (Docket No. 25) (Hon. Charles G. Case). A copy of the Bankruptcy Court's decision is attached as Exhibit 1 to the Affidavit of Joseph D. Pizzurro ("Pizzurro Affidavit"), dated February 2, 2006, submitted contemporaneously

2686958v4

Plaintiffs to pursue a theory that the release of Clark Fork had been induced by fraud because the

Trustee had relied on NorthWestern's allegedly misleading financial statements.[2] Thus,

Plaintiffs were left with a common law claim for fraud in the inducement.

     The problem is that this claim has never been pled. It is not in the original

Complaint. Its genesis appears to be in Plaintiffs' briefs in opposition to NorthWestern's motion

to dismiss. Plaintiffs' subsequent First Amended Complaint, its last and only surviving pleading

in this case, inexplicably fails to plead the only claim which survived the Bankruptcy Court's

decision. The First Amended Complaint simply reasserts the same dismissed causes of action,

adding only a claim that the Going Flat Transaction should be void as a violation of the Public

Utility Holding Company Act of 1935 ("PUHCA").[3] The only attempt at a fraud allegation is

contained in paragraph 68 of the First Amended Complaint, wherein Plaintiffs allege: "The

Third Supplemental Indenture…was executed by BNY in reliance upon [NorthWestern's]

fraudulent financial statements, while [NorthWestern] hid its true financial condition from BNY

and from its investors." This sole and perfunctory allegation is all that is left of Plaintiffs' case.

## The Limited Discovery Applicable to Plaintiffs' Surviving Claim

     Putting aside the substantial deficiencies of Plaintiffs' pleadings, in order to prove

fraud, Plaintiffs must establish that The Bank of New York as Indenture Trustee relied on

---

herewith.

[2] Even this last thread which has kept Plaintiffs' case from being dismissed in its entirety is untenable under the terms of the relevant contractual documents and undisputed facts. Under the terms of the Indenture, the only required representation that relates to the financial condition of a new obligor assuming the QUIPS was that "immediately after giving effect to such transaction no event of default with respect to the [QUIPS] shall have occurred and be continuing." This representation was made to the Indenture Trustee and it was true in all respects. There was no immediate event of default and in fact NorthWestern continued to perform its obligations to the QUIPS holders for ten months until it filed its Chapter 11 Petition in September 2003. In short, NorthWestern's financial statements were wholly irrelevant to any representations which the Indenture Trustee received, or to which it was entitled, in connection with the release of Clark Fork. The fact is that the Plaintiffs, through their supposed fraud claim, seek greater protection than that to which they were entitled under the terms of their own contract.

[3] This claim was effectively dismissed by the Order of the Bankruptcy Court confirming NorthWestern's Plan of Reorganization. If that Order is affirmed by this Court, the PUHCA claim will not survive.

NorthWestern's financial statements when it executed the Third Supplemental Indenture.[4] But, in fact, The Bank of the New York has already taken the position that it was not required to examine NorthWestern's financials and was entitled to rely solely on the documentation required by, and presented to it in accordance with, the provisions of the Indenture. The Bank of New York took this position on its motion to dismiss the action commenced against it by Magten in the Delaware Chancery Court in March 2005 (*Magten Asset Management Corp. v. Bank of New York, et al.*, C.A. No. 1219-N), wherein Magten alleged that The Bank of New York had violated its duties as Indenture Trustee by executing the Third Supplemental Indenture. Upon considering The Bank of New York's arguments, the Chancellor gave Magten the choice of amending its complaint, withdrawing it without prejudice, or face dismissal. Magten withdrew the complaint in September 2005.

Given the foregoing, the only discovery required to dispose of the instant action is discovery from The Bank of New York to determine whether in fact the Indenture Trustee was defrauded in connection with the execution of the Third Supplemental Indenture. All other discovery in the case should be stayed pending a resolution of a motion for summary judgment following discovery from The Bank of New York.

## ARGUMENT

Rule 26(c) empowers the court to issue protective orders "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The protective order may direct, *inter alia,* that "the disclosure or discovery not be had" or "that certain matters not be inquired into, or that the scope of the

---

[4] Magten acquired its QUIPS well after the transfer of Clark Fork's assets to NorthWestern in the Going Flat Transaction. Thus, Magten has no fraud claim based on its own acquisition of the QUIPS and has never asserted any such claim.

2686958v4

disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(1),(4). *Pearson v.*
*Miller*, 211 F.3d 57, 72-73 (3d Cir. 2000) ("a district court is empowered to issue umbrella
protective orders protecting classes of documents after a threshold showing by a party seeking
protection."). The court must apply a balancing test to assess the need for the information sought
compared to the impact or harm upon the party from whom discovery is demanded. *Pansy v.*
*Borough of Stroudsberg*, 23 F.3d 772, 787 (3d Cir. 1994).

A protective order is necessary in this case to prevent Plaintiffs from embarking
upon a fishing expedition into matters which the Bankruptcy Court has already dismissed in its
decision on NorthWestern's motion to dismiss Plaintiffs' Complaint. In *Johnson v. Mortham*,
164 F.R.D. 571, 572 (N.D. Fl. 1996), the court found that, in light of a prior decision granting
partial summary judgment, the claims asserted in the complaint had been narrowed to a single
issue, and therefore, only limited discovery relevant to that surviving issue would be allowed.
The court issued a protective order under Rule 26(c)(4) to preclude the attempt to pursue broad
discovery into matters unrelated to the sole issue remaining in the case, consistent with its
decision granting partial summary judgment. *Id.* The same justification for a protective order
exists in the Consolidated Actions.

### Plaintiffs' Discovery Requests

Ignoring the Bankruptcy Court's August 2004 Decision and the narrow basis
upon which their claims survived NorthWestern's motion to dismiss, Plaintiffs have embarked
upon a quest for full-scale discovery on a wide range of issues in the Consolidated Actions.
Plaintiffs' requests for production of documents directed to NorthWestern and the other
defendants in the Consolidated Actions, copies of which are attached to the Pizzurro Affidavit,
cover the time period January 1, 2001 to the present, and seek documents relating *inter alia*, to:
the value of the assets transferred to NorthWestern in the 2002 Going Flat Transaction, the

solvency and financial condition of NorthWestern and Clark Fork prior to and following that transaction, the due diligence conducted in connection with that transaction, the consideration paid in connection with the transaction, the accuracy of NorthWestern's publicly released financial statements at the time of the transaction, regulatory applications submitted in connection with the transaction, and the Indenture Trustee's consent and acquiescence to the transfer.[5]

Plaintiffs have also served subpoenas duces tecum upon the following third parties: Lazard Freres & Co. LLC, Arthur Andersen, LLP, Houlihan Lokey Howard & Zukin Financial Advisors, Inc., Deloitte & Touche LLP, and The Bank of New York, copies of which are attached to the Pizzurro Affidavit, and have noticed depositions of these entities. Except for The Bank of New York, the third parties subpoenaed by Plaintiffs do not have information relevant to the sole issue remaining in this case – that is, whether the release of Clark Fork was obtained by fraud. Accordingly, it is NorthWestern's position that no discovery from these third parties, other than The Bank of New York, should be permitted. In addition, the discovery which Plaintiffs seek from NorthWestern and the other defendants in the Consolidated Actions on issues unrelated to the Clark Fork release should also be precluded, at least until after the Court rules on NorthWestern's anticipated summary judgment motion.

