# Greenberg Traurig

January 9, 2007

VIA HAND DELIVERY AND EMAIL
John E. James, Esq.
Potter Anderson & Corroon LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951

> Re:   *Magten Asset Management Corp. and Law Debenture Trust Co.*
> *v. NorthWestern Corp.; C.A. No. 04-1494-JJF;*
> *Magten Asset Management Corp. v. Mike J. Hanson and Ernie J.*
> *Kindt; C.A. No. 05-0499-JJF; and*
> *Magten Asset Management Corp. v. Paul Hastings Janofsky &*
> *Walker, LLP C.A. No. 04-1256-JJF.*

Dear Special Master James:

     Defendants in the above-referenced actions, NorthWestern Corporation, Michael J. Hanson, Ernie J. Kindt and Paul Hastings Janofsky & Walker, LLP, jointly submit the following in response to your email of January 2, 2007 and to supplement the response of Magten Asset Management Co. ("Magten") and Law Debenture (collectively the "Plaintiffs") dated January 4, 2007.

     We do not believe it is necessary to burden you with a detailed response because there are aspects of the Plaintiffs' letter with which Defendants take no issue. However, some additional information may assist in providing you with a more complete background of the cases, the genesis of Plaintiffs' claims and the conduct of the litigations.

## I.   Background

    1. <u>What are the QUIPS?</u>

     In the first paragraph of the Background section of their letter, Plaintiffs refer to Magten as "the largest holder of the 8.45% Quarterly Income Preferred Securities ("QUIPS")...." A further explanation of the nature of the QUIPS might be helpful to your understanding of the background of the dispute.

     In a November 1996 financing, Montana Power Company ("MPC") adopted a QUIPS program to raise capital. For this purpose, a separate entity, the Montana Power Capital I Trust (the "Trust"), was created. The Trust sold 8.45% preferred stock – the QUIPS – in the public market. The $65,000,000 in proceeds from

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

Greenberg Traurig, LLP | Attorneys at Law | The Nemours Building | 1007 North Orange Street | Suite 1200 | Wilmington, DE 19801
Tel 302.661.7000 | Fax 302.661.7360

www.gtlaw.com

the sale of the QUIPS was used by the Trust to purchase $65,000,000 in unsecured subordinated debentures (the "Junior Unsecured Bonds") from MPC which were issued to the Trust pursuant to an Indenture dated as of November 1, 1996 (the "Indenture"). The Junior Unsecured Bonds from MPC were the only assets owned by the Trust and were the entire basis of value of the QUIPS. Under the terms of the Indenture, MPC would make interest payments on the Junior Unsecured Bonds to the Trust, which would pass the payments through as distributions to the holders of the QUIPS.

The Indenture made clear that the Junior Unsecured Bonds underlying the QUIPS were in fact junior, were unsecured, and were subject to deferral of interest payments for up to five years. Nor does the Indenture limit the amount of subsequent senior debt that could be issued by MPC, or its successor. The November 1, 1996 offering prospectus for the QUIPS disclosed the fact that in the event of a merger there would be no limitations on outstanding debt or other financial covenants for the resulting consolidated entity.

In the same paragraph, Plaintiffs state that Magten is the largest holder of the QUIPS. While that is true, Magten did not purchase its share of the QUIPS until right about the time NorthWestern filed for bankruptcy in September 2003, well after the Going Flat Transaction and well after NorthWestern's restatement of its 2002 financials and the disclosure of NorthWestern's financial difficulties.

### 2. The Solvency of NorthWestern

In the second paragraph of their Background section, Plaintiffs state that "NorthWestern, as the sole equity holder of Clark Fork, caused Clark Fork to transfer the Montana Utility Assets to NorthWestern a time when NorthWestern was hopelessly insolvent." However, this statement has nothing to do with Plaintiffs' claim.

Under the terms of the Indenture, the only required representation that relates to the financial condition of a new obligor assuming the QUIPS was that immediately after giving effect to such transaction, no event of default with respect to the QUIPS shall have occurred. This representation was made to the Indenture Trustee and it was true. There was no immediate event of default and in fact NorthWestern continued to perform its obligations to the QUIPS holders for ten months until it filed its Chapter 11 petition in September 2003. Therefore, it is Defendants' position that NorthWestern's financial statements are wholly irrelevant to any representation the Indenture Trustee received, or to which it was entitled and that Plaintiffs, through their supposed fraud claim, seek greater protection than that to which they were entitled under the terms of their own contract.