NorthWestern believes that, once discovery from The Bank of New York is obtained, it will become apparent that this last, tenuous theory of relief, which the Bankruptcy Court – in an abundance of caution – allowed Plaintiffs to explore, is without merit.

---

[5] The broad scope of Plaintiffs' discovery requests may be demonstrated by just a few examples from their document requests, which include: "All documents relating to or concerning the Transfer [of the Clark Fork assets];" "All applications and/or documents submitted to regulatory authorities in connection with the Transfer;" and "All operating agreements for Clark Fork, or any other documents setting forth any rights, duties, and/or responsibilities of any officer, employee or agent of Clark Fork." Pizzurro Affidavit, Ex. 2, Plaintiffs' Document Requests Nos. 1, 13, 28.

2686958v4

NorthWestern is prepared to go forward with discovery from The Bank of New York, including document production and depositions, following which it intends to move for summary judgment on the issue identified in the Bankruptcy Court's decision as the sole remaining basis upon which Plaintiffs could proceed against NorthWestern, that is, whether the Clark Fork release was obtained by fraud. Allowing Plaintiffs to conduct unbridled discovery into matters unrelated to that issue, which have already been dismissed by virtue of the Bankruptcy Court's August 2004 decision, would render that decision meaningless and would undercut the narrowing of issues which NorthWestern's prior motion to dismiss accomplished. Doing so would be contrary to the interests of justice, would needlessly burden NorthWestern with overbroad and expensive discovery, and would waste this Court's resources by requiring the re-litigation of issues already determined by the Bankruptcy Court.

### NorthWestern Is A Mere Stakeholder In This Litigation

The limited discovery which NorthWestern urges in this Motion is especially justified considering the unique circumstances of this case. NorthWestern, a Reorganized Debtor, has no intrinsic economic interest in the outcome of the Magten/NorthWestern litigation. Any judgment or settlement of Plaintiffs' claims will be satisfied out of shares of NorthWestern's issued and outstanding common stock that are set aside in a Disputed Claims Reserve created under NorthWestern's Chapter 11 Plan of Reorganization for the purpose of satisfying any remaining claims against the estate. There are presently more than enough shares in the reserve to satisfy a recovery by Plaintiffs even if they recover on the full amount of their asserted claims.[6]

---

[6] There are presently over 3 million shares of NorthWestern common stock in the Disputed Claims Reserve. This represents a value of approximately $60 million at the plan value of $20 per share, which would satisfy approximately $98 million in Class 9 allowed claims, at the rate of recovery provided for under NorthWestern's Chapter 11 Plan. The actual economic value of the shares in the reserve, based on the current market price of

Under the terms of the Plan, any shares remaining in the Disputed Claims Reserve after outstanding claims are resolved can never revert to NorthWestern; rather, they must be distributed to other creditors of the bankruptcy estate, specifically, those in Class 7 and Class 9. Thus, although NorthWestern must bear the cost of defending the Magten/NorthWestern Action, it has no financial stake in the property from which Plaintiffs' claims would be satisfied.

In contrast, the Class 7 and Class 9 creditors do have a financial stake in the Disputed Claims Reserve, by virtue of their right to the distribution of any shares remaining in that reserve after resolution of outstanding claims against the estate. Those creditors, represented by the Plan Committee, have taken an aggressive stance against settling the Magten litigation, and have made it abundantly clear that they will oppose any settlement unless and until they are convinced that there is merit to Plaintiffs' claims and thus some litigation risk to support the settlement. Although NorthWestern has made numerous efforts to settle Plaintiffs' claims, the opposition of the Plan Committee has proven to be a significant obstacle, since court approval of settlements is required under the Plan and difficult to obtain over the objections of competing creditors of the estate. NorthWestern submits that the limitation on discovery sought by this motion - and the summary judgment motion NorthWestern intends to bring on the heels of that discovery - would be instrumental in bringing about an early resolution of this case. Obviously, if the Court granted NorthWestern's motion, the litigation would end; however, even if the Court denied the motion, the Plan Committee would be forced to take cognizance of the potential litigation risk presented by Plaintiffs' action, thus potentially paving the way for a settlement that does not get derailed by objections and protracted litigation over settlement approval.

---

approximately $31 per share for NorthWestern's stock, is $93 million. The Bankruptcy Court recently ordered that there are to be no distributions of surplus from the Disputed Claims Reserve until the claims of the Plaintiffs in this action have been resolved.

–10–

<u>**CONCLUSION**</u>

For the foregoing reasons, NorthWestern respectfully requests that this Court issue a Protective Order pursuant to Rule 26(c), which provides as follows: (1) that discovery in the Consolidated Actions be limited to documents and deposition testimony from The Bank of New York with respect to the issue of fraud in connection with execution of the Third Supplemental Indenture in November 2002, and the resulting release of Clark Fork from its obligations on the QUIPS; (2) that all other discovery in the Consolidated Actions be stayed, including Plaintiffs' existing subpoenas duces tecum to third parties Lazard Freres & Co. LLC, Arthur Andersen LLP, Houlihan Lokey Howard & Zukin Financial Advisors, Inc., Deloitte & Touche LLP, and The Bank of New York (in its present iteration), pending resolution of NorthWestern's motion for summary judgment.

Dated: Wilmington, Delaware
       February 2, 2006

**CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP**

Joseph D. Pizzuro, Esq.
Steven J. Reisman, Esq.
Nancy E. Delaney, Esq.
Miriam K. Harwood, Esq.
101 Park Avenue
New York, New York 10178-0061
Tel: (212) 696-6000
Fax: (212) 697-1559

Co-Counsel for Defendant NorthWestern Corporation

**GREENBERG TRAURIG, LLP**

By: /s/ Victoria W. Counihan
    Victoria Counihan, Esq. (No. 3488)
    Dennis Meloro, Esq. (No. 4435)
    The Nemours Building
    1007 Northwestern Orange Street
    Suite 1200
    Wilmington, Delaware 19801
    Tel: (302) 661-7000
    Fax: (302) 661-7360

–11–

## STATEMENT UNDER LOCAL RULE 7.1.1

The undersigned counsel for NorthWestern hereby certifies, pursuant to Rule

7.1.1 of the Local Rules of the United States District Court for the District of Delaware, that it

has conferred in good faith, and made a reasonable effort to reach agreement, with the Plaintiffs

in the Consolidated Actions with regard to the matters set forth herein prior to filing this Motion.