### 3. NorthWestern Has No Financial Stake in the Outcome of the Fraudulent Conveyance Action

NorthWestern emerged from bankruptcy as of November 1, 2004. Pursuant to the terms of its plan of reorganization, a reserve of shares of NorthWestern's New Common Stock (the "Disputed Claims Reserve") was set aside to cover a potential recovery by holders of general unsecured claims against NorthWestern's bankruptcy estate which remained disputed at the time the plan was confirmed The Plaintiffs' claims are the last and only remaining general unsecured claims still outstanding against

NorthWestern's bankruptcy estate. Any surplus shares which remain in the Disputed Claims Reserve do not revert to NorthWestern but must be distributed pro rata to other creditors who hold allowed claims against NorthWestern's bankruptcy estate. Thus, as a practical matter, NorthWestern has no financial stake in the outcome of Plaintiffs' claims, even though it must bear the cost of litigating and resolving those claims under the terms of the plan.

## II.  Brief Description of the Actions

(1)  **Magten Asset Management Corp. and Law Debenture Trust Co. of New York v. NorthWestern Corp., Civil Action No. 04-1494-JJF** (Fraudulent Conveyance Action)

As Plaintiffs state, their original claim against NorthWestern was that the transfer of the Montana utility assets to NorthWestern ("the Going Flat Transaction") was a fraudulent conveyance. Plaintiffs alleged that the value of the assets received by NorthWestern substantially exceeded the amount of liabilities assumed and that the transaction rendered Clark Fork insolvent. Of course, Plaintiffs' claims were entirely predicated on their alleged status as creditors of Clark Fork. If in fact they had become creditors of NorthWestern as a result of the transaction, they had no claim. This was precisely the basis of NorthWestern's motion to dismiss the Adversary Proceeding in the Bankruptcy Court.

In August 2004, the Bankruptcy Court dismissed Plaintiffs' fraudulent conveyance claims, holding that as a result of the Going Flat Transaction, Clark Fork was released from all liability under the QUIPS, which had been assumed by NorthWestern, and therefore Plaintiffs lacked any standing to sue. The Bankruptcy Court allowed, however, the Plaintiffs to pursue a theory that the release of Clark Fork had been induced by fraud because the Trustee had relied on NorthWestern's allegedly misleading financial statements. Thus, Plaintiffs were left with a common law claim for fraud in the inducement.

The problem is that this claim has never been pled. It is not in the original Complaint. Its genesis appears to be in Plaintiffs' briefs in opposition to NorthWestern's motion to dismiss. Plaintiffs' subsequent First Amended Complaint, its last and only surviving pleading in this case, inexplicably fails to plead the only claim which survived the Bankruptcy Court's decision. The First Amended Complaint simply reasserts the same dismissed causes of action, adding only a claim that the Going Flat Transaction should be void as a violation of the Public Utility Holding Company Act of 1935 ("PUHCA"). The only attempt at a fraud allegation is contained in paragraph 68 of the First Amended Complaint, wherein Plaintiffs allege: "The Third Supplemental Indenture…was executed by BNY in reliance upon [NorthWestern's] fraudulent financial statements, while [NorthWestern] hid its true financial condition from BNY and from its investors." This sole and perfunctory allegation is all that is left of Plaintiffs' case.

(2)  **Magten Asset Management Corp. v. Mike J. Hanson and Ernie J. Kindt, Civil Action No. 05-0499-JFF** (Hanson and Kindt Action)

The Hanson and Kindt Action was designed apparently to pressure NorthWestern into making certain concessions to Magten during the course of the

NorthWestern Bankruptcy proceedings. Seeking another venue outside the Delaware Bankruptcy Court and another cause of action to assert against parties other than NorthWestern, Magten filed this action against Messrs. Hanson and Kindt, the former chief executive officer and chief financial officer, respectively, of Clark Fork alleging that they breached a fiduciary duty allegedly owed to the creditors of Clark Fork when they did not object to the Going Flat Transaction. This sole allegation in the Hanson and Kindt Action is simply without merit.

Plaintiffs discussion of the procedural posture of this case is not entirely accurate. In the motion to dismiss, Hanson and Kindt pointed out that Clark Fork was a member-managed limited liability company and as a result, neither Mr. Hanson nor Mr. Kindt had any independent authority to decide when and whether assets would be sold or transferred. Therefore, neither Mr. Hanson nor Mr. Kindt had any power to approve or disapprove or prevent the Going Flat Transaction. Their role was solely ministerial in nature; that is, they were charged with carrying out the instructions of the member-manager, NorthWestern, by effecting the transfer to NorthWestern. The Montana District Court did not simply deny the motion to dismiss. Rather, the Hon. Richard Cebull, the United States District Judge for the District of Montana who ultimately transferred this case to Delaware, noted in his order denying the defendants' motion to dismiss that, as a matter of Montana law (Clark Fork is a Montana limited liability company), if the defendants could demonstrate that they had no authority to act in this regard, then judgment in their favor would be appropriate. (Order dated April 1, 2005.)