Dated: Wilmington, Delaware
       February 2, 2006

**GREENBERG TRAURIG, LLP**

By: /s/ Victoria W. Counihan
    Victoria Counihan, Esq. (No. 3488)
    Dennis Meloro, Esq. (No. 4435)
    The Nemours Building
    1007 North Orange Street
    Suite 1200
    Wilmington, Delaware 19801
    Tel: (302) 661-7000
    Fax: (302) 661-7360

2686958v4

*EXHIBIT B*



Phone:     (302) 425-6467
Fax:       (302) 425-6464
Email:     dubr@blankrome.com

October 16, 2006

**VIA CMF AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
United States District Court
    for the District of Delaware
844 King Street
Wilmington, DE 19801

> Re: • *Magten Asset Management Corp. and Law Debenture Trust Co. v. Northwestern Corp.*; C.A. No. 04-1494-JJF;
> • *Magten Asset Management Corp. v. Mike J. Hanson and Ernie J. Kindt*; C.A. No. 05-0499-JJF
> • *Magten Asset Management Corp. v. Paul Hastings Janofsky & Walker LLP*; C.A. No. 04-1256-JFF

Your Honor:

        We write on behalf of the Plaintiffs in the above-captioned actions, which have been consolidated for discovery. Discovery in these cases had been stayed by Local Rule 30.2 since February because all Defendants had joined in Northwestern's Motions for Protective Orders. On September 29, 2006, the Court entered its Orders denying those motions in their entirety. Plaintiffs promptly advised Defendants that they wished to proceed with discovery and requested, by letter dated October 3, 2006, that this Court schedule a conference so that an appropriate scheduling order might be entered. The delay caused by Defendants' motion practice has made the schedule proposed in our letter of January 9, 2006, no longer feasible.

        On October 13, 2006, we had a conference call with counsel for Defendants to discuss dates for the scheduling order. We proposed the following:

        **Fact Discovery:** All discovery other than expert discovery will be completed no later than <u>Wednesday, February 28, 2007</u>.

        **Expert Discovery:** The initial expert reports will be served by <u>Friday, March 30, 2007</u>. Rebuttal reports, if any, to these initial expert reports will be served by <u>Friday, April 20, 2007</u>. All expert discovery, including expert depositions, will be completed no later than <u>Tuesday, May 15, 2007</u>.



**BLANK  ROME** LLP
COUNSELORS AT LAW

The Honorable Joseph J. Farnan, Jr.
October 16, 2006
Page 2

**Dispositive Motions:** Summary judgment motions, if any, will be filed by
Friday, June 15, 2007.

This schedule provides five months from the date of the Court's ruling denying Defendants'
motion for protective order for the parties to complete fact discovery, and a further two and a
half months for expert discovery.

Defendants have been aware of the claims in these actions for years and were served with
Plaintiffs' initial discovery requests almost nine months ago (as well as earlier discovery requests
in the action transferred to this District from the District of Montana), although they have not yet
produced any documents in response to those requests. Nevertheless, Defendants refused to
agree to this proposed schedule and suggested that fact discovery should not be completed for
another twelve months.

We do not believe that a protracted schedule is warranted under the circumstances.
Rather, this appears to be another chapter in Defendants' continuing strategy of delay for delay's
sake. This Court, the Bankruptcy Court, and the District Court for the District of Montana have
all rejected repeated motions by these Defendants seeking dismissal of plaintiffs' claims without
permitting discovery. Most recently, this Court rejected Defendants' attempt to limit the scope
of discovery. It is time for discovery to proceed.

We are continuing to discuss with counsel for Defendants how and when Defendants
will comply with the discovery demands which are currently outstanding. To the extent we are
unable to reach agreement on those issues, we will bring any unresolved matters to the attention
of the Special Master for resolution.

Counsel is available by telephone, should the Court have any questions.

Respectfully submitted,

Dale R. Dubé
I.D. No. 2863

- and -

Bonnie Steingart
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, NY 10004

120087.01600/40165126v.1



The Honorable Joseph J. Farnan, Jr.
October 16, 2006
Page 3


DRD/pb
cc:    Clerk of Court (via hand delivery)
       John E. James, Esquire (courtesy copy, via hand delivery)
       Bijan Amini, Esquire  (via e-mail and Federal Express)
       Jesse H. Austin, III, Esquire  (via e-mail and Federal Express)
       Kimberly A. Beatty, Esquire  (via e-mail and Federal Express)
       Philip Bentley, Esquire  (via e-mail and Federal Express)
       John W. Brewer, Esquire
       Rebecca L. Butcher, Esquire (via e-mail and hand delivery)
       Brenda Cooke, Esquire
       Victoria W. Counihan, Esquire  (via e-mail and hand delivery)
       Amanda Darwin, Esquire  (via e-mail and Federal Express)
       Robert J. Dehney, Esquire  (via e-mail and hand delivery)
       Nancy E. Delaney, Esquire  (via e-mail and Federal Express)
       Karol K. Denniston, Esquire  (via e-mail and Federal Express)
       Bonnie Glantz Fatell, Esquire
       Dennis E. Glazer, Esquire  (via e-mail and Federal Express)
       Miriam K. Harwood, Esquire  (via e-mail and Federal Express)
       David A. Jenkins, Esquire  (via e-mail and hand delivery)
       Stanley T. Kaleczyc, Esquire  (via e-mail and Federal Express)
       Gary L. Kaplan, Esquire
       Denise Seastone Kraft, Esquire  (via e-mail and hand delivery)
       Adam G. Landis, Esquire (via e-mail and hand delivery)
       Dennis A. Meloro, Esquire  (via e-mail and hand delivery)
       Curtis S. Miller, Esquire  (via e-mail and hand delivery)
       Kathleen M. Miller, Esquire  (via e-mail and hand delivery)
       Kerri K. Mumford, Esquire (via e-mail and hand delivery)
       Jordanna L. Nadritch, Esquire
       Joanna I. Palacios, Esquire
       Joseph D. Pizzurro, Esquire  (via e-mail and Federal Express)
       Steven J. Reisman, Esquire  (via e-mail and Federal Express)
       Avery Samet, Esquire  (via e-mail and Federal Express)
       Bradley F. Silverman, Esquire (via e-mail and Federal Express)
       John V. Snellings, Esquire  (via e-mail and Federal Express)
       Paul Spagnoletti, Esquire  (via e-mail and Federal Express)
       Matthew J. Williams, Esquire  (via e-mail and Federal Express)

**EXHIBIT C**

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT   MUSCAT
HOUSTON     PARIS
LONDON      STAMFORD
MEXICO CITY WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CM-P.COM
INTERNET WWW.CM-P.COM

WRITER'S DIRECT:
TEL.: 212-696-6196

December 15, 2006

Bonnie Steingart, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

> Re:   *Magten Asset Management Corp. and Law*
> *Debenture Trust Co. v. NorthWestern Corp.;*
> <u>*C.A. No. 04-1494-JJF*</u>

Dear Bonnie:

   I have your letter of December 14.  You are, of course, free to file a motion to compel.  However, it is completely unclear from your letter what it is exactly you wish to compel NorthWestern to do, or to produce, or indeed what the bases for any such motion would be.