(3)   Magten Asset Management Corp. v. Paul Hastings Janofsky & Walker, LLP, Civil Action No. 04-1256-JJF
(Paul Hastings' Action)

Counsel for Paul Hastings believes that Plaintiffs have accurately described the current status of this action. As noted in Plaintiffs' letter dated January 4, 2007, Paul Hastings' Motion for Judgment on the Pleadings is currently pending before the District Court. The basis for that motion is that (a) Plaintiffs' claims against Paul Hastings are not viable because Paul Hastings, as a non-transferee of the assets in question, cannot be held liable for a fraudulent transfer as a matter of law and (b) Plaintiffs lack standing to assert their derivative claims for aiding and abetting a breach of fiduciary duty and malpractice on behalf of Clark Fork because Plaintiffs have not and cannot allege that they were creditors of Clark Fork at the time of the Going Flat Transaction.

### III. & IV.   Procedural History of the Actions Since Transferred to the District Court

As Plaintiffs concede, their first discovery requests to all defendants, which were served on January 24, 2006, were stayed by operation of Local Rule 30.2 when Defendants moved for a protective order. Although Plaintiffs imply that Defendants should have been preparing to produce responsive documents during the time the motion was *sub judice*, that is simply not the case because, if defendants' motion was granted, Plaintiffs' requests would have been inoperative.

The Court denied the motion on September 29, 2006 and Plaintiffs' own recitation of the facts belies the argument that there has been any delay by Defendants in

complying with their discovery obligations since that time. On October 13, 2006, the parties held their Rule 26(f) conference. On October 27, 2006, NorthWestern and Hanson and Kindt (the "NorthWestern Defendants") served their responses to the first request. And on November 9, 2006, the NorthWestern Defendants made their first production followed by additional document productions on December 18, December 21, January 4 and January 5. As more fully set out in the NorthWestern Defendants' response to Plaintiffs' motion to compel, there has been no delay.

## V.  Request for Conference with Special Master

We understand that a telephone conference has been scheduled for January 15, 2007 at 2:00 p.m.

Respectfully submitted,

*Victoria W. Counihan*
Victoria W. Counihan (No. 3488)
Counsel to Northwestern Corporation

And

Denise Seastone Kraft
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801
Counsel to Hanson & Kindt

And

Robert Dehney, Esq.
Morris Nichols Arsht & Tunnell LLP
1210 Market Street
Wilmington DE 19801
Counsel Paul Hastings Janofsky & Walker, LLP

cc:
    Clerk of Court (Via CM/ECF and Hand Delivery)
    Dale R. Dube, Esq. (Via Electronic Mail and Hand Delivery)
    Bonnie Steingart, Esq. (Via Electronic Mail and U.S. Mail)
    Gary L. Kaplan, Esq. (Via Electronic Mail and U.S. Mail)
    Kathleen M. Miller, Esq. (Via Electronic Mail and Hand Delivery)
    Bijan Amini, Esq. (Via Electronic Mail and U.S. Mail)
    Amanda Darwin, Esq. (Via Electronic Mail and U.S. Mail)
    John V. Snellings, Esq. (Via Electronic Mail and U.S. Mail)
    Stanley T. Kaleczyc, Esq. (Via Electronic Mail and U.S. Mail)
    Kimberly Beatty, Esq. (Via Electronic Mail and U.S. Mail)
    Paul Spagnoletti, Esq. (Via Electronic Mail and U.S. Mail)
    Joseph D. Pizzurro, Esq. (Via Electronic Mail and U.S. Mail)
    Steven J. Reisman, Esq. (Via Electronic Mail and U.S. Mail)

David A. Jenkins, Esq. (Via Electronic Mail and Hand Delivery)
Curtis S. Miller, Esq. (Via Electronic Mail and Hand Delivery)
Jesse H. Austin, III, Esq. (Via Electronic Mail and U.S. Mail)
Kerri K. Mumford, Esq. (Via Electronic Mail and Hand Delivery)
Philip Bentley, Esq. (Via Electronic Mail and U.S. Mail)
Bonnie Fatell, Esq. (Via Electronic Mail and Hand Delivery)
John W. Brewer, Esq. (Via Electronic Mail and U.S. Mail)
Rebecca Butcher, Esq. (Via Electronic Mail and Hand Delivery)
Nancy Delaney, Esq. (Via Electronic Mail and U.S. Mail)
Dennis E. Glazer, Esq. (Via Electronic Mail and U.S. Mail)
Adam G. Landis, Esq. (Via Electronic Mail and Hand Delivery)
Avery Samet, Esq. (Via Electronic Mail and U.S. Mail)
Bradley Silverman, Esq. (Via Electronic Mail and U.S. Mail)
Matthew Williams, Esq. (Via Electronic Mail and U.S. Mail)