   First, we are not in a position to give you a date certain on when document production will be complete, both because that is contingent in some respects on whether we can reach agreement on the stipulations you proposed (drafts of which you stated you would prepare sometime ago and which we have not yet seen) and also because our review of documents for relevance and privilege is ongoing.  Your Requests are sweeping, over inclusive and impose a significant burden in terms of searching for responsive documents.  Your failure to pose narrowly crafted and relevant Requests is responsible for the time necessary to complete production.  I do wish to make clear however, that I have never suggested that production would not be completed until April, and we are working diligently to ensure document production is completed so that Magten has sufficient time to take the limited number of depositions to which it is entitled under Judge Farnan's Rule 16 Order before fact discovery is cut off four and a half months hence.

   Second, I am at a loss to understand why you would be "troubled" over our position on documents provided to the SEC.  As I stated in my earlier letter, to the extent that any of these documents fall within Magten's Requests, are relevant and not privileged they will be produced.  Furthermore, your reference to Judge Cases' decision on the "threshold fraud issue" is entirely misplaced.  It's obvious that any "fraud" has to relate to the Going Flat Transaction which is the basis of Magten's claims.  Although we have repeatedly asked you what

3316775v1

"fraud" you allege in connection with that transaction, you have simply repeated the sole allegation contained in the amended complaint, namely that the Indenture Trustee relied on NorthWestern's financials in executing the Third Supplemental Indenture which released Clark Fork of any liability on the QUIPS. As far as I am aware, this allegation of "fraud", if indeed the allegation even arises to that level, was not the subject of any inquiry or interest by the SEC.

Whatever implicit threat is contained in the last paragraph of your letter bears no response. However, be assured that NorthWestern will seek to recover its costs and expenses, including attorneys' fees, incurred in connection with any motion to compel Magten may make.

Yours truly,

Joseph D. Pizzurro

cc: Gary L. Kaplan, Esq.
    John W. Brewer, Esq.
    Bijan Amini, Esq.
    Jesse H. Austin, III, Esq.
    Victoria W. Counihan, Esq.
    Dennis E. Glazer, Esq.
    David A. Jenkins, Esq.
    Paul Spagnoletti, Esq.
    Denise Seastone Kraft, Esq.
    Adam G. Landis, Esq.
    Dennis A. Meloro, Esq.
    Curtis S. Miller, Esq.
    Kathleen M. Miller, Esq.
    John V. Snellings, Esq.
    Dale R. Dubé, Esq.
    Stanley T. Kaleczyc, Esq.
    Kimberly A. Beatty, Esq.

3316775v1

*EXHIBIT D*

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT   MUSCAT
HOUSTON     PARIS
LONDON      STAMFORD
MEXICO CITY WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CM-P.COM
INTERNET WWW.CM-P.COM

WRITER'S DIRECT:
TEL.: (212) 696-8895
E-MAIL JBAGNATO@CM-P.COM

December 18, 2006

**VIA HAND DELIVERY**

Bonnie Steingart, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

> Re:   *Magten Asset Management Corp. and Law*
>       *Debenture Trust Co. v. NorthWestern Corp.*;
>       <u>C.A. No. 04-1494-JJF</u>

Dear Bonnie:

        Enclosed, on behalf of NorthWestern Corporation, Mike J. Hanson and Ernie J. Kindt, please find a CD containing documents responsive to Plaintiffs' First Request for Production of Documents. These documents contain the following Bates range: NOR 010268 - 24601. Also contained on the CD is a Concordance load file which describes the document request number to which each document is responsive. The load file can be converted to another format (such as Word or Excel) for your convenience.

                                        Sincerely,

                                        *Jennifer Bagnato*

                                        Jennifer A. Bagnato

Enclosure

Cc:   Paul Spagnoletti, Esq.
      Stanley T. Kaleczyc, Esq.
      (with enclosure via Federal Express)

# CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT    MUSCAT
HOUSTON      PARIS
LONDON       STAMFORD
MEXICO CITY  WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CM-P.COM
INTERNET WWW.CM-P.COM

WRITER'S DIRECT:
TEL.: (212) 696-8895
E-MAIL JBAGNATO@CM-P.COM

December 21, 2006

**VIA HAND DELIVERY**

Bonnie Steingart, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

> Re:    *Magten Asset Management Corp. and Law*
> *Debenture Trust Co. v. NorthWestern Corp.*;
> <u>C.A. No. 04-1494-JJF</u>

Dear Bonnie:

      Enclosed, on behalf of NorthWestern Corporation, Mike J. Hanson and Ernie J. Kindt, please find a CD containing documents responsive to Plaintiffs' First Request for Production of Documents.  These documents contain the following Bates range:  NOR 024602 - 034876.  Also contained on the CD is a Concordance load file which describes the document request number to which each document is responsive.  The load file can be converted to another format (such as Word or Excel) for your convenience.

Sincerely,

*Jennifer A. Bagnato* (signature)

Jennifer A. Bagnato

Enclosure

Cc:    Paul Spagnoletti, Esq.
       Stanley T. Kaleczyc, Esq.
       (with enclosure via Federal Express)

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT   MUSCAT
HOUSTON     PARIS
LONDON      STAMFORD
MEXICO CITY WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CM-P.COM
INTERNET WWW.CM-P.COM

WRITER'S DIRECT:
TEL.: (212) 696-6695
E-MAIL JBAGNATO@CM-P.COM

January 4, 2007

**VIA HAND DELIVERY**

Bonnie Steingart, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

Re:     *Magten Asset Management Corp. and Law*
        *Debenture Trust Co. v. NorthWestern Corp.*;
        C.A. No. 04-1494-JJF

Dear Bonnie:

        Enclosed, on behalf of NorthWestern Corporation, Mike J. Hanson and Ernie J.
Kindt, please find a CD containing documents responsive to Plaintiffs' First Request for
Production of Documents. These documents contain the following Bates range: NOR 034877 -
043145. Also contained on the CD is a Concordance load file which describes the document
request number to which each document is responsive. The load file can be converted to another
format (such as Word or Excel) for your convenience.

                                                Sincerely,

                                                *Jennifer Bagnato*

                                                Jennifer A. Bagnato

Enclosure

Cc:     Paul Spagnoletti, Esq.
        Stanley T. Kaleczyc, Esq.
        (with enclosure via Federal Express)

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT    MUSCAT
HOUSTON    PARIS
LONDON    STAMFORD
MEXICO CITY    WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CM-P.COM
INTERNET WWW.CM-P.COM

WRITER'S DIRECT:
TEL.: (212) 696-8895
E-MAIL JBAGNATO@CM-P.COM

January 5, 2007

**VIA HAND DELIVERY**

Bonnie Steingart, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

Re:    *Magten Asset Management Corp. and Law*
       *Debenture Trust Co. v. NorthWestern Corp.*;
       C.A. No. 04-1494-JJF

Dear Bonnie:

        Enclosed, on behalf of NorthWestern Corporation, Michael J. Hanson and Ernie J. Kindt, please find a CD containing documents from the files of Michael J. Hanson responsive to Plaintiffs' First Request for Production of Documents. These documents contain the following Bates range: NOR 043146 - 045476. The CD contains folders numbered in accordance with the numbered document requests in Plaintiffs' First Request for Production of Documents.

                                                Sincerely,

                                                *Jen Bagnato*

                                                Jennifer A. Bagnato

Enclosure

Cc:    Paul Spagnoletti, Esq.
       Stanley T. Kaleczyc, Esq.
       (with enclosure via Federal Express)

*EXHIBIT E*

**Fried, Frank, Harris, Shriver & Jacobson LLP**

One New York Plaza
New York, New York 10004-1980
Tel: +1 212 859 8000
Fax: +1 212 859 4000
www.friedfrank.com



Direct Line: 212.859.8004
Fax: 212.859.8583
steinbo@ffhsj.com

December 20, 2006

State of Montana
Public Service Commission
1701 Prospect Avenue
P.O. Box 202601
Helena, MT 59620-2601

      RE:    Docket No. D2006.6.82
              NorthWestern Corporation ("NorthWestern")

Dear Chairman Jergeson and Members of the Commission:

       I write on behalf of my law firm's client Magten Asset Management Corporation ("Magten") to bring to the Commission's attention factors which we believe the Commission should take into account in considering NorthWestern's application for regulatory approval of its purchase by affiliates of Babcock & Brown Infrastructure Ltd. ("BBI"). Magten is a substantial holder of certain securities issued by an affiliate of the former Montana Power Company, and is currently pursuing litigation against NorthWestern and others in the U.S. District Court for the District of Delaware.

       As the Commission is well aware, NorthWestern acquired the regulated utility assets of Montana Power Company in 2002 only to default on its obligations and descend into chapter 11 bankruptcy the following year, causing considerable uncertainty and prejudice for the Montana customers the Commission is charged with protecting. NorthWestern then manipulated the bankruptcy process to block any meaningful recovery for Montana Power creditors such as Magten, even though the Montana Power assets were the primary source of value for the reorganized company. What is clear in hindsight is that NorthWestern did not suddenly encounter unexpected financial difficulties immediately after acquiring the Montana Power assets. Rather, NorthWestern affirmatively and fraudulently concealed the catastrophic failure of its non-utility business ventures until just after it had completed the transfer of the Montana Power assets to itself. Magten believes that this Commission and the

Fried, Frank, Harris, Shriver & Jacobson LLP

December 20, 2006
Page 2

Consumer Counsel, as well as creditors, investors, and customers, were victims of that fraud.

Earlier this month, the U.S. Securities and Exchange Commission commenced a lawsuit against certain current and former NorthWestern employees, charging them with causing NorthWestern to release materially false financial statements with respect to the fourth quarter of 2001 and the first and second quarters of 2002 – the very time period during which NorthWestern was obtaining approval from this Commission for its acquisition of the Montana Power assets. One of the defendants in this litigation, Bart Thielbar, apparently remains a Vice President and senior member of NorthWestern's management team despite the SEC's pending charges that he violated the federal securities laws by causing NorthWestern's public financial statements to be inflated and his refusal (unlike his co-defendants) to accept responsibility by settling with the SEC. We attach a copy of the SEC's press release announcing the litigation for your reference.

The SEC's investigation is apparently ongoing, and more charges may be brought. According to NorthWestern's own public statements, a number of additional "Wells notices" indicating proposed enforcement actions targeting affiliated individuals were issued this past summer. In addition to the specific misconduct at one of NorthWestern's subsidiaries targeted by the recently-filed action, we understand that the SEC's investigation more generally encompasses NorthWestern's subsequent restatement of its 2002 quarterly financial statements after admitting that those statements had been false and misleading when issued, the timing of NorthWestern's announcement of the almost billion dollars of extraordinary losses and write-downs it admitted to in connection with its financial statements for the end of 2002, and the misstatement of the financial condition of other subsidiaries and affiliates.

We believe that had the truth about NorthWestern's financial condition and prospects been disclosed to the Commission at the time, the 2002 transaction would never have been approved, or at a minimum any approval would have been conditioned on structural provisions appropriately insulating the former Montana Power business and its customers and creditors from the catastrophic failure of NorthWestern's other, unregulated businesses.

As the Commission recognized with regret in its January 24, 2003 Final Order in Docket no. D2002.12.159, after the Commission approved NorthWestern's purchase of the Montana Power assets, the company's reported "financial condition . . . spiraled down due to non-utility activities." In particular, on November 15, 2002, NorthWestern caused the former Montana Power entity it had acquired 100% ownership of (renamed at the time NorthWestern Energy, L.L.C.) to transfer the Montana Power assets without adequate consideration up to NorthWestern itself, where they could be commingled

Fried, Frank, Harris, Shriver & Jacobson LLP

December 20, 2006
Page 3

with its other, money-losing businesses and be made directly available to cover the losses of those other businesses. Within weeks after completing this transfer, NorthWestern suddenly announced that substantial losses associated with its non-utility businesses were anticipated – losses that ultimately resulted in the near-billion-dollar write-down of asset values mentioned above. This announcement was rapidly followed by the cascade of ratings agency downgrades of NorthWestern debt described in the January 24, 2003 order and the chapter 11 filing later that year.

The settlement stipulation dated as of July 8, 2004 that the Commission and Consumer Counsel reached with NorthWestern in its bankruptcy case expressly recognizes the need for structural "ring fencing" measures which would separate and insulate the former Montana Power assets from the risks and liabilities of other, unregulated businesses NorthWestern might engage in going forward. The damage done in the bankruptcy to the customers and creditors of the former Montana Power was almost entirely the result of NorthWestern's exploitation of the fact that explicit "ring fencing" provisions were not in place as of November 2002. As stated above, we are confident that the Commission and Consumer Counsel would have insisted on such measures at the time of NorthWestern's purchase of the Montana Power assets had it not been for the fraudulent concealment of NorthWestern's true financial condition.

Thus, while the Commission's primary focus will no doubt appropriately be on the potential risks or benefits of the currently-proposed BBI transaction to Montana customers, we believe that it should also give due consideration to the disturbing fact that NorthWestern has not yet accepted full responsibility for its misconduct in connection with the prior transaction, in which it took advantage of the fact that "ring fencing" was not in place. Nor has NorthWestern compensated those who were injured by that misconduct to the best of its ability, even given the constraints imposed by the bankruptcy. By contrast, those who benefited from that transaction at the expense of Montana Power's customers and creditors now stand to receive a windfall if the BBI transaction is consummated.

Indeed, just last month NorthWestern's board awarded itself and members of management over 190,000 shares of new NorthWestern stock pursuant to a so-called "Long-Term Incentive Plan" – shares which will immediately vest and entitle these insiders to pocket over $5 million in additional cash from BBI if the proposed transaction is consummated. The purported purpose of this award – incentivizing management to take a long-term perspective toward the business from now through the end of 2011 – is an obvious sham, since management hopes and expects to cash in the stock by the middle of next year, rather than over the five-year period officially contemplated. The Commission may recall that in its January 24, 2003 order it expressed serious concerns about NorthWestern's prior "incentive" arrangements for senior management, which had improperly enriched insiders prior to the revelation of

Fried, Frank, Harris, Shriver & Jacobson LLP

December 20, 2006
Page 4

NorthWestern's financial distress, and which had not been disclosed to the Commission until after its approval of NorthWestern's acquisition of the Montana Power assets.

As a result of this latest round of self-dealing and self-enrichment (as well as prior such awards subsequent to the bankruptcy case) Michael Hanson, now NorthWestern's CEO, stands to receive personally several million dollars from the transaction. As of November 2002, Mr. Hanson was the CEO of the former Montana Power entity who permitted the Montana Power assets to be transferred to NorthWestern, exploiting the lack of explicit "ring fencing" protections in place at the time. Magten is currently suing Mr. Hanson for violating his fiduciary duties to the former Montana Power creditors in connection with that transfer.

Obviously, the final resolution of Magten's claims against NorthWestern, Mr. Hanson, and other defendants in related litigation is not directly within this Commission's jurisdiction. We believe, however, that several factors related to the litigation should be of interest and concern to the Commission. The first relates to the general issue, as noted above, of whether NorthWestern's current board and management team have genuinely put the problems of the past behind them. Any claim that the company is now being managed by new faces who were not involved in the prior misconduct must be subject to consideration not only of the continuing role of certain individuals who were involved in that misconduct, notably Messrs. Hanson and Thielbar, but also of the actions of more recently-arrived officers and directors when it comes to accepting appropriate responsibility for the past. In this regard, the Commission may wish to examine NorthWestern's conduct in reneging on a signed settlement agreement with Magten which it had then further confirmed in a court filing was in NorthWestern's own best interests. This change of heart apparently resulted from pressure from a third party which had already been made more than whole in the chapter 11 case – pressure so strong as to lead to the abrupt departure from the company of Mr. Hanson's predecessor as CEO, Gary Drook. This same third party that forced NorthWestern to retract the settlement with Magten had actually petitioned for, and was granted, an exemption from the Public Utility Holding Company Act of 1935 by promising not to exert influence over NorthWestern. NorthWestern nonetheless let itself be influenced by the pressure brought to bear by violations of these securities laws.

Second, the Commission should know that NorthWestern and Mr. Hanson have been assiduously resisting discovery in Magten's litigation against them. Indeed, we have recently been forced to file a motion to compel in order to receive a substantial response to requests for documents that were served this past January. While foot-dragging and stone-walling are unfortunately not unknown in civil litigation, here the Commission should be aware of the possibility that the continued delay results from an attempt by NorthWestern to continue concealing the evidence Magten is seeking until

Fried, Frank, Harris, Shriver & Jacobson LLP

December 20, 2006
Page 5

after it has received the required regulatory approvals for its proposed transaction with BBI. Such a strategy necessarily implies fear that the evidence Magten is seeking to uncover would be viewed by the Commission and other regulators as both relevant and damaging to NorthWestern's application for approval of the proposed transaction.

As our investigation continues, with or without NorthWestern's compliance with its discovery obligations, we anticipate providing the Commission with additional factual details we believe might be helpful in your consideration of the proposed transaction. If you would like further information on any of the issues discussed above, we would be more than happy to provide it.

We appreciate your consideration of these matters as you continue to carry out your important responsibilities with respect to consideration of the proposed transaction.

Sincerely,

Bonnie Steingart /KD

Bonnie Steingart

cc:    Robert A. Nelson, Consumer Counsel
       John L. Alke (Montana regulatory counsel to NorthWestern)
       Gordon Bava  (transaction counsel to NorthWestern)
       Don Bussard (transaction counsel to NorthWestern)
       Sheri Bloomberg  (transaction counsel to BBI)

**EXHIBIT F**

Fried, Frank, Harris, Shriver & Jacobson LLP

One New York Plaza
New York, New York 10004-1980
Tel:  +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com



Direct Line:  212.859.8812
Fax:  212.859.8583
kaplaga@ffhsj.com

December 20, 2006

## VIA FACSIMILE AND ELECTRONIC MAIL

Stanley T. Kaleczyc, Esq.
Browning, Kaleczyc Berry and Hoven P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Montana 59624

Re:    **Michael J. Hanson**

Dear Stan:

We are writing on behalf of our client Magten Asset Management Corporation ("Magten") regarding the financial windfall expected to be received by your client Michael Hanson upon the closing of the merger between Northwestern Corporation and Babcock & Brown Infrastructure Ltd. ("BBI").  We understand from the public record that, in addition to other personal benefits he may reap from the transaction (such as millions potentially receivable under a hastily adopted "golden parachute" program), Mr. Hanson now holds 61,381 shares of NorthWestern stock which would convert into over $2.25 million in cash if and when the proposed transaction is consummated.  Mr. Hanson was given almost half of these shares just last month, pursuant to a sham "Long-Term Incentive Plan."  While these newly-awarded shares are in theory supposed to vest over a lengthy period from late next year through 2011, they will of course immediately vest and dramatically increase Mr. Hanson's cash payout if and when the transaction is closed, making clear that this latest award (made after the BBI contract had already been approved by a majority of current NorthWestern shareholders) is simply another case of insider self-enrichment with no true long-term incentive purpose.

While the legitimacy of this self-dealing may be adjudicated in the future in an appropriate forum, the purpose of this letter is to make certain that Mr. Hanson is fully

Fried, Frank, Harris, Shriver & Jacobson LLP

December 20, 2006
Page 2

mindful of his legal obligations to his creditors when making plans with respect to the hoped-for windfall. As you are aware, Magten is a major creditor of Mr. Hanson, and likely his largest single creditor. Mr. Hanson's personal damages exposure to Magten is in the tens of millions of dollars, which may exceed his ability to pay even when augmented by any available insurance coverage not yet exhausted by other claims. The provisions of NorthWestern's confirmed chapter 11 plan make it impossible for the principal amount of Magten's claim to be fully satisfied by NorthWestern alone, and Mr. Hanson, unlike NorthWestern, is also liable for interest accruing after the commencement of NorthWestern's bankruptcy.

That Mr. Hanson may dispute his liability to Magten is irrelevant to Magten's standing and status as a "creditor" within the meaning of the Uniform Fraudulent Transfer Act and similar provisions of applicable law. Accordingly, any disbursement or distribution by Mr. Hanson of assets must be made in return for equivalent value on arms-length commercial terms, or it will be challenged as a fraudulent conveyance. (Of course, because no consideration is received for any gifts made by Mr. Hanson, all gifts are subject to challenge as fraudulent conveyances). Magten will not hesitate to pursue appropriate remedies against the recipients or beneficiaries of any potentially avoidable transfer from Mr. Hanson, as well as against any advisers or professionals who may assist in structuring a transaction prejudicial to Mr. Hanson's creditors.

Please share this letter with Mr. Hanson and any personal financial and legal advisers he may have so that they may be guided accordingly. To the extent they believe that Mr. Hanson may be able to achieve otherwise legitimate tax-efficiency or estate-planning goals without creating any prejudice to the rights of creditors, we would be willing to discuss such plans in advance in an effort to avoid litigation in the future over such arrangements.

We have not been able to determine from the public record whether your other client Mr. Kindt may also stand to benefit personally from the contemplated BBI transaction, but obviously he and his advisers should be guided by the same principles with respect to his assets.

Thank you for your attention to these matters.

Sincerely,

Gary Kaplan

*EXHIBIT G*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN CORPORATION, <br><br> Defendant. | C.A. No. 04-1494-JJF |

## PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS FOR DEFENDANT NORTHWESTERN CORPORATION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Law Debenture Trust Company of New York and Magten Asset Management Corporation (collectively referred to as "Plaintiffs") request that NorthWestern Corporation ("NorthWestern") produce for examination, inspection and copying at the offices of Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (or such other place as counsel might agree) at 10:00 a.m. on January 22, 2007 all of the documents described below which are in the possession, custody or control of NorthWestern, or of any persons acting on its behalf.

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1.     The term "you" and "your" means or refers to NorthWestern, as well as all persons and/or entities affiliated with NorthWestern, acting in concert with or under the direction of NorthWestern, or purporting to act on NorthWestern's behalf.

1

2.    "All" means "any and all," and "any" means "any and all."

3.    "Clark Fork" means Clark Fork and Blackfoot, LLC, formerly known as, among other things, NorthWestern Energy, LLC and Montana Power, LLC, and any of its affiliates, subsidiaries, predecessors and any person or entity acting or purporting to act on behalf of, at the direction of or in concert with it, including but not limited to Clark Fork's present and former officers, directors, employees, servants, agents, representatives and attorneys.

4.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any medium -- oral, written or otherwise.

5.    "Concerning" includes referring to, relating to, embodying, in connection with, commenting on, responding to, showing, demonstrating, declaring, describing, analyzing, reflecting, containing or constituting.

6.    "Document" is used herein in the broadest sense and includes, but is not limited to, all originals, whether printed or handwritten, non-identical copies, copies with marginal notations or interlineations of any writing, recording, photograph, computer data, film, e-mail, video or audio tape (including transcripts or memoranda reflecting or referring to the contents thereof), any written, typewritten or other tangible form of recording or preserving communication or thought (including computerized records of any kind), including any non-identical copy thereof, or any other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form in which such information exists or is maintained.

7.    "DOJ" refers to the United States Department of Justice and includes any division thereof and any present or former employee, agent or other individual acting or purporting to act on its behalf or under its control.

8.    "Investigation" refers to any formal or informal investigation or inquiry conducted by the DOJ, MPSC or any other federal or state governmental agency, including, without limitation, the investigation that resulted in the stipulation and settlement between NorthWestern, the MPSC and the MCC, dated as of July 8, 2004 (MPSC Docket No. D2003.8.109), and any other investigation concerning the Transfer, NorthWestern's financial statements, the solvency and ability of NorthWestern and Clark Fork to meet their future obligations and/or any of the allegations contained in Plaintiffs' Complaint.

9.    "McGreevey Asset Transfer Action" refers to *McGreevey, et al v. Montana Power Co., et al* DV-05-199, commenced in the Montana Second Judicial District Court, Butte-Silver Bow County.

10.    "MCC" refers to the Montana Consumer Counsel, an entity created by the Constitution of the State of Montana, and includes any division thereof and any present or former employee, agent or other individual acting or purporting to act on its behalf or under its control.

11.    "MPSC" refers to the Montana Public Service Commission and includes any division thereof and any present or former employee, agent or other individual acting or purporting to act on its behalf or under its control.

12.    "NorthWestern" means NorthWestern Corporation, its affiliates and any parent, subsidiaries, predecessors and successors, and any person or entity acting or purporting to act on behalf of, at the direction of, or in concert with it, including but not limited to NorthWestern's present and former officers, directors, employees, servants, agents, representatives and attorneys; provided, however, that NorthWestern shall not be construed to include Clark Fork, which has been separately defined herein.

3

13.    "NorthWestern Growth" refers to NorthWestern Growth Corporation and includes any investment, operating company or subsidiary thereof, including, without limitation, Expanets Inc. and Blue Dot Services Inc.

14.    "Person" includes any natural person, group, investigatory body, governmental unit, governmental agency or department, corporation, association, partnership, limited partnership, joint venture, sole proprietorship, business, business entity, organization, or institution.

15.    "Plaintiffs' Complaint" means the amended complaint filed by Magten Asset Management Corporation and Law Debenture Trust Company of New York on October 4, 2004, against NorthWestern Corporation.

16.    "Relating to" means, without limitation, consisting of, containing, constituting, concerning, discussing, describing, reflecting, transmitted in connection with, touching upon or summarizing, showing or relating or referring to in any way, directly or indirectly, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of, any document called for by each request.

17.    "Restatement" refers to NorthWestern's restatement of its quarterly financials for the periods ending March 31, 2002, June 30, 2002, and Sept. 30, 2002, as well as the approximate $880 million of asset impairment charges for the fiscal year ending December 31, 2002, as announced in NorthWestern's press release dated April 16, 2003.

18.    "SEC" refers to the Securities and Exchange Commission and includes any division thereof and any present or former employee, agent or other individual acting or purporting to act on its behalf or under its control.

4

19.    "SEC Investigation" refers to any formal or informal investigation or inquiry conducted by the SEC, concerning NorthWestern, any current or former NorthWestern employee, and/or any of the allegations contained in Plaintiffs' Complaint, including, without limitation, the issuance of "Wells notices" and NorthWestern's restatement of its financials for the fiscal year 2002.

20.    "Transfer" means the transfer of the Transferred Assets from Clark Fork to NorthWestern that occurred on or about November 15, 2002. Transfer shall also include any and all strategies for the eventual acquisition and direct ownership of the Transferred Assets by NorthWestern.

21.    "Transferred Assets" means those assets that were transferred from Clark Fork to NorthWestern on or about November 15, 2002.

## INSTRUCTIONS

1.    Every request shall be answered separately and fully in writing. If any answer or part of any answer is based upon information and belief rather than personal knowledge, you shall state that it is made on that basis.

2.    If any part of a request is objected to, the reasons for the objection should be stated with particularity. If an objection is made to part of any item or category, the part should be specified.

3.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

4.    References to the singular shall include the plural, and references to the plural shall include the singular.

5

5.     The documents covered by this request include all documents in the possession, custody or control of NorthWestern, or any documents that were generated or received by NorthWestern or otherwise came into existence or were utilized by NorthWestern through the date of production. This request also calls for the production of documents kept or maintained by counsel for NorthWestern.

6.     A request for a document shall be deemed to include a request for any transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, and any file folder in which the document was maintained, in addition to the document itself.

7.     A request for a document shall be deemed to include a request for all drafts and successive iterations thereof and all modifications thereto, in addition to the document itself.

8.     If any document is withheld in whole or part on the ground that it is privileged or otherwise not discoverable, state:

(a) the date of the document;

(b) the name of each person to whom the document is addressed;

(c) the name of each person, other than the addressee(s), to whom the document has been sent or shown, or by whom it has been reviewed;

(d) the name of each person who signed or authored the document;

(e) the title and job description of each person identified in (b), (c), and (d) above;

(f) the subject of the document and the number of pages in the document;

(g) the specific privilege claimed and the grounds for any such claim; and

(h) the name and address of the person who has custody of the document.

9.     If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s)

should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

10.    All documents requested are to be produced in a form which renders the documents susceptible to copying and examination for content in the language or numerical expression of the original.

11.    Unless otherwise expressly stated, the documents covered by this request include any documents that were generated, crated, circulated, dated or otherwise came into existence during the period of January 1, 2001 to present.

12.    Each request for production of documents herein shall be construed as continuing in nature, requiring supplemental responses if further or different documents responsive to any request are discovered or obtained at any time prior to any judgment on the merits.

13.    If any requested document or other document potentially relevant to these requests has already been produced in response to Plaintiff's First Request for Production of Documents, such document need not be produced again.

## REQUESTS FOR PRODUCTION

REQUEST NO. 32

All document requests, information requests, and/or subpoenas issued by the SEC in connection with the SEC Investigation.

REQUEST NO. 33

All documents provided to the SEC by NorthWestern or any other Person concerning or in connection with the SEC Investigation.

REQUEST NO. 34

All documents concerning or reflecting oral or written communications between NorthWestern or any other Person on the one hand and the SEC on the other hand, including

7

without limitation (a) any report or presentation by NorthWestern or any other Person to the SEC, concerning or in connection with the SEC Investigation, and (b) any "Wells notice" issued by the SEC to NorthWestern or any Person in connection with the SEC Investigation.

REQUEST NO. 35

All documents provided by the SEC to NorthWestern or any other Person in connection with the SEC Investigation.

REQUEST NO. 36

All transcriptions and video recordings of formal or informal testimony before the SEC concerning or in connection with the SEC Investigation. If any testimony otherwise responsive to this Request has not been transcribed or videotaped, please produce any audio or other recording of such testimony.

REQUEST NO. 37

With respect to Request No. 36 above, all documents referenced in such transcriptions or other recordings, whether or not formally designated as an exhibit. If any such document is designated as an exhibit, Plaintiffs request that the document be produced bearing the exhibit number referenced in the transcription or other recording.

REQUEST NO. 38

All documents indicating which documents were produced to the SEC by NorthWestern or any other Person after the testimony of the relevant witness had been taken.

REQUEST NO. 39

All document requests, information requests, and/or subpoenas issued by the DOJ, MSPC, MCC or any other federal or state governmental agency in connection with any Investigation.

REQUEST NO. 40

All documents provided to the DOJ, MPSC, MCC or any other federal or state governmental agency by NorthWestern or any other Person concerning or in connection with any Investigation.

REQUEST NO. 41

All documents concerning or reflecting oral or written communications between NorthWestern or any other Person on the one hand and the DOJ, MPSC, MCC or any other federal or state governmental agency on the other hand, including without limitation any report or presentation by NorthWestern or any other Person to the DOJ, MPSC, MCC or any other federal or state governmental agency concerning or in connection with any Investigation.

REQUEST NO. 42

All documents provided by the DOJ, MSPC, MCC, or any other federal or state governmental agency to NorthWestern or any other Person in connection with any Investigation.

REQUEST NO. 43

All transcriptions and video recordings of formal or informal testimony before the DOJ, MSPC, MCC or any other federal or state governmental agency concerning or in connection with any Investigation.  If any testimony otherwise responsive to this Request has not been transcribed or videotaped, please produce any audio or other recording of such testimony.

REQUEST NO. 44

With respect to Request No. 43 above, all documents referenced in such transcriptions or other recordings, whether or not formally designated as an exhibit.  If any such document is designated as an exhibit, Plaintiffs request that the document be produced bearing the exhibit number referenced in the transcription or other recording.

9

REQUEST NO. 45

All documents indicating which documents were produced to the DOJ, MSPC, MCC or any other federal or state governmental agency by NorthWestern or any other Person after the testimony of the relevant witness had been taken.

REQUEST NO. 46

All documents provided to plaintiffs in the McGreevy Asset Transfer Action, by NorthWestern or any other Person.

REQUEST NO. 47

All documents provided by plaintiffs in the McGreevy Asset Transfer Action, to NorthWestern or any other Person.

REQUEST NO. 48

All transcriptions and video recordings of depositions taken in connection with the McGreevey Asset Transfer Action. If any testimony otherwise responsive to this Request has not been transcribed or videotaped, please produce any audio or other recording of such testimony.

REQUEST NO. 49

With respect to Request No. 48 above, all documents referenced in such transcriptions, whether or not formally designated as an exhibit. If any such document is designated as an exhibit, Plaintiffs request that the document be produced bearing the exhibit number referenced in the transcription.

REQUEST NO. 50

Any and all documents relating to or concerning the allegations in the Fourth Cause of Action in the McGreevey Asset Transfer Action.

10

REQUEST NO. 51

All documents relating to or concerning NorthWestern Growth.

REQUEST NO. 52

All documents relating to or concerning the financial statements for NorthWestern

Growth for the fiscal year ended 2001 through 2003.

REQUEST NO. 53

All documents relating to Deloitte & Touche's review of financial information, operating,

and other data related to NorthWestern Growth.

REQUEST NO. 54

All documents relating to or concerning any internal investigation performed by

NorthWestern that resulted in the Restatement.


Dated:  Wilmington, Delaware
        December 21, 2006

**BLANK ROME LLP**

  /s/  Dale R. Dubé
Dale R. Dubé (DE No. 2863)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:   (302) 425-6464

- and -
**FRIED, FRANK, HARRIS, SHRIVER &**
    **JACOBSON LLP**
Bonnie Steingart
Gary Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:   (212) 859-4000

Counsel for Magten Asset Management
    Corporation

11

– and –

By its attorneys,

Kathleen M. Miller (I.D. No. 2898)
Smith, Katzenstein & Furlow, LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Courier 19801
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
– and –

Amanda D. Darwin BBO No. 547654
John V. Snellings BBO No. 548791
Lee Harrington (DE 4046)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

Attorneys for Law Debenture Trust Company of
New York

12